| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP<br>Richard B. Honig, Esq.<br>Matthew E. Moloshok, Esq.<br>Attorneys for ASI, Inc., formerly known as<br>  Aviva Sports, Inc., Creditor/Party-in-Interest<br>*One Gateway Center*<br>*Newark, New Jersey 07102-5323*<br>973.621.9020 | |
| In Re:<br><br><br>MANLEY TOYS LIMITED,<br>               Debtor in a Foreign Proceeding. | Case No.: 16-15374-JNP<br><br>Chapter:   15<br><br>Judge: Jerrold N. Poslusny, Jr. |

### REPLY IN SUPPORT OF AVIVA'S
### MOTION FOR RELIEF FROM PROVISIONAL STAY

      To the extent that Aviva's motion for stay relief seeks permission to pursue non-debtors, Aviva's motion is generally not opposed. To the extent that Aviva's motion seeks certain limited relief against the debtor and the Liquidators, the Liquidators oppose it, but, as shown below, despite the Liquidators' alarmist rhetoric, their positions are unfounded.

      Aviva argues below that:

- The Liquidators acknowledge that the provisional stay does not apply to much of the relief Aviva seeks.

- The Minnesota Federal Court should not have to rely on a Hong Kong court to sanction violators of U.S. court orders and rules.

- Initiating a liquidation to escape compliance with the Minnesota Federal Court's orders was "morally culpable conduct" on the part of the persons who controlled Manley prior to the liquidation.

- The balance of hardships favors Aviva because granting stay relief would not result in Aviva taking assets held in the name of Manley.

- The Liquidators' own cited authority demonstrates that Aviva may take discovery from Manley to pursue Aviva's claims against Toy Quest Ltd. and other non-debtors and to enforce the Manley Toy Direct Judgment.

- Samson Chan, Alan Chan, and Brian Dubinsky should not be given carte blanche to withhold and destroy documents that are the subject of U.S. litigations.

- The Liquidators previously conceded that alter ego claims are not subject to the provisional stay and should not be allowed to change their position now.

- The Liquidators misrepresent Hong Kong law, which does not give the Liquidators the exclusive right to assert alter ego or fraudulent transfer claims.

- There is no stay in place in Hong Kong, and the Liquidators are demanding a broader stay from this Court than they could obtain in Hong Kong.

- The Liquidators offer no declaration or other evidence to refute Aviva's showing that they cannot and will not pursue alter ago, fraudulent transfer, or other claims against Manley's affiliates, Samson Chan, Alan Chan, and Brian Dubinsky.

- Aviva has presented ample evidence that Manley and Toy Quest Ltd. are alter egos, but Aviva does not have to prove its alter ego theory to justify stay relief.

Accordingly, Aviva's motion should be granted in its entirety.

I. **The Liquidators Acknowledge that the Provisional Stay Does Not Apply to Much of the Relief Aviva Seeks.**

Despite their proclamation that Aviva is trying to "eviscerate the purpose behind the provisional stay," Opp. at 2, the Liquidators do not object to the majority of the relief that Aviva seeks. The Liquidators state multiple times that "the provisional stay protects only the Debtor and the Section 1520(a) stay would protect only the Debtor," and therefore "nondebtor third-parties are not subject to the provisional stay presently in place." *Id.* at 3-4. So, for example, the Liquidators acknowledge that the provisional stay does not preclude Aviva from pursuing its judgment against Manley's non-debtor affiliate Manley Toy Direct, LLC ("Manley Toy Direct"). *Id.* at 3. They likewise acknowledge that the provisional stay does not block Aviva

2

from seeking injunctive sanctions against non-debtor third parties or from "bring[ing] whatever actions—injunctive or otherwise—against [nondebtor third-parties] if such grounds exist." *Id.* at 10. In short, the Liquidators concede, "[i]f Aviva has independent claims against third parties, even if they relate to the alleged responsibility of such third parties as somehow obligated for liabilities of Manley, then Aviva can assert those claims in actions against the third parties and can take discovery from the third parties in such actions." *Id.* at 17.

Accordingly, the Liquidators concede that Aviva should be permitted to take the following actions set forth in its motion and proposed order:

- Take discovery concerning both the Manley Judgment and the Manley Toy Direct Judgment (provided that such discovery is not sought from Manley or the Liquidators).

- Request relief from the Minnesota Federal Court or other courts to help ensure the preservation of evidence relating to the Manley Judgment and the Manley Toy Direct Judgment (provided that such relief is not sought against Manley or the Liquidators).

- Seek injunctive or other sanctions against Toy Quest Ltd., Samson Chan, Alan Chan, Brian Dubinsky, and/or other agents and affiliates of Manley for their contributions to Manley's non-compliance with the Minnesota Federal Court's post-judgment discovery order.

- File and prosecute motions to hold Toy Quest Ltd., and/or other affiliates or agents of Manley, Manley Toy Direct, or Toy Quest Ltd., liable for the Manley Toy Direct Judgment (but perhaps not the Manley Judgment).

- Assert claims against Toy Quest Ltd., and/or other affiliates or agents of Manley, Manley Toy Direct, or Toy Quest Ltd., wherever such claims may be prosecuted (provided that such claims do not include alter ego or fraudulent transfer claims).

II.     **The Minnesota Federal Court Should Not Have to Rely on a Hong Kong Court to Sanction Violators of U.S. Court Orders and Rules.**

The Minnesota Federal Court should be given the opportunity to protect its jurisdiction and integrity by compelling compliance with its order directing Manley to respond to Aviva's post-judgment discovery. Multiple courts have held that contempt and sanctions proceedings

3

are not subject to the automatic stay for precisely that reason—the automatic stay does not apply when a court, like the Minnesota Federal Court, enters "punitive sanctions to uphold the dignity of the court and not as an effort to enforce the collection of a judgment." *In re Grigg*, 619 F. App'x 195, 199 (3d Cir. 2015); *see also In re Berg*, 198 B.R. 557, 562 (B.A.P. 9th Cir. 1996); *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993). The Minnesota Federal Court should not have to wait for a foreign court with no knowledge of the history of the case and limited exposure to U.S. court rules to enforce the Minnesota Federal Court's orders on its behalf.

In addition, the Minnesota Federal Court—not the Liquidators—should decide whether the fact that Manley has ceased doing business under its own name renders "moot" the importation ban that Aviva hopes to obtain. Opp. at 10. Based on the Minnesota Federal Court's prior rulings and extensive experience with the parties, the court likely would determine that an importation injunction covering Manley's intermediaries, affiliates, and alter egos would be well within the court's authority, fully justified, and effective in securing compliance with the court's order, and thus not at all "moot." *See* Aviva's Br. at 11-12.

Despite the Liquidators' suggestions to the contrary, several of the "traditional factors favoring a grant of stay relief" plainly are present here. *See* Opp. at 10. Given the Minnesota Federal Court's deep familiarity with the facts and understanding of the issues, having that court determine the proper punishment for a violation of its own order would serve the interests of judicial economy. The Sanctions Motion already has been briefed once and can be ready for resolution quickly. Aviva has a high chance for success on the merits. And the impact on Manley, the Liquidators, or the other creditors—as opposed to the persons and entities responsible for Manley's violations of the Minnesota Federal Court's orders—will be minimal. *See* Aviva's Br. at 10-11.

4

The Liquidators also are flatly incorrect when they assert that Aviva's claim already has been fully liquidated. *See* Opp. at 10-11. Because of the provisional stay, the Minnesota Federal Court has not yet had the chance to set the amount of sanctions against Manley or its principals. This Court noted as much when it entered the provisional stay, and further noted that Aviva eventually would be entitled to liquidate its claim. It would make no sense for a court in Hong Kong, which knows nothing about the proceedings in Minnesota Federal Court, to decide the level of sanctions required to enforce a U.S. court's orders or the appropriate compensation that should be paid to a litigant that was harmed by the violation of such orders. Aviva should be permitted to finish liquidating its claim in the court where it was harmed and sought sanctions. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." S. Rep. No. 95–989 at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836, *cited in, e.g.*, *In re Wilson*, 116 F.3d 87, 91 (3d Cir. 1997).

**III.    Initiating a Liquidation to Escape Compliance with the Minnesota Federal Court's Orders Was "Morally Culpable Conduct" on the Part of the Persons Who Controlled Manley Prior to the Liquidation.**

Aviva is not accusing the Liquidators of "morally culpable conduct" by filing the Chapter 15 petition. Rather, Aviva is asserting that Toy Quest Ltd., Samson Chan, Alan Chan, Brian Dubinsky, and others engaged in "morally culpable conduct" by commencing liquidation proceedings and seeking Chapter 15 protection specifically to, among other things, avoid the imposition of sanctions in Minnesota Federal Court. Filing for bankruptcy as the result of an unfavorable judgment or to avoid posting a supersedeas bond is not the same as liquidating a company to evade contempt-of-court sanctions. Courts in the Third Circuit explicitly have held that "the filing of a bankruptcy petition to avoid compliance with the orders of the District

5

Court is 'morally culpable' (sanctionable) conduct that constitutes cause for lifting the automatic stay." *In re All American Properties, Inc.*, 2010 WL 891685, at *3 (Bankr. M.D. Pa. Mar. 10, 2010), *on reconsideration* 2010 WL 1541694 (M.D. Pa. Apr. 15, 2010).

As much as the Liquidators try to claim that the Chapter 15 petition is all about protecting Manley's claim against Toys "R" Us, *see* Opp. at 12, the timing of the liquidation, especially when combined with the sham intervention in the Minnesota Federal Court and the postponement of the hearing on the Sanctions Motion, show that a primary purpose of the liquidation—and perhaps *the* primary purpose of the liquidation—was to evade the jurisdiction of the Minnesota Federal Court. A Chapter 15 petition is not a license to escape responsibility for deliberate and persistent defiance of U.S. court orders.

## IV. The Balance of Hardships Favors Aviva Because Granting Stay Relief Would Not Result in Aviva Taking Assets Held in the Name of Manley.

Conspicuously absent from the Liquidators' opposition is any persuasive articulation of how the relief Aviva is seeking—especially the relief relating to the enforcement of the Manley Toy Direct Judgment—would harm the Liquidators or Manley's other creditors. The best the Liquidators can do is to complain that they might have some litigation or discovery costs. *See* Opp. at 11. But the mere payment of litigation expenses is not normally a basis for denying relief from a stay. *See In re Todd Shipyards Corp.*, 92 B.R. 600, 603 & n.4 (Bankr. D.N.J. 1988). The "Court of Appeals for the Third Circuit has declared that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation against a debtor." *In re Nkongho*, 59 B.R. 85, 86 (Bankr. D.N.J. 1986) (quoting *In re Nicholas*, 55 B.R. 212, 217 (Bankr. D.N.J. 1985) (citing *In re Davis*, 691 F.2d 176, 178 (3rd Cir. 1982))).

In fact, Aviva's requested relief would not prejudice the Liquidators or Manley's other creditors because Aviva has agreed that it will not seek at this time to execute on assets held in

6

Manley's name.  By contrast, continuing to prevent Aviva from investigating and following alternate paths to recover on its judgments would impose a great burden on Aviva.

Furthermore, the Liquidators have provided no facts to suggest that, if they do intend to pursue alter ego or fraudulent transfer claims—and there is no support for the proposition that they do—Aviva's own pursuit of such claims would be harmful to the Liquidators or Manley's other creditors.  As Aviva noted, if Aviva satisfies its judgments from sources other than assets held in the name of Manley, there will be more assets held in the name of Manley to pay other creditors.  Furthermore, if Aviva succeeds in piercing the corporate veils between Manley and its affiliates, or between Manley Toy Direct and its affiliates, there is no reason to believe that Toy Quest Ltd. or other affiliates will have any trouble paying Aviva and all other creditors in full.  Nothing in the record suggests that the aggregate liabilities of the Chan family of companies exceeds the aggregate assets of the Chan family of companies.

## V.     The Liquidators' Own Cited Authority Demonstrates that Aviva May Take Discovery from Manley to Pursue Aviva's Claims Against Toy Quest Ltd. and Other Non-Debtors and to Enforce the Manley Toy Direct Judgment.

Although most of Aviva's post-judgment discovery would be aimed at third parties, Aviva also may need to serve additional limited discovery requests on Manley or the Liquidators to obtain information relevant to the Manley Toy Direct Judgment and Aviva's claims against Toy Quest Ltd. and other non-debtor Manley agents and affiliates.  Specifically, Aviva anticipates requiring discovery to help identify assets that are not held in Manley's name, and that the Liquidators will never seek to collect or distribute, but that nevertheless may be used to satisfy either the Manley Judgment or the Manley Toy Direct Judgment.

It is widely accepted that a creditor may take discovery from a debtor if the discovery is directed toward the creditor's claims against a non-debtor.  *See* Aviva's Br. at 15 (citing cases). *In re Kenoyer*, a case that the Liquidators themselves highlight, *see* Opp. at 17, shows that this

7

rule remains true even if the debtor and the non-debtor are co-defendants in the same action and the information may later be used against the debtor. 489 B.R. 103 (Bankr. N.D. Cal. 2013). The court in *In re Kenoyer* cited several cases, including Aviva's authority *In re Miller*, 262 B.R. 499, 504-06 (B.A.P. 9th Cir. 2001), for the proposition that the automatic stay does not protect a debtor from complying with discovery requests in a multi-defendant case where the debtor is a defendant, but is asked to respond as a non-party to discovery requests framed as discovery pertaining to claims against a non-debtor co-defendant. 489 B.R. at 114-19. The court also distinguished the unpublished *Lewis* case referenced in the Liquidators' opposition, in which discovery was not permitted because the underlying case involved a CERCLA claim where determining the non-debtor defendants' liability for environmental response costs necessarily required determining the debtor defendant's liability for environmental response costs. *Id.* at 119-20 (discussing *Lewis v. Russell*, 2009 WL 1260290 (E.D. Cal. May 7, 2009)). Turning to the matter before it, the court in *In re Kenoyer* then held that it was not an automatic stay violation to insist that the debtor defendant, who had been severed from the case, comply with a trial subpoena seeking documents and testimony concerning his co-defendants' liability. *Id.* at 123.

Here, Aviva would be seeking discovery from Manley as a non-party to assert claims against Toy Quest Ltd. and other non-debtor Manley affiliates, and to enforce its judgment against Manley Toy Direct. This discovery should be permitted, either because it is not subject to the stay at all or because there is cause to lift the stay.

**VI.     Samson Chan, Alan Chan, and Brian Dubinsky Should Not Be Given Carte Blanche to Withhold and Destroy Documents that Are the Subject of U.S. Litigations.**

The Liquidators contend that the Minnesota Federal Court lacks jurisdiction over the Liquidators and cannot impose evidentiary preservation mandates. *See* Opp. at 19. But at the

8

same time, the Liquidators admit that they have collected only a fraction of Manley's documents and contend that they have no ability to obtain electronically stored information. Ltr. from S. Packman to Court, ECF 70 (Apr. 28, 2016), at 3; Ltr. from S. Packman to Court, ECF 70 (Apr. 28, 2016) at 3; Ltr. from S. Packman, ECF 125 (July 28, 2016) at 1.  The Liquidators' position is untenable.

It is unclear whether the Liquidators are asserting that Aviva may not take steps to preserve documents not in the Liquidators' possession.  If that is their position, it would give Samson Chan, Alan Chan, and Brian Dubinsky the unfettered ability to withhold and destroy documents in contravention of U.S. court requirements.  Aviva's judgment was entered by the Minnesota Federal Court as a sanction for Manley's open contempt of its discovery obligations. Regardless of whether Minnesota Federal Court would have jurisdiction over the Liquidators in their capacities as successors to Manley—an issue for that court to decide—this Court should not tolerate a situation in which no U.S. court can prevent persons and entities from destroying documents that have been ordered produced in U.S. litigation and are relevant to the enforcement of U.S. judgments.

**VII.    The Liquidators Previously Conceded that Alter Ego Claims Are Not Subject to the Provisional Stay and Should Not Be Allowed to Change their Position Now.**

In April of this year, when the Liquidators were arguing in support of their petition for recognition, they told this Court that "Alter ego claims that [Aviva] may possibly have against third parties will not be affected by recognition of the Hong Kong Proceeding." Liquidators' Brief in Opposition to Objections to Petition for Recognition, ECF 53, at *2.  That has been one of their themes as they have argued for limiting discovery in this Chapter 15 case.  Now, however, they contend that such alter ego claims belong exclusively to the Liquidators.  Opp. at 13-14.  The Liquidators were correct before, as discussed below.  In any event, they should be

9

judicially estopped from changing their position.

"The doctrine of judicial estoppel serves a consistently clear and undisputed jurisprudential purpose: to protect the integrity of the courts." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 616 (3d Cir. 1996). "Judicial estoppel is intended to prevent parties from playing fast and loose with the courts by asserting inconsistent positions." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). It is "an equitable doctrine, invoked by a court in its discretion . . . with a recognition that each case must be decided on its own particular facts and circumstances." *McNemar*, 91 F.3d at 617.

Here, the Liquidators petitioned the Court for recognition of the Hong Kong proceedings on the basis that Aviva would remain free to pursue alter ego claims and the Liquidators successfully obtained major restrictions on discovery based on that position. For example, the Liquidators were permitted to withhold financial documents created before 2014. But when Aviva announced its intent to actually litigate alter ego claims—specifically, against non-debtors that happen to include the entities funding the Liquidators and their professionals—the Liquidators reversed course and asserted exclusive rights to such claims. The Liquidators should not be allowed to play fast and loose with this Court. The Court should find that the Liquidators are estopped from contesting Aviva's right to pursue alter ego claims.

**VIII. The Liquidators Misrepresent Hong Kong Law, Which Does Not Give the Liquidators the Exclusive Right to Assert Alter Ego or Fraudulent Transfer Claims.**

The Liquidators falsely allege that "[u]nder Hong Kong law, claims sounding in 'alter ego' and fraud are generally vested with the liquidators overseeing a winding-up proceeding." Opp. at 15-16. In support of that suggestion, the Liquidators cite section 277 of the Companies (Winding Up and Miscellaneous Provisions) Ordinance and two opinions from Hong Kong courts, *Re Ocean Time Dev. Ltd. & Others*, HCCW 334, 336 & 338/2004 (June 1, 2006), and

*Shun Kai Finance Co. Ltd*., CACV 31 and 32/2014, HCCW 1325/2002, HCA 2180/2011 (February 25, 2015).  Opp. at 16.  None of the Liquidators' cited authorities support their position.  Section 277 of the Companies (Winding Up and Miscellaneous Provisions) Ordinance deals with ***criminal*** liability and addresses "Prosecution of delinquent officers and members of company."[1]  The section imposes a duty on the Liquidators to refer potentially guilty persons to the Secretary of Justice, but nothing in the section addresses alter ego or fraud transfer claims or confers any exclusive rights of any kind on the Liquidators.

The *Ocean Time* and *Shun Kai Finance* opinions likewise provide no support for the Liquidators' assertions.  Both opinions address the availability of "derivative actions" ***against liquidators*** for breaches of fiduciary duty and misrepresentation, based on alleged failures of liquidators—after liquidation commences—to maximize the value of the liquidated company.  *See Ocean Time Dev. Ltd*., ¶¶ 53-54; *Shun Kai Finance*, ¶ 22.  Neither opinion mentions alter ego or fraudulent transfer claims, let alone establishes a liquidator's exclusive right to assert such claims under Hong Kong law based on pre-liquidation conduct by insiders of debtors and others who did business with debtors.

Nothing in Hong Kong law purports to strip creditors of their traditional rights to assert alter ego claims or fraudulent transfer claims.  Hong Kong law actually confirms that creditors retain the right to pursue claims based on corporate malfeasance throughout the course of the liquidation.  For example, Section 275 of the Companies (Winding Up and Miscellaneous Provisions) Ordinance expressly allows creditors to pursue recoveries against a debtor's affiliates when they have operated the company in a manner detrimental to creditors:

---

[1] The Companies (Winding Up and Miscellaneous Provisions) Ordinance was attached as an appendix to the Liquidators' motion for recognition and is available at http://www.legislation.gov.hk/blis_pdf.nsf/4f0db701c6c25d4a4825755c00352e35/BFBC0BDE18CA0665482575EE0030D882/$FILE/CAP_32_e_b5.pdf.

11

> ***If*** in the course of the winding up of a company ***it appears that any business of the company has been carried on with intent to defraud creditors of the company*** or creditors of any other person or for any fraudulent purpose, ***the court, on the application of*** the Official Receiver, or ***the liquidator or any creditor*** or contributory of the company, ***may***, if it thinks proper so to do, ***declare that any persons who were knowingly parties to the carrying on of the business*** in manner aforesaid ***shall be personally responsible, without any limitation of liability, for all or any of the debts or other liabilities of the company*** as the court may direct.

C(WUMP)O § 275(1) (emphasis added).

Likewise, both *Ocean Time Development* and *Shun Kai Finance* cite section 276 of the Companies (Winding Up and Miscellaneous Provisions) Ordinance, which governs the "Power of court to assess damages against delinquent officer, etc." and gives creditors the same right as liquidators to pursue claims against a company's founders, directors, or officers:

> ***If*** in the course of winding up a company ***it appears that any person who has taken part in the formation or promotion of the company***, or any past or present officer or liquidator or receiver of the company, ***has misapplied or retained or become liable or accountable for any money or property of the company***, or been guilty of any misfeasance or breach of duty in relation to the company which is actionable at the suit of the company, ***the court may, on the application*** of the Official Receiver, or ***of the liquidator, or of any creditor*** or contributory, ***examine into the conduct of the promoter, officer, liquidator or receiver, and compel him to repay or restore the money or property*** or any part thereof respectively with interest at such rate as the court thinks just, or to contribute such sum to the assets of the company by way of compensation in respect of the misapplication, retainer, misfeasance, or breach of trust as the court thinks just.

C(WUMP)O § 276 (emphasis added). In other words, even the authorities on which the Liquidators rely demonstrate that the Liquidators have only a non-exclusive right to pursue alter ego and fraudulent transfer claims under Hong Kong law.

### IX. There Is No Stay in Place in Hong Kong, and the Liquidators Are Demanding a Broader Stay from this Court than They Could Obtain in Hong Kong.

Manley's initiation of liquidation proceedings in Hong Kong has not resulted in a stay of

any litigation in Hong Kong. Mat Ng testified that he has not filed a motion for a stay of proceedings in any matter involving Manley in Hong Kong. Tr. of May 13, 2016 Hearing, at 14:10-12. Kingsley Ong testified that "there's no automatic stay" of any litigation in Hong Kong, *id.* at 170:14-16, the Liquidators "have not initiated any court proceedings in Hong Kong," *id*. at 170:22-24, and "no litigation proceedings in Hong Kong are currently stayed." *Id* at 187:25-188:2.

Accordingly, none of the claims that Aviva seeks to pursue are stayed in Hong Kong, and, as noted above, any Manley creditor would be entitled to pursue such claims under Hong Kong law. Nevertheless, the Liquidators are in the United States seeking broader stay protection than exists or would be available in Hong Kong.[2] The Liquidators contend that Hong Kong law should apply, and that the Court should defer to the Hong Kong courts, but the Liquidators have provided no basis for this Court to expand the protections currently in place in Hong Kong.

**X.    The Liquidators Offer No Declaration or other Evidence to Refute Aviva's Showing that They Cannot and Will Not Pursue Alter Ago, Fraudulent Transfer, or Other Claims against Manley's Affiliates, Samson Chan, Alan Chan, and Mr. Dubinsky.**

The Liquidators have shown that they are unwilling or unable to pursue alter ego, fraudulent transfer or other claims against Toy Quest Ltd., other Manley affiliates, Samson Chan, Alan Chan, and Brian Dubinsky. *See* Aviva's Br. at 18-19. The Liquidators have utterly failed to conduct any investigation into such claims, and, in their careers, have never sued funding creditors for such claims. Moreover, the Liquidators have only a few thousand dollars left. And, as Aviva has demonstrated, the Liquidators have not even collected electronic or

---

[2] Notably, the Liquidators have done nothing to stop Manley's former affiliates from attempting to seek declaratory judgments that they are *not* Manley's alter egos. *See, e.g.*, Aviva Exhibit 31 (Toy Quest Ltd. lawsuit against Aviva in Hong Kong).

13

paper documents or made any effort to preserve evidence in the possession of Manley's former owners, apart from sending a couple of ineffectual letters. This is so even though, under Hong Kong law, the Liquidators now are entitled to such documents and evidence. The Liquidators have offered no declaration or other evidence to counter any of Aviva's factual points. There was, and is, no reason to believe that the Liquidators are either willing or able to hold Manley's affiliates and former officers accountable for their actions. Whether due to lack of inclination or lack of resources, the Liquidators will not bite the hands that feed them.

**XI.    Aviva Has Presented Ample Evidence that Manley and Toy Quest Ltd. Are Alter Egos, but Aviva Does Not Have to Prove Its Alter Ego Theory to Justify Stay Relief.**

Aviva has presented abundant evidence in this proceeding that Manley and Toy Quest Ltd. are alter egos, including the ruling of the Minnesota Federal Court that there is no meaningful distinction among Manley, Aquawood, and Toy Quest Ltd. (which the court was discussing as an entity, not just as a trade name for Manley). Nevertheless, the Liquidators assert that courts in the U.S. "have not been impressed by Aviva's assertions vis-à-vis Manley and Toy Quest." Opp. at 20. The Liquidators are incorrect.

Other than the Minnesota Federal Court, which ruled in Aviva's favor, no U.S. court has ever had the opportunity to consider, let alone rule on, the full panoply of evidence Aviva has assembled to prove that Manley and Toy Quest Ltd are alter egos. In the Northern District of Illinois, for example, the court ruled upon the "record before [it]" in May 2015 in a case brought by a different creditor, but that record contained ***none*** of the documents and evidence produced in response to subsequent subpoenas, including documents and evidence demonstrating that Manley's and Toy Quest Ltd.'s affiants had committed perjury. *See* Judgment Creditor's Memorandum in Support of Its Rule 11 Motion for Sanctions, *Briggs & Morgan, P.A. v. Manley Toys Ltd.*, ECF 65, No. 12-cv-3199, at *10-12 (M.D. Tenn. Aug. 24, 2015) (noting that

14

the Illinois court had "just two complete exhibits, and parts of two others" out of the dozens of exhibits subsequently obtained through discovery and identifying false statements in affidavits submitted by Manley and Toy Quest Ltd.). The Illinois court emphasized that the effect of its ruling denying a temporary restraining order was "without prejudice to a later ruling on the merits of the claim," *see id.* (quoting Tr. of 5/6/15 hearing, pp. 86:20 – 87:1), and the court allowed the creditor to take discovery in support of its arguments.

In Ohio, the court had **no** factual record before it when it issued its ruling on procedural grounds, and the court did not address the substantive merits of Aviva's alter ego contentions. In that case, Aviva moved for a writ of garnishment, which was granted, and then sought another writ after the first expired unsatisfied. *See* Mot. for Order to Garnish Property Other Than Personal Earnings, ECF 13, *Aviva Sports, Inc. v. Manley Toys Ltd.*, No. 2:15-mc-00046 (S.D. Ohio). The Ohio court denied Aviva's second motion,[3] holding that Aviva had chosen the wrong procedural mechanism for asserting alter ego claims. Aviva was not asked to submit a factual record because the court's decision turned on matters of procedural Ohio law rather than the merits of Aviva's factual position. Aviva could have sought reconsideration, but after learning that the garnishee had no assets to garnish, Aviva decided not to waste judicial resources on the issue.

The only U.S. court with a full factual record before it, the Minnesota Federal Court, already has ruled once in Aviva's favor on alter ego issues. If Aviva is permitted to bring alter ego and fraudulent transfer claims before the Minnesota Federal Court, Aviva is highly likely to prevail again on the merits of those claims, a fact that militates in favor of stay relief.

---

[3] The Hon. Elizabeth Preston Deavers considered and granted Aviva's first motion, while the Hon. Terance Kamp considered and denied a substantially identical motion.

## CONCLUSION

Chapter 15 proceedings are *not* supposed to protect non-debtors from claims seeking non-debtor assets.  Chapter 15 proceedings are not supposed to prevent creditors from liquidating claims.  And they are not supposed to be a getaway vehicle for individuals and entities that promote contempt of U.S. courts.  Aviva's motion for stay relief should be granted in full.

        HELLRING LINDEMAN GOLDSTEIN
           & SIEGAL LLP


        by:  /s/ Matthew E. Moloshok
           MATTHEW E. MOLOSHOK

Date:   September 27, 2016