FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK

FEB 13 2018

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

MANLEY TOYS LIMITED,

    Debtor in a Foreign Proceeding.

Case No. 16-15374 (JNP)

Chapter 15

## OPINION GRANTING RECOGNITION OF FOREIGN PROCEEDING

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Before the Court is the motion of Mat Ng and John Robert Lees, the Appointed Liquidators and Foreign Representatives (the "Liquidators") of Manley Toys Limited (the "Debtor") for recognition of a foreign proceeding commenced by the Debtor in Hong Kong on March 22, 2016 (the "Motion"). ASI Inc., f/k/a Aviva Sports Inc. ("Aviva"), and Toys "R" Us, Inc. ("TRU"), oppose the Motion.

Recognition of a foreign insolvency proceeding requires that the proceeding: (a) meets the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code; (b) meets the requirements for recognition under section 1517(a); and (c) is not "manifestly contrary to the public policy of the United States." See 11 U.S.C. §§ 101(23), 1517(a) and 1506. The Liquidators argue that they have met all of the requirements for recognition and that recognition would not be manifestly contrary to United States public policy. Aviva and TRU argue that the foreign proceeding is not collective in nature; is not a foreign main proceeding; and is manifestly contrary to public policy. TRU further argues that the Court should deny the Motion because (according to TRU) the Debtor is solvent and there is no court oversight or administration of the Hong Kong liquidation. Aviva further argues that even if the Court recognizes the foreign proceeding, it should be dismissed or suspended under section 305 of the Bankruptcy Code.

Upon consideration of the evidence submitted, the arguments of counsel, and for the reasons discussed below, the Court will grant the Motion and recognize the Hong Kong liquidation as a foreign main proceeding.

### Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). Venue is proper in this Court under 28 U.S.C. § 1410. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

### Background

The Debtor at one time claimed to be the seventh largest toy company in the world and sold toys (including seasonal and water toys) primarily to retailers. The Debtor had as many as fifteen related entities all controlled by the same individuals. See Transcript of Hearing on May 12, 2016 at 160:19-162:17 (the "May 12 Transcript"); Ex. TRU-120. Aviva and TRU argue that these individuals changed the names of the corporate entities as needed to shelter themselves, the corporate entities, and their assets from third parties. See, e.g., Exs. TRU-78-80; Ex. TRU-83; Ex. TRU-87.

After several years of litigation in the United States District Court for the District of Minnesota (the "Minnesota Court"), Aviva obtained an $8.6 million judgment against the Debtor in August 2013. See Ex. Aviva-2. The Minnesota Court entered the judgment by default because the Debtor had not complied with many orders of the Minnesota Court. See Ex. Aviva-92 at 33-34. Thereafter Aviva began attempts to collect on its judgment and sought post-judgment discovery, which the Debtor did not provide. See Declaration of Mat Ng In Support of Appointed

---

[1] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

Liquidators' Verified Petition Pursuant to 11 U.S.C. §§ 105(a), 1504, 1507, 1509, 1515, 1517, 1519, 1521, and 1525 for Entry of an Order Recognizing Foreign Main Proceeding and Granting Further Relief and Additional Assistance ¶ 3 (the "Ng Declaration); Supplemental Declaration of Mat Ng In Support of Appointed Liquidators' Verified Petition Pursuant to 11 U.S.C. §§ 105(a), 1504, 1507, 1509, 1515, 1517, 1519, 1521, and 1525 for Entry of an Order Recognizing Foreign Main Proceeding and Granting Further Relief and Additional Assistance ¶¶ 13-14 (the "Ng Supplemental Declaration");[2] Ex. Aviva-3 at 3-4; Ex. Aviva-94 (order for post-judgment discovery to be produced). In February 2016, Aviva sought sanctions for the Debtor's failure to comply with the Minnesota Court's order. See Ex. Aviva-3. Aviva requested sanctions including: a bar on the sale, importation, distribution, or shipping of the Debtor's products in the United States.

TRU is a former customer of the Debtor. The Debtor was supposed to indemnify TRU in a personal injury case in Massachusetts. The case resulted in TRU being held liable for $24 million. When TRU threatened to sue the Debtor on account of that liability, the Debtor proposed providing credits for the Debtor's products for which TRU would otherwise pay. Nevertheless, the Debtor eventually sued TRU in the United States District Court for the District of New Jersey (the "New Jersey Court") and TRU counterclaimed.

In light of the pending sanctions motion in the Minnesota Court and trial in the New Jersey Court; ongoing litigation with other parties; and alleged declining sales, the Debtor determined to enter into voluntary liquidation in Hong Kong. See Ng Declaration ¶¶ 6, 11; Ng Supplemental Declaration ¶¶ 13-17. The Debtor initiated the liquidation prior to the sanctions motion being heard in the Minnesota Court and trial starting in the New Jersey Court.

---

[2] The Ng Declaration (Dkt. No. 2, Ex. A) and the Ng Supplemental Declaration (Dkt. No. 54) were both admitted into evidence for facts asserted therein, but not for any legal argument or opinion. See Order Regarding Admission of Exhibits ¶ 1.b. (Dkt. No. 179).

3

On March 11, 2016, a notice of a "Creditors' Meeting" under Hong Kong law was sent by regular mail to all of the Debtor's known creditors, and notice was published in three Hong Kong newspapers. See May 12 Transcript at 62:2-11; Ng Supplemental Declaration ¶ 21. The notice informed parties that the Creditors' Meeting would be held on March 22. The notice was not sent by email or fax. Mr. Ng attempted to get email or fax information from the Debtor but the information was not provided. See May 12 Transcript at 62:12-23. Despite not being sent by email or fax, the Liquidators' expert Kingsley Tze-Ong and TRU's expert, Stephen Briscoe confirmed the notice provided complied with Hong Kong law. See Declaration of Kingsley Tze-Wei Ong in Support of Appointed Liquidators' Verified Petition Pursuant to 11 U.S.C. §§ 105(a), 1504, 1507, 1509, 1515, 1517, 1519, 1521 and 1525 for Entry of an Order Recognizing Foreign Proceeding and Granting Further Relief and Additional Assistance ¶¶ 13-14 (the "Ong Declaration" Dkt. No. 55); Affidavit of Stephen Briscoe in Support of Toys "R" Us, Inc.'s Objection to Verified Petition Pursuant to 11 U.S.C. §§ 105(a), 1504, 1507, 1509, 1515, 1517, 1521, and 1525 for Entry of an Order Recognizing Foreign Main Proceeding and Granting Further Relief and Additional Assistance ¶ 3 (the "Briscoe Affidavit", Ex. TRU-1).[3]

On March 22, 2016, the Debtor held an Extraordinary General Meeting of the Company at which the Debtor's shareholders passed a special resolution for the voluntary winding up of the Debtor under Hong Kong law. See Ng Declaration ¶¶ 11-12; Supplemental Ng Declaration ¶ 19. On March 22, the Debtor also convened the Creditors' Meeting for which it had given notice on March 11. See May 13 Transcript at 16:12-19; Ng Declaration ¶ 14. At the Creditors' Meeting a Committee of Inspection ("COI") was appointed and the COI appointed the Liquidators and authorized the Liquidators to take actions under Hong Kong law and to commence this Chapter 15

---

[3] The Ong Declaration and the Briscoe Affidavit were admitted into evidence under the Order Regarding Admission of Exhibits (Dkt. No. 179).

4

case.  See Ng Declaration ¶ 15; Supplemental Ng Declaration ¶¶ 28, 32.  On the same day the Liquidators filed this Chapter 15 case and the Motion.

On March 24, 2016, the Court held a hearing to determine whether to grant provisional recognition pending a full hearing on the Motion.  At the conclusion of the hearing, the Court granted provisional recognition of the Hong Kong proceeding, and an order related to provisional relief was entered on April 1, 2016.

An evidentiary hearing on the Motion was held on May 12, 13 and August 11, 2016.  Mr. Ng testified on May 12 and 13 and Mr. Ong testified on May 13.  Aviva's general counsel, senior vice-president, and corporate secretary, George Koeck, testified on August 11.  All witnesses testified credibly.  After the hearing concluded, the parties conferred related to admission of certain documents and submitted written arguments to the Court related to exhibits on which the parties could not agree.  The Court ruled upon admission of documents on January 23, 2017 (Dkt. No. 179).  Thereafter the parties submitted closing briefs and reply briefs.

At the outset of the hearing, the parties agreed that there are three issues related to recognition:  (a) whether the Hong Kong liquidation is collective in nature; (b) whether the Debtor's center of main interest ("COMI") is in Hong Kong; and (c) whether the case is manifestly contrary to public policy.  See May 12 Transcript at 9:4-12 (Court's inquiry and Liquidators' response); 9:25-10:19 (Aviva's response); 11:10-12 (TRU's response).  Aviva also argued that the Court could refuse to recognize the Hong Kong liquidation under section 305 of the Bankruptcy Code.  See id. at 10:14-19.  As part of its closing briefs, and after the record was closed, TRU argued that the Liquidators did not satisfy other elements required for recognition.  Although the parties agreed to specific contested issues, this Opinion addresses all of the arguments raised in the briefs, and determines that the Liquidators have satisfied their burden of proof for recognition.

Document    Page 6 of 32

**Discussion**

The Motion seeks recognition of the Hong Kong liquidation as a foreign main proceeding, or in the alternative, as a foreign non-main proceeding. Under section 1517(a) of the Bankruptcy Code, "an order recognizing a foreign proceeding shall be entered if" the proceeding is a foreign main proceeding or a foreign nonmain proceeding; the foreign representative is a person or body; and the petition meets the requirements of section 1515 of the Bankruptcy Code. 11 U.S.C. § 1517(a). See also In re ABC Learning Ctrs. Ltd., 728 F.3d 301, 307 (3d Cir. 2013), aff'g, ABC Learning Ctrs. Ltd., 445 B.R. 318 (Bankr. D. Del. 2010). The Liquidators have the burden of proof on each of these elements. See ABC Learning Ctrs., 445 B.R. at 333.

Initially the Court must determine whether the Hong Kong liquidation is a "foreign proceeding" under section 101(23) of the Bankruptcy Code. If the Court makes that determination it must then determine if the remaining requirements for recognition under section 1517(a) are satisfied. Finally, the Court must determine if the Hong Kong liquidation is "manifestly contrary to the public policy of the United States" such that it should not be recognized under section 1506. Since Aviva and TRU are the parties invoking the public policy exception, they have the burden of proof on that issue. See In re Poymanov, 571 B.R. 24, 38 (Bankr. S.D.N.Y. 2017).

A. The Hong Kong Liquidation is a Foreign Proceeding Under § 101(23)

A "foreign proceeding" is defined as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The Third Circuit divides this definition into seven elements:

> (i) a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are

6

subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

ABC Learning Ctrs., 728 F.3d at 308.

### i.    There is a Proceeding

Aviva and TRU initially admitted that the Liquidators had met their burden of proof that there is a proceeding. In its closing brief, however, TRU claimed there was no proceeding. Even if this issue was not conceded, the Liquidators submitted sufficient evidence to meet their burden of proof.

As noted by the bankruptcy court in ABC Learning Ctrs.:

> [The essence of a "proceeding" is] acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice. In the context of corporate insolvencies, the hallmark of a "proceeding" is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets.

445 B.R. at 328 (quoting In re Betcorp Ltd., 400 B.R. 266, 278 (Bankr. D. Nev. 2009)). Mr. Ong, the Liquidators' expert on Hong Kong insolvency law testified that the Companies (Winding Up and Miscellaneous Provisions) Ordinance ("CWMPO"), is a statutory framework that sets forth the duties and responsibilities of liquidators, including distribution priorities, the right to pursue fraudulent transfers, preferences, and other causes of action. See May 13 Transcript at 155:25-163:6; 171:5-9. His declaration in support of the petition also opined that there is a proceeding. See Ong Declaration ¶¶ 6-10.

Mr. Briscoe, TRU's expert on Hong Kong insolvency law, confirmed that CWMPO is a law setting forth the framework for liquidating a company. See Briscoe Affidavit ¶¶ 2.1-2.3.

TRU argues that there is no proceeding because (according to TRU) the Debtor and an affiliated company, Toy Quest Ltd. ("Toy Quest"), are the same entity, and if they were considered as one entity, that entity is solvent. TRU further argues that the Debtor and Toy Quest use their

7

names interchangeably to sell the same products, and that several United States retailers provided discovery responses showing that they purchased identical products from the Debtor and Toy Quest. See, e.g., Ex. TRU-126. However, the inquiry for this element is not the Debtor's actions or whether the Debtor was solvent; but is whether Hong Kong has a framework in place so that "courts, merchants and creditors can know them in advance, and apply them evenly in practice." ABC Learning Ctrs., 445 B.R. at 328 (quoting Betcorp, 400 B.R. at 278). The Liquidators have met that burden; therefore, there is a "proceeding."

### ii.    The Proceeding is Judicial or Administrative

The second element requires that the Liquidators show that the proceeding is either judicial or administrative. See ABC Learning Ctrs., 728 F.3d at 308. Although Aviva and TRU initially admitted that the Liquidators had met their burden of proof that the proceeding is judicial or administrative in nature, TRU argued that the Liquidators did not meet their burden of proof on this issue in its closing brief. The Liquidators provided sufficient evidence at trial and through the Ng Declaration and Ng Supplemental Declaration to meet their burden of proof.

In ABC Learning Ctrs., the bankruptcy court found that the liquidators satisfied this element because the majority of the liquidators' tasks in that case were administrative, including "collecting assets; distributing assets pursuant to priorities . . .; conducting investigations of possible voidable transactions (e.g., preferences); circulating information to creditors; preparing various required reports; [and] convening meetings." ABC Learning Ctrs., 445 B.R. at 328. The court further found that, under certain circumstances, the proceeding could become judicial in nature whenever an Australian court is needed to exercise supervisory powers. See id. (citing Betcorp, 400 B.R. at 280).

Mr. Ong testified that the duties of a liquidator under Hong Kong law include: recovering and distributing assets; investigating why the company failed; and investigating potential claims

and causes of action. See May 13 Transcript at 156:22-25; 158:8-16. See also Ong Declaration ¶¶ 27, 28, 33, 34. Mr. Ong testified that there is a priority scheme of distributions that must be followed. See May 13 Transcript at 157:3-6. See also Ong Declaration ¶¶ 29-30. The Ong Declaration further provides that liquidators have a duty to account for all receipts and disbursements, and to conduct meetings with the company and with creditors on a yearly basis. See Ong Declaration ¶¶ 37-38. Finally, liquidators are required to prepare a final accounting and conduct final meetings with the company and creditors at the conclusion of the liquidation. See May 13 Transcript at 165:18-22; Ong Declaration ¶ 39.

The Briscoe Affidavit listed many of the same duties:  taking control of the company's books and records; realizing the company's remaining assets; responding to requests for information from creditors and ownership; investigating the company and potential causes of action; and pursuing those causes of action when appropriate. See Briscoe Affidavit ¶ 9.1.

In addition, Mr. Ong testified that creditors could involve Hong Kong courts when necessary to ensure that liquidators are following their duties, and liquidators could also involve courts to pursue claims on behalf of creditors. See May 13 Transcript at 159:6-22; 162:8-13. He further testified that it is "very common and very easy" for creditors who are not satisfied with the liquidation process to file a complaint in Hong Kong related to the conduct of the liquidation. Id. at 165:23-166:16. The Ong Declaration also notes that parties may seek court assistance in other circumstances, including: litigation of allowance of claims; recovery of assets; pursuing fraudulent transfers and preferences; removal of the liquidator for cause. See Ong Declaration ¶¶ 33, 34, 49; see also Briscoe Affidavit ¶ 8 (noting that parties in interest can apply to courts for direction or to remove a liquidator).

TRU argues that the proceeding is not judicial or administrative in nature because there is no court supervision of the liquidation and because the Liquidators have (according to TRU) failed

to exercise their duties under Hong Kong law. But as discussed above, the proceeding is largely administrative in nature. Moreover, parties in interest may access Hong Kong courts to protect their rights and to ensure that the liquidation proceeds according to Hong Kong law. Finally, to the extent that TRU believes that the Liquidators have not satisfied their duties to creditors, there is a mechanism under Hong Kong law for interested parties to seek court intervention in Hong Kong.

A similar issue was addressed in Betcorp, in which the court was presented with recognition of a voluntary winding up under Australian law. The court reviewed a liquidator's duties under Australian law and noted that in certain circumstances an entire winding up could be completed as a purely administrative proceeding. See Betcorp, 400 B.R. at 280. The court further noted that the winding up may change from an administrative proceeding to a judicial proceeding, and that the actions of a liquidator are subject to review by Australian courts. See id. at 280-81. In concluding that an out of court voluntary winding up under Australian law met the requirement of being judicial or administrative in nature, the court stated that "section 101(23) requires only that a proceeding have either an administrative or judicial character," to satisfy this element. See id. at 281 (emphasis original). It appears that Australian liquidations are similar to Hong Kong liquidations in many ways so that the analysis in Betcorp is applicable in this case and leads to the same conclusion.

Therefore, the Liquidators have met their burden of proof that the Hong Kong proceeding is judicial or administrative in nature.

### iii.    Collective in Nature

"A proceeding is collective if it considers the rights and obligations of all creditors." ABC Learning Ctrs., 445 B.R. at 328. See also 11 U.S.C. § 1501(a)(3). In ABC Learning Ctrs., the Third Circuit distinguished an Australian liquidation from an Australian receivership process in

place for the benefit of ABC Learning Centres' secured creditors. The Third Circuit determined that an Australian liquidation is collective because all creditors are considered, and assets are distributed according to priorities on a pro rata basis. See ABC Learning Ctrs., 728 F.3d at 308. The receivership at issue in ABC Learning Ctrs. was not collective because the receiver represented only the interests of secured creditors. See id. The Third Circuit further noted that "[t]he collective proceeding requirement reflects U.S. policy 'to provide an orderly liquidation procedure under which all creditors are treated equally.'" Id. at 310 (quoting In re Schimmelpenninck, 183 F.3d 347, 351 (5th Cir. 1999) (quoting H.R. Rep. No. 95-595, 1st Sess., at 340 (1977)).

The Hong Kong liquidation is collective in nature. Mr. Ong testified that the Liquidators' duty under Hong Kong law is to all creditors, whether those creditors are from Hong Kong or another country, including the United States. See May 13 Transcript at 157:18-158:4. Moreover, there are requirements for the collection and distribution of funds as well as a priority scheme and a requirement that similarly situated creditors be treated equally. See May 13 Transcript at 157:3-6; Ong Declaration ¶¶ 27-30.

Aviva argues that the Court should also consider whether this particular proceeding is collective in nature. See In re British Amer. Ins. Co. Ltd., 425 B.R.884, 902 (Bankr. S.D. Fla. 2010). Although the Third Circuit did not include this as a requirement to satisfy the collective in nature element, see ABC Learning Ctrs., 728 F.3d at 310, the Court nevertheless finds that the Liquidators have met this burden as well. In In re Ashapura Minechem Ltd., 480 B.R. 129 (S.D.N.Y. 2012), the court noted additional characteristics that the bankruptcy court in ABC Learning Ctrs. considered when determining whether the case was collective in nature: "adequate notice to creditors under applicable foreign law, provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the

proceeding. However, the standard for notice is not a demanding one." Ashapura Minechem, 480

B.R. at 137 (citing, inter alia, ABC Learning Ctrs., 445 B.R. at 328, 329).

Aviva and TRU argue that the proceeding is not collective in nature because they did not

receive timely notice of the Creditors' Meeting due to the Debtor's manipulation of the timing of

the commencement of the liquidation so that Aviva and TRU would not have an opportunity to

participate.  Mr. Ng testified that his understanding of the notice requirement for the Creditors'

Meeting is only that it be sent at the same time the notice of the shareholders meeting is sent to

shareholders.  See May 12 Transcript at 61:16-23.  Mr. Ng testified that notices were sent to

creditors on March 11, 2016 by regular mail; and that his understanding is that there is no

requirement that the notice be sent by email or fax. See id. at 62:5-14.

Mr. Ng's understanding of these requirements was confirmed by Mr. Briscoe and Mr. Ong

who both stated that the notice period to creditors is normally fourteen days, but can be shortened

by a vote of shareholders.  See Briscoe Affidavit ¶ 3.3; Ong Certification ¶ 13.  Mr. Ong testified

that there is no notice period requirement under Hong Kong law and that notice by regular mail is

sufficient.  See May 13 Transcript at 160:9-161:8.  Mr. Ong also testified that Hong Kong law

includes remedies for creditors that did not attend the meeting, including seeking to become a

member of the COI.  See id. at 161:17-162:13.  Mr. Ong then testified that if procedural

requirements were not satisfied, a Hong Kong court could invalidate the liquidation, and referred

to a case in which that occurred.  See id. at 162:25-163:15.

The facts of this case are similar to ABC Learning Ctrs. where a creditor argued that the

proceeding was not collective because United States creditors did not receive notice and were

therefore barred from actively participating in the case.  The bankruptcy court noted that there was

no allegation that the notice did not comport with Australian law, and that creditors could seek

court review in Australia.  See ABC Learning Ctrs., 445 B.R. at 329.  Aviva and TRU have not

argued that the notice period violated Hong Kong law (in fact, Mr. Briscoe acknowledged that the notice period could be shortened). Moreover, similar to Australian law, there are safe guards under Hong Kong law to protect Aviva and TRU, including joining the COI or proceeding with an action in Hong Kong courts. Finally, the Liquidators and the COI have offered to place Aviva on the COI to cure any perceived prejudice related to lack of notice, but Aviva has refused. Therefore, even if Aviva and TRU did not receive timely notice of the Creditors' Meeting, that is not sufficient to determine that the proceeding is not collective, especially when considering that the "standard for notice is not a demanding one." See Ashapura Minechem, 480 B.R. at 137 (citing, inter alia, ABC Learning Ctrs., 445 B.R. at 329).

Aviva and TRU also argue that the Hong Kong proceeding is not collective because the Debtor took steps to ensure that the liquidation would benefit only the Debtor and affiliated companies by using affiliates (and payments by affiliates to non-insider creditors) to control the Creditors' Meeting. Aviva and TRU argue that the Debtor and affiliated companies manipulated the Debtor's creditor list by having affiliated entities pay the Debtor's obligations and then accepting assignments of those claims. They also argue that if the Debtor and Toy Quest were considered as one entity, the overall entity is solvent.

Mr. Ong testified that a company's determination of insolvency is not binding on the liquidator. If a liquidator determines a company is solvent, he is still responsible to complete his duties as a liquidator. See May 13 Transcript at 163:18-164:2. The Ong Declaration notes that if allegations of misconduct on behalf of a debtor are brought to a liquidator's attention, he has a duty to consider the interest of creditors, and to act impartially, especially where wrongdoing by directors appears possible. See Ong Declaration ¶¶ 35-36.

Mr. Ng testified that he has a duty to investigate potential causes of action, and that he has pursued funding creditors and insiders in other cases when he discovered wrongdoing, and that he

would pursue such claims in this case if his investigation led him to conclude such actions were appropriate. See May 12 Transcript at 43:1-45:10; 50:14-16. Mr. Ng also testified that he would consider information provided to him by Aviva or TRU that may aid him in determining whether to pursue claims against insiders and affiliates. See id. at 55:19-56:4.

Because the Liquidators have the obligation to investigate and pursue recovery related to any wrongdoing by the Debtor or insiders, the Court concludes that the alleged wrongdoing by those parties is not sufficient to render the Hong Kong liquidation non-collective. To the extent that the Debtor or its insiders have acted improperly, the Liquidators (and creditors including Aviva and TRU if the Liquidators will not act) have the capacity to protect the rights and interests of the creditor body. Moreover, both Mr. Ng and Mr. Ong testified that the Liquidators – not insiders - are in control of the liquidation and Mr. Ng testified that he would bring appropriate suits against affiliates and officers if his investigation led him to conclude that such suits were appropriate. Therefore, if Toy Quest or other insiders attempted to control the process to protect their interests, Hong Kong law provides mechanisms for the Liquidators to protect the interests of non-insiders. As such, the potentially improper behavior of the Debtor or its insiders does not mean that the proceeding is not collective.

Aviva further argues that the Liquidators have failed to take any action except trying to obstruct Aviva's collection efforts in the United States. Aviva asserts that the Liquidators, inter alia, have not: collected the Debtor's books and records; investigated the Debtor's finances; or evaluated claims. Instead, Aviva argues, the Liquidators have fought with independent United States creditors at the direction of insiders. Even if this were all true, the proceeding is nevertheless collective, because as discussed above, creditors have remedies in the Hong Kong courts. See May 13 Transcript at 159:6-22; 162:8-13; 165:23-166:16.

Aviva next argues that the proceeding is not collective because Manley's principals "stripped" the company of all its funds leaving little money available for the Liquidators to be able to pursue causes of action against Toy Quest or other affiliated companies. But Mr. Ng testified that he believes he has sufficient money on-hand to fund such an investigation, and if necessary, he would ask Aviva or TRU to provide funds to allow the Liquidators to complete their investigation and to bring claims against insiders. See May 12 Transcript at 50:24-51-4; 53:1-6; May 13 Transcript at 119:1-8. See also Ng Supplemental Declaration ¶ 10. Therefore, even if insiders attempted to dissipate assets and to leave the Liquidators with insufficient cash to fund a full investigation or to pursue claims, Mr. Ng believes there are sufficient funds remaining and that there may be sources of funds available to pursue those claims.

Finally, TRU argues that the proceeding is not collective because the COI is dominated by the Debtor's insiders. TRU alleges that the Liquidators approved steps taken by the Debtor designed to ensure that Aviva, TRU, and other United States creditors were not included in the Creditors' Meeting. However, Mr. Ng testified "I didn't help to choose the date. I told them that if they want to choose the quickest date for the creditors meeting, that would be the day earliest possible but I didn't choose the date. It's their decision." May 12 Transcript at 126:13-16. The Court understood Mr. Ng's credible testimony to be that he gave the Debtor information related to the required notice period, but that he did not advise the Debtor on a date to choose, nor approve the date that was selected.

Moreover, as discussed above, creditors have numerous remedies available to them, including seeking a position on the COI either by consent or through a court proceeding, or by filing an action in Hong Kong to invalidate the liquidation.

Therefore, the Court concludes that the proceeding is collective in nature.

### iv.    In a Foreign Country

The Liquidators must show that the proceeding is in a foreign country.  See ABC Learning Ctrs., 728 F.3d at 308.  The undisputed testimony is that the liquidation proceeding is located in Hong Kong.  The Debtor is registered as a Hong Kong company, with a registered office in Hong Kong.  See Ng Declaration ¶ 5; Ng Supplemental Declaration ¶ 7; May 12 Transcript at 29:15-20; 35:5-19.  See also Ex. L-21 (Hong Kong Companies Registry).  Moreover the liquidation was commenced in, and is subject to, Hong Kong law.  See Ng Declaration ¶ 1; Ng Supplemental Declaration ¶ 1

Therefore, the proceeding is in a foreign country.

### v.    Conducted Under a Law Related to Insolvency or Adjustment of Debts

Mr. Ong and Mr. Briscoe both stated that CWMPO is the law in Hong Kong governing the voluntary winding up of companies.  See Ong Declaration ¶ 6; Briscoe Affidavit ¶ 2.[4]  Mr. Ong's testimony mentioned sections of CWMPO on several occasions, including references to priorities of payment and the availability of parties to seek court involvement in a case.  See May 13 Transcript at 156:3-8; 157:1-6; 159:9-15.  Moreover, the Ong Declaration and the Briscoe Affidavit both have numerous references to sections of CWMPO.  Therefore, the Court concludes that the liquidation is conducted under a law related to insolvency or adjustment of debts.

### vi.    The Debtor's Assets and Affairs are Subject to Control or Supervision of a Foreign Court

Although the parties did not dispute this element for recognition, the Court notes that section 1502 of the Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).  As discussed above, there are several circumstances under which creditors can seek court intervention in the

---

[4] Several other portions of the Briscoe Affidavit reference provisions and requirements of CWMPO.  See, e.g., Briscoe Affidavit ¶¶ 3.1, 5.3, 5.4, 6.3, 6.5, 8.1, 9.1, 11.1.

liquidation, including to: compel a liquidator to take certain actions, see May 13 Transcript at 159:6-15; to replace members of the COI, see id. at 162:8-13; to remove a liquidator, see Ong Declaration ¶¶ 49-50; Briscoe Affidavit ¶ 8; and to pursue causes of action. See May 13 Transcript at 171:5-9.

Therefore, the proceeding is subject to supervision by a foreign court.

### vii.    Purpose of Reorganization of Liquidation

The final element requires that the foreign proceeding have a purpose of reorganization or liquidation. See ABC Learning Ctrs., 445 B.R. at 332. This element was not contested by the parties. Nevertheless, the Court notes that the purpose of winding up under CWMPO is to liquidate insolvent companies. See Ong Declaration ¶¶ 6-7; Briscoe Affidavit ¶ 2. Therefore, this element has been satisfied.

The Court concludes that the Liquidators have satisfied their burden of proof on each of the above elements and that the Hong Kong proceeding is a "foreign proceeding" under section 101(23) of the Bankruptcy Code. The Court, therefore, turns to the requirements for recognition of a foreign proceeding under sections 1515 and 1517 of the Bankruptcy Code.

### B.  The Liquidators Have Satisfied the Requirements of § 1515

The parties did not dispute whether the requirements of section 1515 of the Bankruptcy Code have been met, therefore the Court concludes that the Liquidators have met their burden on this issue. Even if this were not the case, the Liquidators have met their burden of proof related to section 1515. Section 1515 provides that a foreign representative must be the person to apply to the court for recognition of the foreign proceeding. See 11 U.S.C. § 1515(a). Here the Liquidators have shown that they are the foreign representatives of the Debtor and are the individuals seeking recognition of the foreign proceeding. See May 12 Transcript at 28:21-24; Ng Declaration ¶¶ 1, 4, 11-12.

Section 1515 also requires that the petition for recognition be accompanied by, <u>inter alia</u>, "a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative." 11 U.S.C. § 1515(b)(1). The Liquidators provided such a copy stating that Mr. Lees was appointed as a liquidator of the Debtor. <u>See</u> Verified Petition Ex. C. <u>See also</u> Ex. TRU-55 (Board Minutes noting appointment of both Liquidators). Moreover, Mr. Ng's testimony and the Ng Declaration were credible evidence upon which the Court may rely in determining that there is a foreign proceeding. <u>See</u> 11 U.S.C. § 1515(b)(3). Therefore, the Court concludes that the Liquidators have met the requirements of section 1515(b).

Next the Liquidators must provide a statement of all foreign proceedings with respect to the Debtor. <u>See</u> <u>id.</u> § 1515(c). The Ng Declaration states that he is aware of no foreign proceeding other than the Hong Kong proceeding. <u>See</u> Ng Declaration ¶ 20(b). Because that statement is sufficient to meet the requirements of section 1515(c), the Court finds that the Liquidators have satisfied this element of section 1515. <u>See</u> <u>ABC Learning Ctrs.</u>, 445 B.R. at 334.

Finally, because all of the documents provided to satisfy the requirements of sections 1515(a) and (b) were provided in English, the Liquidators satisfied the requirements of section 1515(d). <u>See</u> 11 U.S.C. § 1515(d).

Therefore, the Court determines that the Liquidators have met all of the requirements of section 1515.

C. <u>The Liquidators Have Satisfied the Requirements of § 1517</u>

Section 1517(a) of the Bankruptcy Code provides:

> Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if-
>
>      (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

18

(2) the foreign representative applying for recognition is a person or body; and

(3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Because the Liquidators are both individuals and the Court has previously determined that the requirements of section 1515 have been met, the Liquidators have met their burden on the second and third elements of section 1517(a). The parties, however, dispute the location of the Debtor's COMI.

With regard to the first element of section 1515, courts must determine whether the proceeding is "main" or "nonmain." A "foreign main proceeding" is a "foreign proceeding pending in the country where the debtor has [its COMI,]" 11 U.S.C. § 1502(4), while a "foreign nonmain proceeding" is a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." Id. § 1502(6). The Court has power to grant extensive relief, whether the foreign proceeding is recognized as main or nonmain. See In re SPhinX, Ltd., 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007). However, additional relief is available when a proceeding is considered to be "main."

> That is, upon recognition of the foreign proceeding as a "foreign main proceeding," (a) the automatic stay under Bankruptcy Code section 362 (as well as the creditors' right to adequate protection and relief from the automatic stay under sections 361 and 362(d) of the Bankruptcy Code) applies with respect to the debtor and its property within the territorial jurisdiction of the United States, (b) sections 363, 549 and 552 of the Bankruptcy Code apply to restrict the ability to transfer such property absent court approval, and (c) unless the court orders otherwise, the foreign representative may operate the debtor's business and exercise the rights and powers of a trustee under Bankruptcy Code sections 363 and 552. 11 U.S.C. § 1520(a)(1)-(3).

Id. at 115. The parties dispute whether the Debtor's COMI is in Hong Kong and, in turn, whether the foreign proceeding is main or nonmain.

"The term 'center of main interests' is taken from the UNCITRAL Model Law." Betcorp,

400 B.R. at 286.  While COMI is not defined in either Chapter 15 or the Model Law, section

1516(c) of the Bankruptcy Code provides that: "[i]n the absence of evidence to the contrary, the

debtor's registered office, or habitual residence in the case of an individual, is presumed to be the

center of the debtor's main interests." 11 U.S.C. § 1516(c).  Because the Debtor's registered office

is in Hong Kong, there is a presumption that its COMI is Hong Kong.  See Ng Supplemental

Declaration ¶¶ 7(a) and (b).  Parties may rebut this presumption by presenting "enough evidence .

. . to withstand a motion for summary judgment . . . ." In re Millennium Glob. Emerging Credit

Master Fund Ltd., 458 B.R. 63, 76 (Bankr. S.D.N.Y. 2011), aff'd, 474 B.R. 88 (S.D.N.Y. 2012).

Ultimately the burden of proof in determining COMI is on the Liquidators.  See Betcorp, 400 B.R.

at 285-86.  Aviva and TRU presented sufficient evidence to rebut the presumption, however, the

Liquidators have met their burden of proof that the Debtor's COMI is Hong Kong.

In determining the COMI of a foreign debtor, courts have examined a number of factors,

including:

> the location of the debtor's headquarters; the location of those who
> actually manage the debtor (which, conceivably could be the
> headquarters of a holding company); the location of the debtor's
> primary assets; the location of the majority of the debtor's creditors
> or of a majority of the creditors who would be affected by the case;
> and/or the jurisdiction whose law would apply to most disputes.

Millennium Glob., 458 B.R. at 76 (quoting SPhinX, 351 B.R. at 117).

The majority of these factors fall in favor of concluding that the Debtor's COMI is in Hong

Kong.  The Debtor's headquarters is in Hong Kong.  See May 12 Transcript at 29:15-17; Ng

Declaration ¶ 5.  Mr. Ng testified that he reached that conclusion by reviewing the Debtor's filing

records and other documents, such as the Debtor's annual return which states that the Debtor is a

Hong Kong business.  See May 12 Transcript at 29:18-20, 32:2-10.  The majority of the Debtor's

business decisions and records were in Hong Kong as well as the Debtor's financial operations, such as accounting and marketing. See id. at 33:24-34:12. See also Supplemental Ng Declaration ¶ 7 (198 employees in Hong Kong; bank accounts in Hong Kong). Mr. Ng further testified that purchase orders, contracts, invoices, and other documents all state that the Debtor is located in Hong Kong. See id. at 37:2-39:21 (discussing Ex. L-22). Exhibit L-22 is a four-page exhibit of documents sent to a customer (Village Road Show) including a confirmation, purchase order and invoice. Each of the documents lists the Debtor's address as being in Hong Kong. Finally, the vast majority of the Debtor's employees were located in Hong Kong. See id. at 34:13-25 (discussing Ex. L-20). Exhibit L-20 is a list of 198 of Debtor's employees, which is the exact amount of employees mentioned in the Supplemental Ng Declaration. Therefore, the Court concludes that the first factor falls in favor of determining that the Debtor's COMI is in Hong Kong.

Aviva argues that this case is similar to In re Tradex Swiss AG, 384 B.R.34 (Bankr. D. Mass. 2008), in which the court determined that the foreign representatives did not meet their burden of showing that the debtor's COMI was in Switzerland. However, the facts of Tradex Swiss are distinguishable. Tradex Swiss was an internet-based trading company with offices in Switzerland and the United States. However, eighteen of the company's twenty-two employees were based in Boston.[5] See id. at 39. Tradex Swiss' trades were completed out of Boston, and all important company files such as trading agreements, deposit confirmations, and the debtor's bank accounts were located in Boston. See id. As discussed above, in the present case, although the Debtor had an office and an employee (Mr. Dubinsky) in the United States, the Debtor's main

---

[5] The only employees based in Switzerland were Tradex Swiss' owner, his girlfriend, a cleaning person, and an IT consultant.

office and bank accounts were in Hong Kong. Moreover, it received orders, sent invoices, and conducted substantial other business in Hong Kong.

Aviva further argues that because the Debtor's Hong Kong-based employees were laid off on March 17, five days prior to entering into liquidation, see May 12 Transcript at 110:16-17, the only individuals with knowledge related to the Debtor and its business are not located in Hong Kong. While these individuals may not have been employed by the Debtor at the moment the Debtor entered liquidation, they were laid off during the period between notice of the Creditors' Meeting and the meeting itself. In other words, their employment essentially continued until the Debtor knew with some degree of certainty that its operations were going to cease and the employees were terminated within a period of time in close proximity to liquidation. As such, these individuals likely have knowledge of the Debtor's operations up until just days before the liquidation. Therefore, even though they were not technically employed at the start of the liquidation, their employment was sufficiently close in time as to have the Court consider that as among the facts weighing in favor of finding that the Debtor's COMI is in Hong Kong.

With regard to the location of the Debtor's primary assets, Mr. Ng testified that the Debtor had two primary categories of assets. First, the assets in Hong Kong, which Mr. Ng testified to be bank accounts holding approximately USD 90,000. See May 12 Transcript at 35: 20-36:5. Second, the assets in the United States, consisting of a receivable from TRU. The claim against TRU is approximately USD 5 million. See id. at 36:13-16. However, TRU has alleged a claim against the Debtor in the amount of USD 18.5 million. See, e.g., Ex. TRU-66. The parties' claims

against each other are currently pending in the New Jersey Court. As such, the actual value of this asset in terms of "real" dollars is not certain.[6]

Further, based upon the evidence presented, the Liquidators may have additional assets in Hong Kong – potential claims against insiders. These claims were discussed during Mr. Ng's testimony as well as in the Ng Declaration. Mr. Ng credibly testified that he intends to investigate and pursue claims against insiders. See May 12 Transcript at 50:14-16; 53:16-54:2. Mr. Ng was also quite believable when he testified that he would have no problem pursuing Toy Quest if there was a claim with merit, even though Toy Quest is a funding creditor. See May 12 Transcript at 44:21-24. He also credibly stated that if a creditor (including Aviva or TRU) provided him with information related to wrong-doing by insiders, he would pursue those claims. See id. at 55:19-56:10. As such, the Court concludes that the Debtor's "hard/realizable" (i.e., cash) assets are located in Hong Kong, and its litigation claims are located both in Hong Kong and in the United States. Moreover, it appears that the majority of claims against insiders would likely be brought in Hong Kong pursuant to Hong Kong law.

Aviva and TRU argue that this factor falls in their favor because the Debtor's largest asset - the TRU receivable – is located in the United States. As discussed above, the issues between the Debtor and TRU were in litigation prior to the liquidation. TRU has asserted that its claims against the Debtor far exceed the Debtor's claims against TRU. While the TRU receivable may have value, it is not the Debtor's only asset, and the Debtor's other litigation claims may have more

---

[6] Although not a factor in the Court's analysis, after conclusion of the recognition hearing, TRU and its affiliates filed Chapter 11 petitions in the United States Bankruptcy Court for the Eastern District of Virginia. This will likely further inhibit the realizable value of the Debtor's claim against TRU.

value. In addition, those claims may lead to judgments from which the Liquidators may be able

collect instead of (as TRU argues) being setoff against a much larger claim.

Therefore, this factor falls in favor of determining that the Debtor's COMI is in Hong

Kong.

The next factor is the location of the Debtor's creditors. Mr. Ng testified that the Debtor

has seventeen non-insider creditors, ten located in the United States and seven located in Hong

Kong. In addition, the holders of the majority of the face value of non-insider claims are in the

United States. Therefore, this factor falls slightly in favor of concluding that the Debtor's COMI

is not in Hong Kong.

The final factor is to consider which jurisdiction's laws will apply to the majority of

disputes. While many of the issues pertaining to Aviva and TRU, as well as other United States

creditors, would likely be resolved pursuant to laws of the United States, many other issues would

likely have to be litigated in Hong Kong under Hong Kong law. For example, it appears that

claims of fraudulent transfer or alter ego against insiders, or breaches of duties by management

would appropriately be brought in Hong Kong. Moreover, Mr. Ng testified during cross

examination that there are likely many different claims or causes of action that could be raised

against insiders and affiliates; and that he intends to investigate and pursue those claims.

Therefore, it appears that the majority of these types of disputes would apply Hong Kong law, and

this factor falls in favor of the Debtor's COMI being in Hong Kong. Even if this factor did not

fall in favor of the Debtor's COMI being in Hong Kong, it would only marginally fall in favor of

the COMI being in the United States.

Because the weight of the factors fall in favor of determining that the Debtor's COMI is in Hong Kong, the Liquidators have met their burden of proof on this issue, and the Court determines that the Debtor's COMI is in Hong Kong.

### D. Recognition Is Not Manifestly Contrary to Public Policy

Section 1506 states that the Court may "refus[e] to take any action governed by [Chapter 15] if the action would be <u>manifestly contrary to the public policy of the United States</u>." 11 U.S.C. § 1506 (emphasis added). Aviva and TRU have asserted that recognizing this proceeding would be manifestly contrary to United States public policy. Courts construe this exception very narrowly, because Congress' use of the word "manifestly" indicates that the exception is applicable to "the most fundamental policies of the United States." <u>ABC Learning Ctrs.</u>, 728 F.3d at 309 (quoting H.R.Rep. No. 109-31(1) at 109 (2005) <u>reprinted in</u> U.S.C.C.A.N. 88, 172).

When deciding whether to apply the public policy exception, courts generally focus on two factors: (1) whether the foreign proceeding is or was procedurally unfair; and (2) whether the recognition of the foreign proceeding or application of its laws would impinge upon a United States statutory or constitutional right. <u>See id.</u>

The Court notes some examples of cases considering what constitutes a violation of public policy. In <u>In re Gold & Honey, Ltd.</u>, 410 B.R. 357 (Bankr. E.D.N.Y. 2009), the court applied section 1506 where the foreign proceeding was filed in violation of the bankruptcy court's automatic stay and court orders. In <u>In re Ephedra Prods. Liab. Litig.</u>, 349 B.R. 333, 335 (S.D.N.Y. 2006), claimants objecting to recognition argued that a foreign proceeding that lacks a right to a jury trial violates public policy because of the fundamental importance of due process rights. The court rejected the argument because, while the right to a jury trial is important in the American legal system, it is possible to reach a fair and impartial outcome even in the absence of a jury trial.

25

Id. at 337. The court did emphasize that proceedings should follow a course of "civilized jurisprudence" and be "fair and impartial." Id. at 336 (citation omitted).

In In re Creative Fin. Ltd., 543 B.R. 498, 516 (Bankr. S.D.N.Y. 2016), the court noted that the fact that the debtor engaged in bad acts does not make recognition of its proceeding contrary to public policy. The court explicitly found that the debtor and related associates had acted in bad faith in efforts to avoid various creditors and judgments. Id. at 515. Despite this finding, the court refused to invoke section 1506 to deny recognition. Id. at 515-16. As the court explained, there is no precedent for applying the public policy exception based solely on the behavior of one party and it would seem unfair to apply section 1506 to bad faith filers when United States debtors sometimes engage in the same bad acts under United States law. Id. at 516.

Creative Fin. essentially held that, when gauging whether to recognize a proceeding, the question under section 1506 is not whether the actions of the debtor violate public policy, but rather whether the foreign tribunal's procedures and safeguards do not comport with United States public policy. Therefore, the court determined that the issue of recognition turned on whether the liquidator could satisfy the requirement of section 1517, not section 1506.[7]

This point can also be inferred from ABC Learning Ctrs., 728 F.3d at 310, in which the Third Circuit analyzed the public policy issue by comparing the creditor protections employed in Australia versus those employed domestically and found that Australian law is similar to the Bankruptcy Code with respect to pro rata distributions among levels of priority. See id. As discussed above, Hong Kong law has the same policy.

One of the bases for violation of public policy that Aviva and TRU raise is lack of appropriate notice of the Creditors' Meeting to United States-based creditors. This issue was

---

[7] The court ultimately determined that Creative Finance's insolvency was not a main or nonmain proceeding because Creative Finance's COMI was not in the British Virgin Islands and it was not established in the British Virgin Islands. See Creative Fin., 543 B.R. at 520-21.

discussed in <u>ABC Learning Ctrs.</u>, 445 B.R. 318, where the court noted that lack of appropriate notice (although not raised by the parties) could be considered a public policy issue. However, because the notice complied with the requirements of Australian law, the proceeding was not contrary to public policy. <u>See</u> <u>id.</u> at 336. As discussed above, the court in <u>ABC Learning Ctrs.</u> considered the notice issue during its review of whether the Australian proceeding was collective, and determined that Australian law provided protections for creditors that were not properly served. <u>See</u> <u>id.</u> at 329. Similarly, Aviva and TRU have remedies available to them under Hong Kong law related to their argument that notice of the foreign proceeding was insufficient.

Aviva further argues that the Debtor's actions in other courts rise to the level of rendering recognition manifestly contrary to public policy. Aviva and TRU presented evidence of the Debtor's actions in other courts throughout the United States in which the Debtor violated orders of those courts. They argue that entering liquidation in an attempt to further avoid complying with court orders. In support of this argument Aviva relies upon <u>Gold & Honey</u>, in which the foreign representative violated an order of a bankruptcy court. In <u>Gold & Honey</u>, the bankruptcy court held that the automatic stay barred the foreign representative from initiating the foreign proceeding, and ordered that the proceeding not be initiated. <u>See</u> <u>Gold & Honey</u> 410 B.R. at 373. Therefore, the act of initiating an insolvency proceeding violated a United States statute and court order, but that is not so in the present case. Although the Debtor violated many court orders, there was no evidence that the Debtor was forbidden from entering liquidation.

Aviva's final public policy argument is that if the Court recognizes the foreign proceeding, it would encourage other foreign companies to take similar actions. While the Debtor's actions in various courts in the United States appears to have been improper, and its decision to enter into liquidation may have been the latest step in an effort to avoid a day of reckoning in the United States, a company presumably has the right to liquidate. If it is a foreign company, it has the right

to do so in a country other than the United States. Chapter 15 and the UNCITRAL Model Law provide a framework for those cases to be recognized and for debtors, creditors, and other parties in interest to enjoy certain protections in the United States and in the country where the foreign proceeding is located. Similar to the Debtor being an allegedly "bad company" seeking protections of liquidation in Hong Kong, "bad companies" within the United States often file bankruptcy. Just as foreign courts should recognize the bankruptcy of a bad company based in the United States when all of the elements for recognition have been met, United States courts should recognize foreign proceedings of bad companies when a foreign representative can establish the requirements for recognition. This is similar to <u>Creative Fin.</u>, where the court noted that United States courts are faced with bad faith filings and are able to take actions to deal with those parties, but such bad faith does not rise to the level of a violation of United States public policy. See <u>Creative Fin.</u>, 543 B.R. at 516. The court noted "[i]t does not seem right to find a violation of U.S. public policy when U.S. debtors sometimes engage in the same or similar bad faith, under U.S. law." <u>Id.</u>

TRU suggests that proceeding with a Hong Kong liquidation will strip United States creditors of protections of fraudulent transfer and other avoidance actions available under United States laws. TRU argues that Hong Kong's fraudulent transfer laws are more stringent than those in the United States because Hong Kong law does not allow for avoidance of constructively fraudulent transfers, therefore, recognition is manifestly contrary to public policy. TRU appears to be correct that Hong Kong law makes it more difficult to prove a fraudulent transfer because it requires the showing of intent. <u>See</u> Ong Declaration ¶ 34. However, the fact that a foreign law differs from United States law does not mean that recognition would be manifestly contrary to United States public policy. <u>See</u> <u>In re Toft</u>, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) (collecting cases). In <u>Toft</u> a foreign representative sought recognition of a German insolvency proceeding so that the foreign representative could obtain and intercept the debtor's emails. The court held that

28

the relief sought by the foreign representative was banned under United States law, and could result in criminal liability for anyone that carried out the foreign representative's request. See id. Therefore, the relief sought by the foreign representative "'would impinge severely on a U.S. constitutional or statutory right.'" Id. (quoting In re Qimonda AG Bankr. Litig., 433 B.R. 547, 570 (Bankr. E.D. Va. 2010)). In ABC Learning Ctrs. the Third Circuit discussed the difference between the Bankruptcy Code's general requirement that secured creditors turn assets over to the trustee and seek distributions while Australian law allows the secured creditor to realize the value of their collateral and turn any excess over to the company. See ABC Learning Ctrs., 728 F.3d at 310. The Third Circuit determined that this difference was not manifestly contrary to United States law. See id. at 311. The Third Circuit compared its decision to Schimmelpenninck in which the Fifth's Circuit made a similar determination related to Dutch bankruptcy laws. See id. at 310-11 (citing Schimmelpenninck, 183 F.3d at 365). In this case, while Hong Kong's laws related to fraudulent transfers are not the same as those of the United States, they are not manifestly contrary to United States law, instead they are a different way to achieve similar goals. See id. at 311.

TRU also argues that the Liquidators are not independent, and that their lack of independence is contrary to public policy. TRU alleges that Toy Quest's funding of the liquidation and the Liquidators' motion for recognition show that the Liquidators are beholden to Toy Quest and will not take action against Toy Quest or other insiders. Mr. Ng testified that Toy Quest had provided funds to the Liquidators to fund their work, and that Toy Quest was paying the Liquidators' United States attorneys directly. See May 12 Transcript at 41:8-42:9. He also testified that he has been involved in many cases where creditors have funded the case. See id. at 42:10-25. Mr. Ng also credibly testified that he would pursue claims against insiders or a funding creditor. See id. at 44:21-24. He gave examples of cases where he pursued funding creditors and shareholders when he believed that there was a cause of action against those parties. See id. at

43:1-44:20; 44:25-45:10. Mr. Ng explained that if he determines there was a cause of action against an insider, he would reach out to creditors to determine if they would fund litigation. See id. at 45:11-15.

TRU argues that having creditors or insiders fund the Liquidators' efforts is manifestly contrary to public policy, especially because the Liquidators may not use funds from Toy Quest to pursue any such claims. However, similar agreements have been approved in Chapter 7 cases and are commonplace in Chapter 11 cases. For example, in In re Modanlo, 2006 WL 4606303 (D. Md. 2006), a creditor agreed to lend funds to the Chapter 7 trustee so that the trustee could pursue litigation claims for the benefit of all creditors. The terms of the loan included a provision that the funds could not be used for litigation against the lender and other entities. See id. at *3. The district court affirmed the bankruptcy court's determination there was no conflict of interest related to the loan. See id. at *8-9. Moreover, secured creditors in Chapter 11 cases frequently agree to "carve outs" from their collateral in order to fund a debtor's and creditor committee's professional fees. Those carve outs almost always include a provision that the funds may not be used in the pursuit of claims against the secured creditor. See id. at *5-6 (citing In re FCX, Inc., 54 B.R.833 (Bankr. E.D.N.C. 1985)). While Toy Quest's funding of the liquidation may not be exactly the same as lending to a trustee or debtor in possession in a bankruptcy case, it appears to be similar, and therefore, is not manifestly contrary to public policy.

Moreover, Mr. Ng also testified that he intends to continue with his investigation into the Debtor's relationships and transactions with insiders and is willing to pursue causes of action. See May 13 Transcript at 116:10-25. If he believes there are valid claims he will ask Aviva and TRU to fund that litigation. See id. at 119:1-15. As such Toy Quest's funding of a portion of the case is not manifestly contrary to public policy of the United States.

30

Therefore, the Court concludes that recognition of the foreign proceeding is not manifestly contrary to public policy.

### E. Dismissal or Suspension of Proceedings is Not Appropriate

Aviva argues that if the Court determines to recognize the foreign proceeding, the Court should nevertheless immediately dismiss or suspend the case due to the Debtor's bad faith. Aviva further argues that the Liquidators are not taking any action other than impeding collection efforts of United States creditors. However, as discussed above, Mr. Ng testified that he intends to investigate potential claims and causes of action, and that he intends to pursue those claims if he believes they are viable. Moreover, dismissing or suspending the case would potentially be harmful to creditors in the United States that have not taken an active role in this case. For example, without a stay in place Aviva and TRU would be free to resume collection efforts and restart the proverbial race to the courthouse as opposed to allowing the Liquidators time to investigate and pursue claims for the benefit of all creditors.

### CONCLUSION

The Court does not doubt that Toy Quest and other insiders have taken actions to avoid paying Aviva's claims and a trial against TRU. There may also be significant claims against Toy Quest and insiders for their apparent efforts to avoid paying or to hide assets from creditors. However, as noted above, companies often enter liquidation as a last-ditch effort to avoid creditors, and an independent fiduciary is tasked with sorting everything out for the benefit of all creditors. Here, that liquidation was commenced in Hong Kong rather than the United States. The fact that the Debtor (and insiders), may have acted in bad faith in other litigation, does not mean that the Court should not recognize the foreign proceeding, and thereby force the Liquidators to pursue their duties under Hong Kong law without the assistance of this Court and the protections of Chapter 15.

31

The Liquidators have met their burden of proof in showing that the Hong Kong proceeding is a foreign main proceeding.  Moreover, recognition of the foreign proceeding is not manifestly contrary to United States public policy.  The Motion is granted.

Dated:   February 13, 2018

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE