NOT FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK
FEB 14 2018
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

MANLEY TOYS LIMITED,

    Debtor in a Foreign Proceeding.

Case No. 16-15374 (JNP)

Chapter 15

## MEMORANDUM DECISION GRANTING MOTION FOR SANCTIONS

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Before the Court is a motion (the "Motion") filed by ASI, Inc., f/k/a Aviva Sports, Inc. ("Aviva"), seeking sanctions, including actual damages, costs, attorneys' fees, and punitive damages against Toy Quest Ltd. ("Toy Quest"), for its alleged willful violation of the stay imposed by order of this Court on April 1, 2016 (the "Stay Order"). Dkt. No. 18. The Stay Order incorporated the provisions of section 362 of Title 11 of the United States Code (the "Bankruptcy Code"), and was modified by order entered on October 25, 2016 (the "First Relief Order").

### Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 157(b)(1) and § 1334(b) and (d). Venue is proper in this Court under 28 U.S.C. § 1410. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).

### Background

The alleged violation relates to Aviva's motion for garnishment (the "Garnishment Action") currently pending in the United States District Court for the Middle District of Tennessee (the "Tennessee Court"). The Garnishment Action involves $97,654.31 (the "Funds") that Dollar General Corporation ("Dollar General") possessed and was due and owing to a "Toy Quest

Limited". Aviva essentially makes two separate arguments in the Garnishment Action. Under Aviva's alter ego theory, the Funds belong to respondent Toy Quest, but may be folded into Debtor's assets if Aviva can establish its alter ego or fraudulent transfer claim. However, under Aviva's trade name theory, the Funds are part of the Debtor's assets right now. Aviva argues that the Debtor used the trade name "Toy Quest Limited" in its business dealings with Dollar General and these Funds were supposed to be paid to the Debtor. Under this theory, (the "Trade Name Theory") the respondent to this Motion, which happens to also be called Toy Quest Ltd., has no claim to the Funds at all. Toy Quest filed a motion to intervene in the Garnishment Action on December 7, 2015. While Toy Quest's motion to intervene was pending, the Debtor filed a Chapter 15 petition for recognition (the "Debtor's Petition") and this Court entered the Stay Order.

Following entry of the Stay Order, Aviva filed a motion requesting sanctions against Toy Quest ("First Motion for Sanctions"), for an alleged violation of the Stay Order. Dkt. No. 118. In the First Motion for Sanctions, Aviva alleged that Toy Quest, along with others, attempted to obtain possession of the Debtor's property, by trying to collect funds owed from Costco to the Debtor. On August 25, 2016, the Court placed an oral decision on the docket (the "August 25 Decision"). Dkt. No. 141. The Court found that there may have been a technical violation of the Stay Order, but because Aviva had no injury beyond attorney fees and failed to mitigate those damages by contacting Toy Quest to resolve the issue, the First Motion for Sanctions would be denied.[1] Id. The Court stated that it would "view this as an isolated situation that does not constitute a willful stay violation." Id. However if the Court learned of additional violations, it would "not hesitate to revisit this issue." Id.

Aviva then filed a motion for relief from the Stay Order. Dkt. No. 144. The Court modified the Stay Order on October 25, 2016, with its Order granting in part and reserving in part a decision

---

[1] No proposed order was submitted memorializing this ruling.

2

on the motion for relief. (the "First Relief Order"). Dkt. No. 159.

Specifically, the First Relief Order states:

> 2. The Provisional Stay entered by this Court on March 24, 2016 and set forth in the Court's April 1, 2016 Order . . . does not apply to any actions taken with respect to persons . . . other than Debtor Manley Toys Limited ("Manley"), except that . . . the Court reserves judgment on whether the assertion of non-independent claims such as alter ego or fraudulent transfer claims . . . is subject to the Provisional Stay
>
> * * *
>
> 10. The Court reserves judgment on all relief requested in Aviva's Motion for Relief from Provisional Stay not specifically addressed herein, including:
>
> * * *
>
> (f) Whether Aviva . . . may assert non-independent claims, including but not limited to fraudulent transfer, unjust enrichment, conversion, and money had and received received on claims, in any appropriate forum against Toy Quest Ltd., and/or other affiliates or agents of Manley, Manley Toy Direct, or Toy Quest Ltd.

Dkt. No. 159. Additionally, a footnote to the Stay Order, the Court stated that:

> For the purposes of this Order, "Debtor" specifically includes the Debtor to the extent that it conducts any business under a trade name other than Manley Toys Limited.

Dkt. No. 18.

On November 15, 2016, the Tennessee Court issued an order in the Garnishment Action, which acknowledged that the action was "stayed with regard to Defendant Manley Toys Limited", but referred the case to the magistrate judge for "a determination of whether the case against the other defendants may proceed and what disposition should be made . . . of the money held by the Clerk of the Court in this matter." Dkt. No. 235-5. Following that order, the Tennessee Court entered an order granting Toy Quest's motion to intervene on December 28, 2016 (the "Tennessee Order"). The Tennessee Order stated that it was "unclear to what extent the stay impacts the rights

3

of additional parties", and granted Aviva leave to file a response. Dkt. No. 196-5.

Instead of a response, Aviva filed a motion for a status conference and requested a continuance. Dkt. No. 196. Toy Quest filed a limited response in opposition to the request for a continuance (the "Limited Response"). The Limited Response argued that, as a matter of Tennessee state law, Aviva should not be permitted to garnish the funds prior to establishing that it is entitled to them, and as such the funds belong to Toy Quest and should be released. Dkt. No. 196-7. However, Toy Quest did acknowledge that, if the Tennessee Court disagreed with its legal assessment, and found that Aviva had not acted improperly, then the proceeding is stayed pursuant to the Stay Order. Id. at 9. Aviva sent notice to Toy Quest demanding that it withdraw the Limited Response, but Toy Quest declined to do so. Id. at 7.

Aviva then filed this Motion requesting sanctions for Toy Quest's alleged violation of the Stay Order. Aviva makes several arguments why the Limited Response violated the stay. First, Aviva argues that the Stay Order applied to all litigation claims, which included the Garnishment Action, as that action was listed on the Debtor's Petition as one of its pending litigation claims. Dkt. No. 196. So, Aviva argues, Toy Quest violated the Stay Order by attempting to litigate the merits of the stayed Garnishment Action. Further, Aviva argues, that even if the Garnishment Action was not specifically listed on the Debtor's Petition, the Stay Order applied to all litigation claims against the Debtor, and the Garnishment Action was brought against the Debtor. Second, Aviva argues that the Stay Order applied to all property of the Debtor, specifically including property under trade names. Id. Aviva argues the Funds were being paid to the Debtor under its trade name "Toy Quest Limited", and the Garnishment Action was brought against the Debtor, not against Toy Quest the separate legal entity and respondent to this Motion. Additionally, Aviva argues that Toy Quest was required to seek relief from the stay from this Court before pursuing assets that were even "arguably property" of the Debtor or subject to the Stay Order. Aviva's final

4

argument is that because this is the second time that it has had to bring a motion for stay violation, and because the August 25 Decision warned Toy Quest that the Court would revisit the issue of sanctions if necessary, the Court should impose punitive sanctions.

In its response, Toy Quest argues that Aviva has no standing to seek sanctions for a stay violation, because it has not suffered an injury. Additionally, Toy Quest argues that it did not violate the Stay Order, because the Stay Order did not apply to the Garnishment Action. To support this, Toy Quest argues that the Tennessee Order made clear that the Tennessee Court found the Stay Order did not apply to Toy Quest's intervention in the Garnishment Action and further that, the First Relief Order lifted the stay as to the Garnishment Action. This argument is based on the language in the Court's First Relief Order, quoted above, that the stay does not apply to actions against any non-debtors, except for the alter ego and fraudulent transfer actions. Toy Quest argues here, that the Funds are owed to Toy Quest, so this is an action against a non-debtor that is neither an alter ego nor fraudulent transfer claim, so the Stay Order does not apply. Finally, Toy Quest argues that it did not violate the Stay Order because it acknowledged and conceded in its Limited Response, that, if the Tennessee Court found the Funds did belong to the Debtor, then the Stay Order would apply.

A hearing on the Motion was held on November 29, 2017 (the "Hearing").

## Discussion

Unlike other chapters of the Bankruptcy Code, the automatic stay, pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay"), is not imposed immediately upon the filing of a petition for recognition under Chapter 15. See In re Pro-Fit Holdings Int'l Ltd., 391 B.R. 850, 862 (Bankr. C.D. Cal. 2008). Instead, the Automatic Stay is imposed only upon a court's recognition of the foreign main proceeding. In re ABC Learning Ctrs. Ltd., 728 F.3d 301, 311 (3d Cir. 2013). To authorize relief during the gap period between the time of filing a petition for recognition and

5

the court ruling on recognition, section 1519(a) of the Bankruptcy Code provides that "the court may grant relief of a provisional nature, including . . . staying execution against the debtor's assets." Pro-Fit, 391 B.R. at 858 (citing 11 U.S.C. § 1519(a)(1)). Here however, the Stay Order issued by this Court also incorporated the protections and provisions of section 362 by its terms. Thus, the typical analysis applied in a motion for violation of the Automatic Stay is applicable to this case, as well as, if necessary, any analysis specific to a violation of this Court's Stay Order.

### Violation of the Stay Order

Section 362(k)(1)[2] requires the imposition of sanctions on a party violating the automatic stay if: "First, the offending party must have violated the automatic stay; Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury." In re Miller, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011) (quoting Wingard v. Altoona Reg'l Health Sys., (In re Wingard), 382 B.R. 892, 900 n. 6 (Bankr. W.D. Pa. 2008)); In re Frankel, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008) (movant must prove that the action violated the stay, was willful, and caused actual damages).

A violation of the stay is "willful" under section 362(k) "upon a finding that the defendant knew of the automatic stay and that the defendants' actions which violated the stay were intentional." In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990) (quoting In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)). If the Court determines that filing the Limited Response and requesting the Tennessee Court award the Funds to Toy Quest was a violation, then it was willful, as Toy Quest knew of the Stay Order. Thus, the only issues before this Court are: (1) whether Toy Quest's filing of the Limited Response was a violation of the Stay Order; and (2)

---

[2] Although section 362(k) refers to an individual, the section has uniformly been held to be applicable to a corporate debtor. In re Atl. Bus. & Cmty. Corp., 901 F.2d 325, 329 (3d Cir. 1990).

6

whether Aviva has been injured.

The alleged violation is Toy Quest's attempt to obtain the Funds being held in the Garnishment Action. Thus, in order to determine whether there has been a violation of the Stay Order, the Court must first determine whether the Funds, or the Garnishment Action itself, was property of the Debtor or otherwise subject to the Stay Order.

Section 362(a)(3) does not specify whether the Automatic Stay applies to property with uncertain status at the time the Automatic Stay is imposed. In re Chesnut, 422 F.3d 298, 303 (5th Cir. 2005). Several courts have concluded that the Automatic Stay applies to any property that is even "arguably" property of the estate. Id. at 304; see also In re Glob. Outreach, S.A., 2009 WL 1606769, at *7 (Bankr. D.N.J. 2009) (citing Chesnut approvingly). In Chesnut, a non-debtor wife purchased property and was named in the deed as the sole purchaser. The debtor later filed bankruptcy and listed an interest in the property on his petition. The mortgagee continued foreclosure proceedings despite notice of the bankruptcy. In the Chesnuts' home state of Texas, there is a rebuttable presumption that any property purchased during a marriage is community property, and there had been no legal resolution as to whether property was solely Mrs. Chesnut's. Id. at 300. The bankruptcy court, without deciding whether the property was community property, found that this conduct was a violation of the stay. Id. at 301. The Fifth Circuit affirmed, finding that at the time of the foreclosure, the property was "arguable property" of the estate, in that its legal status was uncertain. Id. at 303. The court ruled that "bankruptcy law demands some process prior to the seizure" of property to which the debtor has an arguable claim of right. Id. at 304.

The Fifth Circuit supported this finding by pointing to the language and purpose of the Automatic Stay, noting that "[t]he automatic stay is designed to protect creditors as well as debtors." Id. at 301. This Court agrees, "the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment

7

of other creditors." Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) (citing Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)). Further, the language of the Bankruptcy Code shows the intent that the automatic stay have broad application. Chesnut, 422 F.3d at 303 (citing In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 637 (3d Cir. 1998)). "This breadth suggests Congressional intent that, in the face of uncertainty or ambiguity, courts should presume protection of arguable property." Id. Finally, the Fifth Circuit noted that the fact that the district court later determined that the debtor had no interest in the property did not change this analysis. In other words, a creditor cannot seize property that is arguably part of the estate, and then defend its actions by stating it believes the debtor does not have any interest in it, regardless of what the final determination on ownership of the property is. See id. "[A] retroactive classification of the property to shape the scope of the stay would encourage creditor abuse." Id. To support its finding, the Fifth Circuit cited to the Supreme Court's language that "a post-seizure determination vindicating a creditor's property rights was not sufficient to ameliorate the insufficient process attendant to a pre-vindication seizure of the property." Id. (citing Sniadach v. Family Fin. Corp. of Bay View, 395 U.S. 337 (1969)).

In this case, the Stay Order, and the First Relief Order both stated that the stay applies to property of the Debtor and the Stay Order incorporated the protections of the Automatic Stay, which includes a prohibition on "any act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). The Debtor's interest in the Funds was the subject of ongoing litigation at the time the Stay Order was entered. As with the debtor's interest in the real property in Chesnut, here, the Funds were "not clearly part of [the Debtor's property] at the time of the [creditor action], but neither [were they] clearly not part of [the Debtor's property]". Chesnut, 422 F.3d at 303 (emphasis original). There was ongoing litigation to determine whether the Funds were the Debtor's property. As such, the Stay Order applied to the Funds, and Toy Quest violated the stay

8

by attempting to obtain possession while without first seeking relief from the Stay Order from this Court. This decision is supported by case law from this district. See generally, In re Glob. Outreach, S.A., 2009 WL 1606769, at *8 (Bankr. D.N.J. June 8, 2009) (applying the "arguably property" doctrine, and citing cases that agree). Thus, the Court finds there has been a violation of the Stay Order.

Toy Quest makes several arguments why the Stay Order does not apply to the Funds. First, Toy Quest argues that the Court should not apply Chesnut because it is not binding on this Court and that Chesnut is distinguishable on the facts. In support of this, Toy Quest points to In re Jahr, in which the Ninth Circuit rejected the contention that the Automatic Stay extends to "arguable property of the estate". In re Jahr, 2012 WL 3205417, at *7 (B.A.P. 9th Cir. Aug. 1, 2012).

In Jahr, the court considered a motion for contempt for failure to return property of the estate. The court first noted that, in order to find a party in contempt of a court order, there must first be a finding that the order the party violated was "specific and definite." Id. at *3. The court then noted that the Automatic Stay "qualifies as a specific and definite court order" for purposes of a contempt proceeding. Id. (citing In re Dyer, 322 F.3d 1178, 1191 (9th Cir. 2003) (Because the "metes and bounds of the automatic stay are provided by statute and systematically applied to all cases . . . there can be no doubt that the automatic stay qualifies as a specific and definite court order.")) However, the Jahr court stated that if the Automatic Stay is expanded to cover "arguable estate property", the scope becomes so broad and ill-defined, that it may not be considered "specific and definite" any longer. Id. at *7. That is Toy Quest's argument here.

However, the facts of this case do not support Toy Quest's argument. The term "arguable property" may, in certain circumstances, be too vague and ultimately not appropriate for use in a motion for contempt or sanctions under section 105 or 362(k) of the Bankruptcy Code. However, in a case where the debtor's interest in property is the subject of ongoing litigation at the time the

stay is implemented, there is no concern that applying the stay to this property will result in the scope of the stay becoming ill defined. Further, as the Chesnut court pointed out, "a retroactive classification of the property to shape the scope of the stay would encourage creditor abuse." 422 F.3d at 304. This is of particular concern in cases where pending litigation could be terminated as a result of creditors' abuse of the Automatic Stay. Failure to enforce the stay in these instances could result in rights being lost under statute of limitations or judicial orders. As previously noted, the Automatic Stay "protect[s] the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors." Mar. Elec. Co., 959 F.2d at 1204. Ensuring that any property, the ownership of which is in the process of being litigated when the Debtor files bankruptcy, is not collected and liquidated by a creditor before it final status can be determined serves the most basic purpose of the Automatic Stay. The stay protects creditors by preventing individual creditors from "acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." Id. "Without it, certain creditors would be able to pursue their own remedies against the debtor's property." Krystal Cadillac, 142 F.3d at 637; see also Chesnut, 422 F.3d at 301 (citing In re Stembridge, 394 F.3d 383, 387 (5th Cir. 2004) ("Without the stay, creditors might scramble to obtain as much property of the debtor's limited estate as possible.")). This is the exact allegation raised by Aviva - that Toy Quest is attempting to abscond with Funds properly belonging to the Debtor. This Court finds that where the Debtor's interest in a given property is currently being litigated, the protections of the stay should apply to that property, and further that applying such protections does not cause the Stay Order to become vague or indefinite in any way. Additionally, requiring parties to seek relief in these circumstances prior to attempting to seize the property is neither onerous nor overly burdensome.

Moreover, the facts in this case present a stronger reason why the property should be

protected by the Stay Order than the facts of Chesnut. In Chesnut, there was no pending litigation regarding whether the debtor had any interest in the property, the debtor merely argued that he held an interest. See Chesnut, 422 F.3d 298. Here, at the time the Stay Order was entered, there was litigation pending in the Tennessee Court over whether the Debtor held an interest in the Funds. As such, this Court finds that the Stay Order does apply to the Funds, as the Debtor's interest in them was subject to litigation at the time the Stay Order was imposed.

Toy Quest next argues that paragraph 2 of the First Relief Order lifted the stay as to all actions not involving the Debtor, so that the stay no longer applied to the Garnishment Action or the Funds. Toy Quest argues that the stay no longer applied to actions against any party other that the Debtor, with the exception of alter ego and fraudulent transfer claims. Toy Quest's argument is that the Garnishment Action is an action against a non-debtor (Toy Quest), which does not allege either an alter ego, nor a fraudulent transfer claim, and therefore the First Relief Order lifted stay as to this action. Toy Quest further argues that it is a separate legal entity from the Debtor, and the Funds are owed to it, and until an alter ego or fraudulent transfer claim is successfully brought, the Funds remain property of Toy Quest. So, Toy Quest argues, the Funds are not subject to the Stay Order.

Toy Quest's argument is only viable if it is assumed that Toy Quest's position in the Garnishment Action is correct and the Debtor has no interest in the Funds. Aviva argues two separate theories in the Garnishment Action, and the distinction between them is significant. Under Aviva's alter ego or fraudulent transfer theory, the Funds belong to Toy Quest, but may become the Debtor's property, if Aviva can show that Toy Quest is merely the alter ego of the Debtor, or that the Funds were fraudulently transferred from the Debtor. However, under Aviva's Trade Name Theory, the Funds are owed directly to the Debtor, which did business with Dollar General under the trade name "Toy Quest Limited", but is a separate legal entity from the Toy Quest entity

11

that is the respondent to this Motion. In other words, under Aviva's Trade Name Theory, the Debtor is Toy Quest Limited, and did business with Dollar General under that name, and the Funds belong directly to the Debtor. Further, Aviva argues, the respondent Toy Quest has no interest in the Funds, it is a separate entity that just happens to have the same name the Debtor was using.

This distinction is significant because, under the alter ego theory, the Funds are not property of the Debtor until a court determines that Toy Quest is the alter ego of the Debtor. However, under the Trade Name Theory, the Funds are currently property of the Debtor, and the Stay Order applies to litigation involving property of the Debtor. Further, Aviva argues, the Garnishment Action is not between Aviva and Toy Quest but instead it is an action to determine whether the Funds belong to the Debtor. During the Hearing, the Court repeatedly questioned Toy Quest's attorney on this distinction, and the response was simply that "A d/b/a is the same as saying these two companies are one in the same." Nov. 29 Hearing at 10:58:30. Toy Quest's attorney said several times that Toy Quest uses the vernacular "alter ego" to cover all such arguments. However, the key distinction under the Trade Name Theory is that the Funds are the Debtor's property right now, and hence protected by the Stay Order. As such, the First Relief Order did not lift the stay as to the Garnishment Action, because the Garnishment Action involves property alleged to belong directly to the Debtor.

More significantly, the parties knew or should have known that the Stay Order covered the Garnishment Action, not only from the prior hearings on this matter, but also from the language of the Stay Order itself, which adopted the Automatic Stay for all property of the Debtor and stated that "Debtor" included "any business under a trade name other than Manley Toys Limited." Dkt. No. 18. As such, regardless of who the action is brought by or against, the Funds are alleged to belong directly to the Debtor, and are subject to an ongoing legal dispute to determine the Debtor's interest in them. Thus, Toy Quest's action violated the Stay Order.

Finally, the Court notes that to adopt Toy Quest's argument would result in an inequity in which Toy Quest would be permitted to present its argument in the Garnishment Action in an attempt to recover the Funds, but Aviva would be stayed from presenting its argument (in the same case) that the Funds belong to the Debtor. This inconsistency was not addressed by Toy Quest in its papers or at the Hearing. Ultimately, and for the reasons listed above, the Court declines to adopt this approach.

Toy Quest's remaining argument regarding standing is equally unpersuasive. The Court has previously addressed Toy Quest's argument that Aviva lacks standing to bring this Motion, and has found that Aviva does indeed have standing. See generally, In re Ampal-Am. Israel Corp., 502 B.R. 361, 369–70 (Bankr. S.D.N.Y. 2013) (Any violation of the automatic stay that impairs a creditor's distribution falls within the zone of interests protected by the automatic stay.); St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 543 (5th Cir. 2009) ("Accordingly, we hold debtors and creditors are entities whose grievances fall 'within the zone of interests' protected by § 362(k)."); In re Int'l Forex of Cal., Inc., 247 B.R. 284, 291 (Bankr. S.D. Cal. 2000) ("Based on the weight of authority on this issue, this Court finds that the Creditors have standing under [§ 362(k)] to seek damages for alleged stay violations."). Here, Aviva alleges a secured claim to the Funds, giving them a particularized injury and standing.

In summary, the Court finds that the Funds are protected by the Stay Order, as the Debtor's interest in the Funds was the subject of active litigation at the time the Stay Order was entered. Moreover, the Court finds that the previous orders issued in this case made clear that the Funds were subject to the Stay Order. As such, Toy Quest's conduct was a violation of the Stay Order, and as previously determined, this violation was willful. The only remaining issue is whether and what amount of damages is appropriate to award.

Damages

Under section 362(k), "'[a]ctual damages' are amounts 'awarded . . . to compensate for a proven injury or loss; damages that repay actual losses.'" In re Dean, 490 B.R. 662, 667–68 (Bankr. M.D. Pa. 2013) (quoting In re Copeland, 441 B.R. 352, 368 (Bankr. W. D. Wash.2010)). Actual damages are "awarded to a complainant in compensation for his actual and real loss or injury, as opposed to 'nominal' damages and 'punitive' damages." Id. Actual damages for a violation of the automatic stay "should be awarded only if there is concrete evidence supporting the award of a definite amount that can be ascertained with reasonable certainty." Id. (citing In re Frankel, 391 B.R. 266, 272 (Bankr.M.D.Pa.2008)). A damages award under section 362(k) "cannot be based on mere speculation, guess, or conjecture." Id. As Chief Judge Ferguson summarized:

> [Section] 362(k) requires a finding of actual injury. For that reason, 'the general rule of law is that absent some out-of-pocket injury or some extreme and on-going misconduct by the creditor, fees and costs will not be allowed under § 362[k].' Moreover, courts have overwhelmingly held that debtors have an obligation to attempt to mitigate damages prior to seeking court intervention. If litigation is unnecessary to afford a debtor a remedy for a [creditor's] willful violation of the stay, then fees for commencing and prosecuting such an action are not compensable.

In re Thors, 2012 WL 1658286, at *2 (Bankr. D.N.J. May 11, 2012).

However, "actual damages in the form of attorneys' fees are appropriate, despite the fact that there may not have been other compensable harm . . . ." In re Rodriguez, 2012 WL 589553, at *4 (Bankr. D.N.J. Feb. 22, 2012). The rationale for this is that the complaining party has been forced to take action to protect the property before it is removed by the offending party. Further, as noted in In re Thompson, 426 B.R. 759, 765 (Bankr. N.D. Ill. 2010), "§ 362(k) is not a typical fee-shifting statute, but rather provides for recovery of damages including attorneys' fees, not damages and attorneys' fees." Rodriguez, 2012 WL 589553, at *5 (citing Thompson, 426 B.R. at 765) (emphasis original). "Thus, attorneys' fees under § 362(k) are an element of damages when

a party seeks to remedy an automatic stay violation." Id. (citing In re Butts, 350 B.R. 12, 24 n. 12 (Bankr. E.D. Pa. 2006)). Of course, in order to recovery attorneys fees, "such fees must be reasonable and necessary." Id. (citing In re Miller, 447 B.R. 425, 435 (Bankr. E.D. Pa. 2011)). Reasonable and necessary fees do not include unnecessary litigation costs. See Miller, 447 B.R. 425. In Miller the creditor had violated the stay by sending an invoice for a pre-petition debt to the debtor, but unilaterally and without being asked to do so by the debtor, ceased collection attempts. Id. at 435. The debtors brought a motion for sanctions five months later. Id. The Miller court found that the "[de]btors were litigating something that did not need litigating." Id. Thus, none of the attorney fees could be considered necessary to bring and successfully prosecute the motion, and none were awarded.

Finally, if a violation is determined to be willful, the court "has discretion to impose punitive damages in appropriate circumstances." Solfanelli v. Corestates Bank, N.A., 203 F.3d 197, 203 (3d Cir. 2000) (internal quotation marks omitted). Punitive damages may be awarded to punish outrageous conduct or deter similar conduct in the future. Frankel v. Strayer (In re Frankel), 391 B.R. 266, 275 (Bankr. M.D. Pa. 2008).

Here, Aviva brought this Motion to prevent Toy Quest from moving forward with its argument in the Garnishment Action. This is the second time Toy Quest taken actions against property that was subject to the Stay Order without first appearing before this Court to seek relief. Moreover, Aviva attempted to mitigate its damages by demanding that Toy Quest cease its conduct and withdraw its Limited Opposition. Toy Quest refused to do so, instead moving forward with efforts to collect the Funds. While the Court does not consider this conduct to be so "outrageous" as to warrant punitive damages,[3] the Court will award Aviva damages in the amount of reasonable

---

[3] At the hearing, Aviva alleged additional stay violations by Toy Quest involving other retailers. These allegations were not considered by this Court as neither Toy Quest nor this Court were made aware of them until the Hearing. However, the Court will revisit the issue of punitive damages if Toy Quest's conduct warrants.

and necessary attorney fees and costs. The Court cautions that only those fees reasonably necessary to establishing the elements of this Motion will be awarded.

### Conclusion

The Court concludes that a debtor's claims in ongoing litigation are protected by the Stay Order, and that this protection extends to any property, the debtor's interest in which is being litigated at the time the stay goes into effect. As such, the Court finds Toy Quest violated the Stay Order in filing its Limited Response in the Garnishment Action with the Tennessee Court, seeking release of the Funds. Moreover, the Court finds that creditors do have standing to bring a motion for sanctions under section 362(k) of the Bankruptcy Code. The Court will award Aviva reasonable and necessary attorney fees and costs associated with bringing this motion.

Dated: February 14, 2018

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE