NOT FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK
FEB 23 2018
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

MANLEY TOYS LIMITED,

    Debtor in a Foreign Proceeding.

Case No. 16-15374 (JNP)

Chapter 15

## MEMORANDUM DECISION DENYING MOTION FOR STAY RELIEF

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

    Before the Court are issues related to the motion for stay relief (the "Motion") filed by ASI, Inc., f/k/a Aviva Sports, Inc. ("Aviva"). The Court previously issued a ruling as to part of the Motion, and reserved as to the remainder. Manley Toys Limited (the "Debtor"), is a foreign corporation that has entered voluntary liquidation proceedings pursuant to section 228(1)(c) of the Hong Kong Companies (Winding Up and Miscellaneous Provisions) Ordinance of Hong Kong statutory law. On March 22, 2016, Matt Ng and Robert Lees, in their capacities as the duly appointed joint and several liquidators (the "Liquidators") of the Debtor filed a petition under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code"), on behalf of the Debtor for recognition of a foreign main proceeding. On April 1, 2016, the Court entered a provisional stay order (the "Stay Order"), which incorporated the protections of section 362 of the Bankruptcy Code by its terms.[1] Aviva filed this Motion on September 13, 2016. The Liquidators oppose the Motion.

    On October 25, 2016 the Court entered an order partially ruling on the Motion (the "First

---

[1] On February 13, 2018, the Court entered an Opinion recognizing the Foreign Main Proceeding and asked the parties to confer and submit an order granting the Liquidators Motion for Recognition. That Order has not yet been submitted.

Relief Order"). The Court reserved on deciding whether to grant stay relief as to six other areas of relief sought. Thereafter, between October 2016 and May 2017, Aviva and the Liquidators filed several additional briefs on the matter. The areas of additional stay relief that Aviva seeks are listed in Paragraph 10 of the First Relief Order. Specifically, Aviva wishes to move forward with two causes of action against Toy Quest Limited ("Toy Quest"), an affiliate of the Debtor; the first is a claim for fraudulent transfer, and the second is an alter ego claim.

In addition Aviva seeks stay relief to: (a) take post-judgment discovery from the Debtor or the Liquidators concerning the judgment it obtained against the Debtor or regarding the judgment it obtained against Manley Toy Direct; (b) request from courts in the United States relief with respect to the Debtor or the Liquidators to ensure the preservation of evidence relating to the judgments it obtained against the Debtor or Manley Toy Direct; (c) seek injunctive sanctions against the Debtor for violating post-judgment discovery orders issued pre-petition by the Minnesota Federal Court; and (d) seek to amend complaints or judgments to include third parties.

Aviva argues that the alter ego and fraudulent transfer claims are not being brought against the Debtor or its property, but instead against an affiliate of the Debtor. Therefore, Aviva argues, neither the Stay Order, nor the automatic stay, should apply to prevent Aviva from bringing these claims, or, in the alternative, that the stay should be lifted to permit Aviva to move forward with those actions. In response, the Liquidators argue that Aviva should be stayed from pursuing these actions, as the actions themselves are property of the Debtor, and as such can be brought only by the Liquidators. Thus, the issue here is whether these claims belong to the Debtor, or whether they may be brought by individual creditors.

Because the Court finds that under Hong Kong law, once a corporation is in liquidation, claims for fraudulent transfer and alter ego belong exclusively to the liquidators, the Motion is denied with respect to those two requests for relief.

2

For the reasons detailed below, the remainder of the Motion denied in part and granted in part.

## Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 157(b)(1) and § 1334(b) and (d). Venue is proper in this Court under 28 U.S.C. § 1410. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## Analysis

### A. Alter Ego & Fraudulent Transfer Claims

Upon recognition of the foreign main proceeding, the automatic stay under section 362 of the Bankruptcy Code applies to Chapter 15 bankruptcy cases "with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." In re ABC Learning Ctrs. Ltd., 728 F.3d 301, 311 (3d Cir. 2013) (citing 11 U.S.C. § 1520(a)). Section 362 provides for an automatic stay of actions "against the debtor or against property of the estate." Id. (citing 11 U.S.C. § 362(a)). "It is well understood that the automatic stay imposed under 11 U.S.C. § 362 is applicable only to a debtor. Importantly, however, courts have applied the stay to non-debtors when it is ascertained that a claim against a third party will have an immediate adverse economic consequence for the debtor's estate." In re Hanjin Shipping Co., Ltd., 2016 WL 6679487, at *5 (Bankr. D.N.J. Sept. 20, 2016). Moreover, "[a]fter a company files for bankruptcy, 'creditors lack standing to assert claims that are 'property of the estate.'" In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014) (quoting Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir.2002)).

As noted above, the issue here is whether Aviva can bring fraudulent transfer and alter ego claims against an affiliate of the Debtor. The Liquidators argue that these claims may not be brought by individual creditors. Thus, the Court must determine whether the alleged fraudulent

transfer and alter ego claims are property of the Debtor, and as such protected by the automatic stay.

"The Bankruptcy Code does not define 'property of the debtor.'" ABC Learning Ctrs., 728 F.3d at 311–12 (citing Begier v. I.R.S., 496 U.S. 53, 58, (1990)). Outside of the context of a Chapter 15 case, the Supreme Court has looked to section 541 when defining "property of the estate" to interpret "property of the debtor." Id. But in a Chapter 15 a court does not create a separate bankruptcy estate. Chapter 15 provides for an ancillary proceeding so the foreign representative does not need to file a new bankruptcy action in the United States. Id. (citing In re Condor Ins. Ltd., 601 F.3d 319, 320-27 (5th Cir.2010)). Accordingly, courts interpreting the statutory language in Chapter 15 have not found section 541 relevant to defining "property of the debtor." Id. Further, section 103(a) of the Bankruptcy Code states that section 541 of the Bankruptcy Code does not apply in a Chapter 15 case. In re Lee, 472 B.R. 156, 178 (Bankr. D. Mass. 2012). To determine what constitutes "property of the estate", the Court must look to the controlling law where the foreign main proceeding is located. See ABC Learning Ctrs., 728 F.3d at 312 (foreign main proceeding in Australia, the extent of the debtor's interest in property is governed by the Australia's Corporations Act); Lee, 472 B.R. at 178 (same for Hong Kong). Thus, the Court must determine whether, under Hong Kong law, claims that the Debtor fraudulently transferred assets to an affiliate, or that a non-debtor party is the alter ego of the Debtor, would properly be brought by the Liquidators, or whether such claims would belong to and therefore could be brought by individual creditors.

Aviva argues that it should be permitted to bring fraudulent transfer and alter ego claims against the non-debtor company Toy Quest because the automatic stay does not extend to non-debtors. Aviva submitted several cases from Hong Kong in which creditors brought fraudulent transfer claims against corporations and has also submitted case law and expert testimony in

support of its argument that fraudulent transfer and alter ego claims are available to creditors under Hong Kong law. See Liu Hon Ying v Hua Xin Enterprise (Hong Kong) Ltd. [2003] 3 HKLRD 347, HKCF. However, none of those cases involved a creditor bringing fraudulent transfer or alter ego claims against a corporation while the corporation was being wound up. In contrast, the Liquidators submitted the case of Horace Yao v. Pearl Oriental Innovation Ltd. f/k/a China Merchs Dichain (Asia) Ltd. [2010] HKEC 537. In Horace Yao, a creditor ("Yao") of Dransfield Holdings Ltd. ("DHL"), attempted to bring fraudulent transfer and alter ego claims against DHL, while DHL was being wound up. Yao claimed that DHL sold its interest in a valuable company for less than its market value shortly before entering liquidation proceedings. Additionally, prior to entering liquidation, the shares of DHL were cancelled and replaced with shares in a new company, which did not satisfy DHL's debts. Yao brought fraudulent transfer and alter ego claims, and the Hong Kong court considered whether these claims were available to Yao as a creditor and concluded they were not. Id.

Beginning with the fraudulent transfer claims, the Horace Yao court explained that, assuming DHL had been stripped of its assets through the transfer, that "does not, of itself, give rise to a cause of action that may be brought by the plaintiffs." Horace Yao ¶ 34. The court pointed out that any cause of action for stripping the corporate assets would belong to DHL alone under Hong Kong law, and so now would belong to the liquidators. Id. Further, the Horace Yao court discussed section 60 of the Conveyancing and Property Ordinance Cap. 219, the Hong Kong statutory provision for fraudulent transfers, and explained that while there could be a claim for fraudulent transfer pursuant to this statutory provision, "that remedy is brought for the benefit of the company and the creditors as a whole. It does not give rise to any right of action on the part of an individual creditor." Id. Therefore, under Hong Kong law, similar to the Bankruptcy Code, fraudulent transfer claims may be brought by the Liquidators once a corporation is in a liquidation

5

process.

The Horace Yao court gave several policy reasons for preventing individual creditors from recovering on fraudulent transfer claims once a liquidation has begun. First, the Horace Yao court discussed the policy of preventing recovery of reflective loss. Reflective loss was explained in Re Ocean Time Dev. Ltd. & Others, [2006] HKEC 969, in which an individual creditor of several insolvent corporations, attempted to bring an action against the liquidators of those corporations, because the liquidators sold property of the insolvent corporation for less than market value. Comparing this scenario to a shareholder of a corporation who is attempting to bring an action against its directors or officers, the Ocean Time court explained that where a plaintiff suffers loss by reason of a diminution in the value of a company in which he is interested (either as a creditor or shareholder), the proper plaintiff is the company itself, not an individual shareholder. The nature of the losses there, as the nature of the losses of suffered by Horace Yao, are not direct or particularized to one creditor, but rather are a common injury shared equally by all creditors. As such, the creditor cannot pursue an individual claim for recovery, because the claim is held by the corporation as a whole, to recover equally for all creditors.

In short, a reflective loss is an injury shared by all creditors in the same manner and to the same degree, as opposed to an injury that only one creditor suffers, or that one particular creditor suffers in some unique manner. As such, Hong Kong courts reserve the right to recover for such injuries for liquidators that represent all creditors, rather than permitting any single creditor recover on its own behalf. Although the terminology is different, a similar principle exists under United States Bankruptcy law, where the courts do not allow individual creditors to bring causes of action for their own benefit where the injury is one shared equally by all creditors of the estate. In re Flintkote Co., 486 B.R. 99, 120 (Bankr. D. Del. 2012), aff'd, 526 B.R. 515 (D. Del. 2014). In Flintkote, the court stated "[w]hether the underlying cause of action is property of the estate

6

depends upon (i) whether under state law a corporation is permitted to bring an alter ego claim; and (ii) <u>whether the claim is a general claim that is common to all creditors</u>." <u>Id.</u> (emphasis added).

The <u>Horace Yao</u> court explained that preventing recovery of reflective loss is "doubly important" where a company is insolvent, because "the essence of distribution in a winding up is that creditors of equal rank should share whatever assets remain equally." <u>Horace Yao</u> ¶ 35. The importance of equality of distribution, sometimes referred to as <u>pari passu</u>, is emphasized in several cases submitted by the parties. <u>See</u> e.g., <u>CCIC Fin. Ltd. V. Guandong Int'l Trust & Inv. Corp. & Guandon Int'l Trust and Inv. Corp. Hong Kong (Holdings) Ltd. (Garnishee)</u> [2005] HKEC 1180. As the <u>CCIC</u> court explains by quoting from an English Court case, "[t]he general principle, when there is no insolvency, is that the person who gets in first gets the fruits of his diligence . . . . But it is different when the estate is insolvent." <u>Id.</u> ¶ 49 (quoting <u>Prichard v. Westminster Bank Ltd.</u> [1969] 1 WLR 547, 549 Eng.)). The <u>CCIC</u> court explained that, although the English Court was discussing a bankruptcy and not a liquidation "the principle of fairness of amongst creditors of equal rank is the same." <u>Id.</u> at ¶ 51.[2]

As a result, individual creditors are not permitted to bring fraudulent transfer actions in a liquidation because "were the plaintiffs to recover from the defendant on the basis that the defendant had assets of [the debtor] other creditors of [the debtor] would not recover what was due them." <u>Horace Yao</u> ¶ 35. This policy is also consistent with U.S. law. <u>See</u> <u>In re Cybergenics Corp.</u>, 226 F.3d 237, 244 (3d Cir. 2000) (The automatic stay prevents individual creditors from pursuing avoidance actions for their own benefit rather than for the benefit of all creditors.); <u>In re Granite Partners, L.P.</u>, 194 B.R. 318, 324–25 (Bankr. S.D.N.Y. 1996), <u>corrected</u> (Apr. 16, 1996) (where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting

---

[2] The importance of this concept was also discussed during the hearings on recognition. <u>See</u> Transcript of Hearing held on May 13, 2016 at 157:3-6. Dkt. No. 111. <u>See also</u> Declaration of Kingsley Tze-Wei Ong in support of Verified Petition. ¶¶ 29-30. Dkt. No. 55.

7

the claim notwithstanding that outside of bankruptcy, they have the right to do so). Indeed, this is a required principle in order for a foreign liquidation to be considered "collective proceeding" and be recognized in the United States. See ABC Learning Ctrs., 728 F.3d at 310 ("The collective proceeding requirement reflects U.S. policy to provide an orderly liquidation procedure under which all creditors are treated equally."). Therefore, the Court finds that, under Hong Kong law, the fraudulent transfer claims are properly brought by the Liquidators, and not by Aviva.

Regarding the alter ego claims, the Horace Yao court initially stated that there was not enough evidence to support such a claim in that case, but also found that, even assuming the evidence supported this, the claim would not be available to the plaintiffs. Horace Yao ¶ 33. The court explained "piercing the corporate veil does not give rise to a cause of action in itself." Id. ¶ 38. Instead, it is available only when there is an underlying cause of action with which it will be brought. Thus, "[i]t is necessary to determine what the underlying cause of action is." Id. In that case, as Yao had no claim for fraudulent transfer, the court found that no claim for alter ego claim could lie. However, many of the same policy concerns the Horace Yao court considered in determining the fraudulent transfer issue are also present in determining whether a claim for alter ego may be brought by an individual creditor.

For example, the concept of preventing recovery for "reflective loss", is equally applicable to an alter ego claim. Indeed, this general principle has been repeated in the Third Circuit, when considering whether a creditor has the right to bring an alter ego claim against a non-debtor. See In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014) (where the alter ego claim was a generalized one, it belongs to the estate, not individual creditors); In re Buildings By Jamie, Inc., 230 B.R. 36, 44 (Bankr. D.N.J. 1998) (finding that individual creditors lacked standing to bring alter ego claims against non-debtor third parties because recovery would benefit the estate as a whole, rather than any individual creditor). This is so despite the fact that, outside of bankruptcy, individual creditors

may have the right to bring these claims. Additionally, the rationale behind these decisions is closely linked to the principle of equality of distributions. As such, allowing Aviva to pursue these claims and recover from a previously untapped and unaccounted for source of the Debtor's assets would risk a result in which "other creditors of [the Debtor] would not recover what was due to them." Horace Yao ¶ 35.

Here, the claims in question are alter ego and fraudulent transfer claims to be brought against an affiliate of the Debtor. If these claims are successful, any recovery would be for the benefit of all creditors, and, as such, this is a generalized claim, properly brought by the Liquidators, not by an individual creditor. See Horace Yao ¶ 34. Moreover, to the extent Aviva argues it should be able to collect against any newly discovered assets, this would violate the basic and essential concept of equality of distribution underlying Hong Kong liquidation law.

B.    Post-Judgment Discovery

The First Relief Order also reserved decision on whether Aviva may take post-judgment discovery from the Debtor or the Liquidators concerning the pre-petition judgment it obtained against the Debtor, or the separate but affiliated entity, Manley Toy Direct. "Section 362(a)(1) applies only to actions against a debtor." In re Miller, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001). As such, Aviva is barred from seeking recovery or discovery in an effort to recover from the Debtor or for pre-petition judgments against the Debtor outside of the Chapter 15 proceedings. However, this does not bar discovery aimed at a debtor, so long as the discovery pertains to claims or defenses of a non-debtor party. Id. at 504 (citing In re Hillsborough Holdings Corp., 130 B.R. 603, 605 (Bankr. M.D. Fla. 1991)). In Miller, a third party sought discovery, in the form of testimony from a debtor, in its pursuit of a claim against a non-debtor. Id. at 505. The court found that the automatic stay did not bar such discovery, as the action being pursued was against a non-debtor, and the seeking information from a debtor is not protected by the automatic stay. Id. This Court agrees,

9

and finds that obtaining information from a Debtor in pursuit of a claim against a third party does not violate the automatic stay, and does not violate the Stay Order.

However, section 1510 of the Bankruptcy Code reads: "The sole fact that a foreign representative files a petition under section 1515 does not subject the foreign representative to the jurisdiction of any court in the United States for any other purpose." 11 U.S.C. § 1510. As such, while the automatic stay does not bar Aviva from seeking discovery from the Liquidators, this decision is not a determination of whether the Liquidators would be required to respond, and all parties' rights with regard to any such discovery requests are preserved.

### C.  Preservation of Evidence

The First Relief Order also reserved making a determination on whether Aviva may seek relief in other courts to compel the Debtor or the Liquidators to preserve evidence related to Aviva's judgment against the Debtor, or against the nondebtor Manley Toy Direct.

As noted, upon recognition of a foreign bankruptcy, sections 361 and 362 apply with respect to the Debtor and the property of the Debtor within the territorial jurisdiction of the United States. See 11 USC § 1520(a)(1). One of the primary purposes of the automatic stay "to avoid interference with the orderly liquidation or rehabilitation of the debtor." Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (citing Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)). Under the Bankruptcy Code, creditors' requests for relief from a stay must be authorized by the Bankruptcy Court to:

> prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor. Because it is the bankruptcy judge who is the most knowledgeable about the debtor's affairs, and about the effect that any judicial proceeding would have on the debtor's reorganization, it is essential that he make the determination as to whether an action against the debtor may proceed or whether the stay against such actions should remain in effect.

St. Croix Condo., 682 F.2d at 448. Finally, the Third Circuit has interpreted the statutory jurisdiction of bankruptcy court found in section 1334(b) of Title 28 broadly, to include, cases, "the outcome of which proceeding could conceivably have any effect on the estate being administered in bankruptcy." Borman, 946 F.2d at 1036 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (citations and emphasis omitted) (interpreting predecessor to § 1334(b)).

As such, the Court finds that to permit Aviva such broad relief is inappropriate. The Court first notes that Mr. Ng, one of the Liquidators, stated on the record that he has already taken steps to preserve information. See Dkt. Nos. 110 and 111 at 109-110. Further, any additional requests to require action on the part of the Liquidators should be made before this Court. Channeling all such requests through this Court is reduces the chances of the Debtor's assets being depleting through repetitive and unnecessary litigation, and this Court is most familiar with the facts surrounding the liquidation of the Debtor, putting it in the best position to make an efficient decision.

### D.  Injunctive Relief

For many of the same reasons, the Court will deny Aviva's request for relief to seek injunctive sanctions against the Debtor for violating the Minnesota District Court's orders. The Debtor is no longer operating, and the Liquidators are responsible for marshalling the Debtor's assets in order to disperse these assets to creditors in accordance with Hong Kong Law. Any injunction imposed by another court would interfere with the Liquidators in their attempts to carry out the duties imposed upon them by the Bankruptcy Code and Hong Kong Law, and thus have a negative effect on other creditors. Aviva has already been granted relief to seek monetary damages it believes itself entitled to, and is free to pursue collection of those damages along with its other claims through the Hong Kong liquidation case.

### E. Amended Complaints

Finally, in the First Relief Order the Court reserved judgement as to whether Aviva would be granted relief to permit them to amend complaints or judgments to include third parties. The stay applies only to the Debtor and the Debtor's assets, and as such does not prevent Aviva from pursuing non-debtor parties.

### Conclusion

Under Hong Kong law, while fraudulent transfer claims may be available to individual creditors outside of a liquidation proceeding, these claims belong to the Liquidators once the corporation is being wound up. Preserving these claims for the Liquidators ensures that all creditors of equal priority share pari passu, which is a policy wholly consistent with United States Bankruptcy law. Regarding the alter ego claim, the Court finds this claim is not available to Aviva because, assuming Aviva's allegations are accurate, a ruling in its favor would benefit all creditors equally, making this a generalized claim, properly brought by the Liquidators. Further, for the same policy reasons that the fraudulent transfer claims are not available, permitting Aviva to move forward with an alter ego claim individually would risk violating the policy of equality of distribution, allowing Aviva to recover its claim against assets of the Debtor at the expense of other creditors of equal rank. The Court concludes that the stay properly applies to fraudulent transfer and alter ego claims against the non-debtor Toy Quest, and only the Liquidators may bring such claims. As such, that portion of the relief requested in the Motion is denied. The Court also finds that Aviva's request for relief to pursue orders in other courts requiring the Liquidators to preserve evidence related to the judgments Aviva has obtained is too broad. The Liquidators have mandates under Hong Kong law and have stated they are taking steps to preserve such evidence. Any additional specific requirements Aviva wishes to have imposed upon the Liquidators should be made with this Court, which will make a determination on a case by case basis. Similarly, Aviva's

request for relief to pursue injunctive sanctions against the Debtor is denied, as the Debtor is no longer operating, and any such relief would merely the Liquidators ability to marshal the Debtor's assets.

However, Aviva's requests for relief from the stay to permit Aviva pursue post-judgment discovery form the Debtor or the Liquidators, and to amend any judgments or complaints, is granted to the extent consistent with this opinion.

The Court asks counsel for Aviva to circulate and submit a proposed order in accordance with this Opinion.

Dated:  February 23, 2018

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE