FILED

JEANNE A. NAUGHTON, CLERK

JUN 2 1 2018

U.S. BANKRUPTCY COURT
CAMDEN, N.J.

BY_____DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>MANLEY TOYS LIMITED,<br><br>        Debtor in a Foreign Proceeding. | Case No. 16-15374 (JNP)<br><br>Chapter 15 |

## MEMORANDUM DECISION GRANTING, IN PART, AND DENYING, IN PART, AVIVA'S REQUEST FOR REIMBURSEMENT OF FEES

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Before the Court is the application for payment of attorney fees ("Fee Application") filed by ASI, Inc., f/k/a Aviva Sports, Inc. ("Aviva"), seeking $282,966.49 in fees and costs incurred by its attorneys Weisbrod, Matteis & Copley, PLLC. ("Aviva's Counsel"), as damages for prosecuting its motion for sanctions (the "Sanctions Motion"), Dkt. No. 144, against Toy Quest Ltd. ("Toy Quest"), for Toy Quest's willful violation of the stay imposed by order of this Court on April 1, 2016 (the "Stay Order"). Dkt. No. 18. On February 14, 2018, the Court entered an opinion determining that Toy Quest had violated the stay, and an Order granting Aviva's Sanctions Motion (the "Sanctions Order"). The Sanctions Order allowed Aviva to submit a request for the fees and costs reasonably necessary to bring the Sanctions Motion.

Because Aviva is entitled to recover only for "reasonably necessary" attorney fees and costs, the Court will grant the application in part, and deny it in part.

### Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 157(b)(1) and § 1334(b) and (d). Venue is proper in this Court under 28 U.S.C. § 1410. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), and (2)(A), (G) and (O).

## Background

This issue relates to a garnishment action (the "Garnishment Action") currently pending in the United States District Court for the Middle District of Tennessee (the "Tennessee Court"). The Garnishment Action involves $97,654.31 on deposit with the Tennessee Court (the "Funds"), and there is a dispute as to whether the Funds are owed to Manley Toys Limited (the "Debtor") or to Toy Quest. The Debtor filed a Chapter 15 petition for recognition (the "Debtor's Petition") and this Court entered the Stay Order on April 1, 2016. Dkt. No. 18.

On November 15, 2016, the Tennessee Court issued an order in the Garnishment Action, which acknowledged that the action was "stayed with regard to Defendant Manley Toys Limited," but referred the case to the magistrate judge for "a determination of whether the case against the other defendants may proceed and what disposition should be made . . . of the [Funds] held by the Clerk of the Court in this matter." Dkt. No. 235-5. Following that order, the Tennessee Court entered an order granting Toy Quest's motion to intervene on December 28, 2016 (the "Tennessee Order"). The Tennessee Order stated that it was "unclear to what extent the stay impacts the rights of additional parties", and granted Aviva leave to file a response. Dkt. No. 196-5.

Instead of a response, Aviva filed a motion for a status conference and requested a continuance. Dkt. No. 196. Toy Quest filed a limited response in opposition to the request for a continuance (the "Limited Response"). The Limited Response argued that, as a matter of Tennessee law, Aviva should not be permitted to garnish the funds prior to establishing that it is entitled to them, and as such the funds belong to Toy Quest and should be released. Dkt. No. 196-7. Aviva sent notice to Toy Quest demanding that it withdraw the Limited Response, but Toy Quest declined to do so. Id. at 7.

Aviva then filed the Sanctions Motion. Dkt. No. 196. Aviva served discovery requests related to the Sanctions Motion, and the parties then engaged in protracted litigation regarding the

extent to which Aviva was entitled to discovery. See Dkt. Nos. 210, 214, 215, 220, 222, 223, 226, 228, and 229. The last hearing related to discovery issues was held on July 25, 2017 (the "Discovery Hearing"), after which the parties submitted final briefs and pleadings and a hearing was held on the Sanctions Motion (the "Sanctions Hearing") on November 29, 2017. This Court issued an opinion finding that Toy Quest had violated the Stay (the "Opinion"), and issued the Sanctions Order. Dkt. No. 271. In its Opinion, the Court stated that:

> While the Court does not consider this conduct to be so "outrageous" as to warrant punitive damages, the Court will award Aviva damages in the amount of reasonable and necessary attorney fees and costs. The Court cautions that only those fees reasonably necessary to establishing the elements of this Motion will be awarded.

Opinion at 15-16 (emphasis added).

Aviva then filed the Fee Application, in which it alleges that it was reasonably necessary to expend $282,966.49, in order to establish that Toy Quest violated the Stay. Dkt. No. 297. Aviva breaks down its fee request into the following general areas. First, Aviva states that it expended $10,060.50 related to the Garnishment Action itself. Aviva states it had to prepare and file a reply brief, correspond with the Tennessee Court, and participate in a teleconference regarding the matter. Id. Second, Aviva states that it expended $230,882.00 to prosecute the Sanctions Motion which is broken down as follows: (a) $153,357 for Aviva's discovery requests, discovery motions, depositions taken, and court appearances involved with that discovery; and (b) $77,525 for drafting the Sanctions Motion and arguing the matter in court. Finally, Aviva states that it expended $21,062.50 preparing the Fee Application. Aviva also seeks to recover $20,961.49 in costs involving court reporters, travel, and document copying throughout this process. Id.

Toy Quest argues that the Fee Application is exorbitant and unreasonable. Dkt. No. 311. Specifically, Toy Quest argues that the rates charged by Aviva exceed reasonable rates, given the market and the lack of complexity involved in the Sanctions Motion. Second, Toy Quest argues

3

that the hours expended on the Sanctions Motion were not reasonable, and that much of the legal work involved matters that were not reasonably necessary for Aviva to establish the elements of a stay violation. Id. Toy Quest argues that the discovery conducted by Aviva was not reasonably necessary to establish its case and wound up not being relevant to the Court's decision. Id.

Aviva's reply argues that the rates charged were reasonable, and that prosecuting the Sanctions Motion required sophisticated counsel, as it is a complicated matter. Dkt. 319. Additionally, Aviva blames the excessive time spent on discovery on what Aviva argues were Toy Quest's inconsistent and uncooperative responses. Aviva also states that the Fee Application has been reduced by over $100,000 for fees written off as redundant or unnecessary. Id. Additionally, Aviva argues that "proportionality" is irrelevant to a determination of what is reasonable. Id. Toy Quest filed a sur-reply. Dkt. No. 329.

## Analysis

Section 362(k)(1) requires the imposition of sanctions on a party violating the automatic stay under the following conditions: "First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury." In re Miller, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011) (quoting Wingard v. Altoona Reg'l Health Sys. (In re Wingard), 382 B.R. 892, 900 n. 6 (Bankr. W.D. Pa. 2008)); In re Frankel, 391 B.R. 266, 271 (Bankr. M.D. Pa. 2008). A violation of the stay is "willful" under section 362(k) "upon a finding that the defendant knew of the automatic stay and that the defendants' actions which violated the stay were intentional." In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d 325, 329 (3d Cir. 1990) (quoting In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)).

Thus, in order to prevail on the Sanction Motion, Aviva was required to show that Toy Quest was aware the Stay Order[1] was in place, and that Toy Quest's filing of the Limited Response

---

[1] In this case, a provisional stay was in place, but for reasons explained in the Opinion, this does not alter the analysis. See Opinion at 5.

was a violation of the stay. Notably, Toy Quest's motivation and intent are irrelevant to a finding that it willfully violated the automatic stay. A violation of the automatic stay is willful when the creditor knew of the stay and violated the stay by an intentional act. See Lansdale Family Rests., Inc. v. Weis Food Service (In re Lansdale Family Rests., Inc.), 977 F.2d 826, 829 (3d Cir.1992); In re Atl. Bus. & Cmty. Dev. Corp., 901 F.2d at 329.

Actual Damages

As a causational requirement of section 362(k), any compensatory damages awarded must be the result of an "actual injury." In re Russell, 441 B.R. 859, 862–63 (Bankr. N.D. Ohio 2010) (citing Archer v. Macomb Cty. Bank, 853 F.2d 497, 500 (6th Cir.1988)). "'Actual damages' are amounts 'awarded . . . to compensate for a proven injury or loss; damages that repay actual losses.'" In re Dean, 490 B.R. 662, 667–68 (Bankr. M.D. Pa. 2013) (quoting In re Copeland, 441 B.R. 352, 368 (Bankr. W. D. Wash.2010)). A "damage award must not be based on 'mere speculation, guess, or conjecture.'" Id. at 668. The party seeking recovery has the burden of proof on the issue of damages. Russell 441 B.R. at 863 (citing In re Sharon, 234 B.R. 676, 687 (6th Cir. 1999)). Of course, in order to recover attorneys' fees, "such fees must be reasonable and necessary." In re Rodriguez, 2012 WL 589553, at *5 (Bankr. D.N.J. Feb. 22, 2012) (citing Miller, 447 B.R. at 435). "It is well established that reasonable and necessary fees do not include unnecessary litigation costs." Miller, 447 B.R. at 435.

As noted, Aviva was required to show only that Toy Quest was aware of the stay, and that it took action in violation of that stay. Toy Quest had notice of the stay and had previously been before this Court defending its actions in light of the stay, therefore, Toy Quest was aware of the stay. Dkt. No. 118. As such, Aviva met its burden simply by submitting to the Court the Limited Response filed in the Tennessee Action by Toy Quest. There were no other facts necessary for Aviva to establish its case.

5

The Fee Application states that Aviva spent $153,357 in legal fees, and $19,713.01 in costs related to discovery in the Sanctions Motion. Aviva's discovery was not reasonably necessary to establish its claim. To begin, Toy Quest stipulated to all relevant facts, indeed, Aviva established that the stay was violated simply by submitting the Limited Response filed by Toy Quest. Further, Toy Quest's belief or motivations in filing the Limited Response were irrelevant. See generally, Atl. Bus., 901 F.2d at 329. Thus, no additional facts regarding Toy Quest's actions or intent were needed for Aviva to establish its case and prevail on the Sanctions Motion. While the Court did find that Aviva was entitled to this discovery, because Aviva established that it could lead to relevant evidence, the fact that Aviva was entitled to discovery does not make that discovery reasonably necessary for the successful prosecution of the Sanctions Motion. Indeed, Aviva's Counsel acknowledged this at the Discovery Hearing stating "We can win this . . . contested matter without any discovery, so it's not necessary." Discovery Hrg. at 2:39:00. Aviva's Counsel repeated this a moment later, explaining further that "What we meant was, this isn't necessary. . . But it would not be fair to force us to go forward in a contested matter where we don't get to take discovery to their defenses." Id. at 2:40:00. Moreover, none of the discovery requested by Aviva was relevant to the determination of the Sanctions Motion. Instead, the determination was based on the fact that Toy Quest was aware of the stay, and filed the Limited Response in an attempt to obtain property that may have belonged to the Debtor. As such, Aviva's arguments regarding Toy Quest's inconsistent or non-responsive discovery responses need not be addressed, as the Court has found that the underlying Discovery requests were not reasonably necessary, any time or fees attributable to the Discovery is also unnecessary.

Because the Court finds that the extensive discovery and related litigation were not reasonably necessary, the related fees and costs are not part of the actual damages suffered by Aviva in its attempt to enforce the stay. Therefore, the related fees and costs are not damages that

could be awarded to Aviva.

The remaining amount of the Fee Application is $109,896.48. This amount consists of $10,060.50 in fees attributable to the Tennessee Action; $77,250 in fees and $1,248.48 in costs Aviva states were related to the actual Sanctions Motion; and $21,062.50 in fees to prepare the Fee Application. The reasonableness of these remaining amounts will now be considered.

<u>Reasonably Necessary</u>

Section 362(k)(1) does not specify any standard a court is to employ when awarding attorney fees, but it does state that, the attorney fees must be reasonable. <u>Miller</u>, 447 B.R. at 434; <u>In re Harris</u>, 374 B.R. 611, 617 (Bankr. N.D. Ohio 2007). When determining the reasonableness of fees, courts have looked to other provisions of the Bankruptcy Code, primarily section 330, which provides for "reasonable compensation for actual, necessary services." <u>In re Roman</u>, 283 B.R. 1, 11 (9th Cir. 2002) (quoting § 330(a)(1)(A)); <u>see also</u> <u>Russell</u>, 441 B.R. at 863 (courts can and do look to section 330 in determining the reasonableness of fees under section 362(k)); <u>United States v. Price</u>, 176 B.R. 807, 808 (N.D. Ill. 1993), <u>aff'd</u>, 42 F.3d 1068 (7th Cir. 1994); <u>Sucre v. MIC Leasing Corp. (In re Sucre)</u>, 226 B.R. 340, 351 (Bankr. S.D.N.Y. 1998); <u>In re Price</u>, 179 B.R. 70, 71 n. 2 (Bankr. S.D. Ohio 1995).

As a general proposition, courts utilize the lodestar method to determine the reasonableness of attorneys' fees under section 330. <u>Sucre</u>, 226 B.R. at 351; <u>see also, generally</u>, <u>Zolfo, Cooper & Co. v. Sunbeam-Oster Co.</u>, 50 F.3d 253, 259 (3d Cir. 1995).

> Under the lodestar analysis, a court first establishes a reasonable hourly rate (corresponding to the value of the services and the cost of comparable services in § 330(a)(1)) for each set of compensable services (corresponding to the nature of the services in § 330(a)(1)), and then multiplies each rate by the reasonable number of hours of compensable work included in each respective set (corresponding to the time and extent of the services in § 330(a)(1)).

<u>In re Busy Beaver Bldg. Ctrs.</u>, 19 F.3d 833, 856 n. 35 (3d Cir.1994) (citing <u>Hensley v. Eckerhart</u>,

461 U.S. 424, 433, (1983) (plurality)). In other words, "courts award attorney's fees based on the hours reasonably expended by counsel at a reasonable hourly rate." Fed. Trade Comms. v. Circa Direct LLC, 912 F.Supp. 2d 165, 170-71 (D.N.J. 2012) (citing T.B. v. Mount Laurel Bd. of Ed., 2012 WL 1079088, at *2 (D.N.J. Mar. 30, 2012) ("The starting point for this Court's determination of reasonable attorney's fee is calculation of the lodestar amount, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.")). However, as noted in Mount Laurel, this is only the starting point.

Under section 330, when determining reasonable hourly-rate the Court must consider "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. § 330(a)(3)(F); Russell, 441 B.R. at 863. The Third Circuit emphasized the importance basing attorneys' fees on the comparable rates within the market in Busy Beaver, when discussing the several factors courts use to determine reasonableness, stating: "with the principal emphasis being on the cost of comparable services (market rates)-essentially provide the basis for computing the 'reasonable hourly rate' used in the 'lodestar' calculations." 19 F.3d at 850 (citing Third Circuit Task Force, Court Awarded Attorney's Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985)).

Another factor the Court should consider in determining the reasonableness of attorneys' fees, relating to both the hourly rates and the hours expended, is the relative complexity of the matter being litigated. See Zolfo Cooper, 50 F.3d at 259 (citing Busy Beaver, 19 F.3d at 856 n. 35). As the Third Circuit described it, "the type of service affects the reasonableness of the rate of compensation sought by a professional or paraprofessional under § 330(a)." Busy Beaver, 19 F.3d at 849. In determining the reasonable compensation to be awarded, the court shall consider the nature, extent, and value of such services, taking into account all relevant factors, including

"whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed." In re DeMarco, 2016 WL 899915, at *4 (Bankr. D.N.J. Feb. 9, 2016) (quoting 11 U.S.C. § 330(a)(3)(D)); see also In re Spillman Dev. Grp., Ltd., 376 B.R. 543 (Bankr. W.D. Tex. 2007) (reducing fees noting that the Chapter 11 case was not so complex as to warrant the roughly $100,000 in fees sought for performance of such tasks).

Additionally, section 330 states that "[T]he court should not allow compensation for (i) unnecessary duplication of services . . . ." DeMarco, 2016 WL 899915, at *1 (quoting 11 U.S.C. § 330(a)(4)(A)) (emphasis added). When multiple professionals are working on the same matter, or bill for the attendance at the same proceeding, the court must be mindful of the necessity of each person. Id. at *2-3 (citing In re Armstrong World Indus., Inc., 366 B.R. 278, 282 (D. Del. 2007) (firm failed to establish necessity of attendance by two of its five professionals)); see also In re Jefsaba, Inc., 172 B.R. 786, 800 (Bankr. E.D. Pa. 1994) (disallowing fees related to attorney performing work duplicative of others and allowing fees for attorney attending hearing only when he was handling a matter). The applicant bears the burden of proving that the fees and expenses sought are reasonable and necessary. Zolfo Cooper, 50 F.3d at 261.

Moreover, the attorney fees should bear a reasonable relationship to the amount in controversy. Russell, 441 B.R. at 863 (citing Mitchell v. BankIllinois, 316 B.R. 891 (S.D. Tex. 2004)). "In this way, significant awards of attorney fees are rarely appropriate where the debtor has no other damages besides the attorney fees." Id. (citing In re Risner, 317 B.R. 830, 840 (Bankr. D. Idaho 2004)).

Finally, the Court should only award fees under section 362(k) that are reasonably incurred and use "discretion to eliminate unnecessary or plainly excessive fees." In re Schwartz-Tallard, 803 F.3d 1095, 1101 (9th Cir. 2015) (citing In re Dawson, 390 F.3d 1139, 1152 (9th Cir. 2004)).

9

Even where evidence supports a particular number of hours worked, the bankruptcy court may give credit for fewer hours, for purpose of making lodestar fee award, if time claimed is excessive, redundant, or otherwise unnecessary. <u>Dawson</u>, 390 F.3d at 1152 (citing <u>Cunningham v. County of L.A.</u>, 879 F.2d 481, 484 (9th Cir. 1988)) (citing <u>Hensley</u>, 461 U.S. at 433-34). Sound exercise of this discretion is crucial to provide a sufficient check on any abuses. <u>Schwartz-Tallard</u>, 803 F.3d at 1101.

With these parameters in mind the Court finds that fees requested exceed even the most expansive view of reasonably necessary. The vast majority of sanctions related to violations of the stay result in fee awards of under $10,000. <u>See</u>, <u>e.g.</u>, <u>In re McGowan</u>, 2014 WL 793125, at *2 (Bankr. D.N.J. Feb. 26, 2014) (awarding $3,000 for legal expenses incurred defending the debtor in state court actions, as well as for filing the motion for sanctions for violating the stay); <u>Renzulli v. Ullman (In re Renzulli)</u>, No. 15-01983-ABA, Dkt. No. 25, (Bankr. D.N.J. Dec. 22, 2015) (awarding $1,200 in attorney fees for stay violation); <u>In re Nixon</u>, 419 B.R. 281, 283 (Bankr. E.D. Pa. 2009) (awarding $1,000 in attorney fees for stay violations); <u>In re Parks</u>, 2008 WL 2003163, at *7 (Bankr. N.D. Ohio May 6, 2008) (finding the requested $3,000 was reasonable); <u>In re Hall</u>, 518 B.R. 202, 212 (Bankr. N.D.N.Y. 2014) (reducing an award from the requested $3,880 requested, to a more reasonable $755); <u>In re Warren</u>, 532 B.R. 655, 665–66 (Bankr. D.S.C. 2015) (reducing the attorney fees from the requested $9,593 to $8,200 and citing multiple cases indicating similar awards). Moreover, attorneys rarely expend more than 10 – 20 hours preparing and arguing such motions. <u>See</u>, <u>e.g.</u>, <u>Renzulli</u>, No. 15-01983-ABA, Dkt. No. 25, (Bankr. D.N.J. Dec. 22, 2015) (attorney compensated for 4 hours of work); <u>Nixon</u>, 419 B.R. at 283 (4 hours reasonable to prosecute motion); <u>Hall</u>, 518 B.R. at 211 (Bankr. N.D.N.Y. 2014) (reducing total number of compensable hours spent on motion to 5.7 hours); <u>Warren</u>, 532 B.R. at 664 (Bankr. D.S.C. 2015) (reducing award where attorney had requested compensation for a total of 38 hours).

The similar number of hours spent and fees awarded within all of these cases is due to the relatively predictable response to a violation of the automatic stay. As explained by the court in In re Grine, in virtually all of these cases, the moving party is required to send the defendant the demand letter, then discuss the issue and negotiate a settlement with defendant, and, in the event those fail, to prosecute a motion to enforce the stay. 439 B.R. 461, 473 (Bankr. N.D. Ohio 2010). The fees incurred should be "for the type of actions that this and other courts anticipate and expect that counsel will take on behalf of debtors in the situation" where a stay violation has occurred. Id.

Even in cases where courts have noted either the complexity of a particular issue involved or the opposing party's recalcitrance, the hours expended rarely exceed 60 – 70 hours and the total fees rarely exceed a range of $20,000 to $30,000. See In re Parker, 515 B.R. 337, 351 (Bankr. M.D. Ala. 2014), aff'd sub nom, Parker v. Credit Cent. S., Inc., 2015 WL 1042793 (M.D. Ala. Mar. 10, 2015), aff'd sub nom, In re Parker, 634 F. App'x 770 (11th Cir. 2015) (attorney billing $21,055 for 62.73 hours of work, and $30,000 total would normally be excessive, but was reasonable due to the opposing party's "mendacity and utter lack of good faith"); In re Voll, 512 B.R. 132, 145 (Bankr. N.D.N.Y. 2014) (reducing the amount requested, but awarding $13,625 for a reasonable amount of 50 hours of work after noting the debtor had to prove "emotional damages", and further that respondent had engaged in extensive discovery, including deposing the movant, which required counsel to appear); In re Mocella, 552 B.R. 706, 730 (Bankr. N.D. Ohio 2016) (reducing the requested award, but still awarding $17,750 in attorney fees for 66.2 hours of work after finding that "extensive litigation" was required "considering [respondent's] outrageous position,"); In re Vaughn, 2016 WL 836968, at *2 (Bankr. M.D. Ala. Mar. 3, 2016) (awarding $25,951.25 in attorneys' fees for 79.85 hours of work at $325 per hour and $6.49 in costs, after noting the necessity and length of the litigation engaged in).

These cases show that the vast majority of motions pursuant to 362(k) result in moderate

11

awards of attorneys' fees, and that even cases involving complicated legal issues or recalcitrant parties rarely require more than 50 hours to be resolved. In each of the cases cited above, the courts considered how many hours of work were reasonably required, and what a reasonable hourly rate for those attorneys and their support staff would be, and issued an award accordingly.

For example, in Vaughn, the court noted at the outset, that

> Vaughn's counsel has worked an inordinate number of hours for what should have been a relatively simple stay violation case. However, this is not a product of excessive billing or unnecessary work by Vaughn's counsel; rather it was in response to [respondent's] well-documented intransigence in this case.

2016 WL 836968, at *6. However, even in Vaughn, counsel requested less than $30,000 in compensation for 90.75 hours of work, and the court awarded only $25,951.25 for 79.85 hours of work. Id. at *8. Similarly, in Voll, a case which involved extensive discovery, the movant was awarded less than $30,000 for 50 hours of work. 512 B.R. at 145.

The Fee Application requests $282,966.49 for 518 hours of work on the Sanctions Motion. The Court finds this beyond all reason. Not only is the Fee Application far beyond any comparable amount of fees granted in cases of similar complexity, but considering only proportionality, there is nothing reasonable about this. Aviva has requested attorney fees that are nearly three-times the amount in controversy; and the Court notes that these fees relate exclusively to the Sanctions Motion, they do not include the fees Aviva is claiming it expended on actually litigating the merits of the Garnishment Action as a whole. The Court shudders at the amount of money Aviva's Counsel claims to have expended in an effort to retrieve $97,654.31 for its client. Even after subtracting the fees and costs for the unnecessary discovery, the remaining $109,896.48 still exceeds the amount of the Funds at stake. Moreover, the Fee Application seeks reimbursement for 518 hours of work on the Sanctions Motion, and, after excluding the unnecessary discovery work, the Fee Application seeks recovery for 215.9 hours of work.

Even in Vaughn, where the court found opposing counsel to have been engaged in a

scorched earth policy, the number of hours approved and total fees awarded was only a fraction of Aviva's request. Aviva's Counsel engaged in more than five times the number of hours and requests nearly ten times the amount in compensation. Dkt. No. 297. Similarly, in Voll, in which there were contested factual issues, and the creditor was the party demanding discovery of the movant, the fees awarded and hours compensated were fractions of what is requested here. None of the complications from these cases occurred here. The Court did not find that Toy Quest's position was unreasonable, nor that Toy Quest engaged in a scorched earth policy. Toy Quest did not demand to depose Aviva, as was the case in Voll, and there were no contested facts.

An award of fees and hours closer to the cases cited above are more appropriate than those requested in the Fee Application. Aviva's Fee Application is wholly unreasonable, and shocks the Court. In order to prevent abuse, the Court in its discretion, declines to approve the Fee Application as submitted. See Dawson, 390 F.3d at 1152 (citing Cunningham, 879 F.2d at 484). Although the legal issues in the Sanctions Motion related to whether the Funds were property of the estate may have made this slightly more complicated than the "run of the mill" stay violation, the issues were not so complicated as to warrant such extensive hours or exorbitant fees. Moreover, unlike Vaughn or Voll, this case did not require extensive discovery or litigation. Toy Quest did not dispute any of the relevant facts. This was purely a legal issue, perhaps requiring some limited research, but nothing more. After reviewing the Fee Application, this matter should not require more than 51 hours of work, for a total of $25,653 in fees, at the blended rate of approximately $503 per hour. However, in order to provide a concise and clear explanation of its reasons for the fee award, the Court will examine the specifics of the Fee Application. See Hensley, 461 U.S. at 437. Aviva has divided its fee request into subsections, and the Court will review each.

<u>Garnishment Action</u>

The Fee Application requests $10,060.50 for legal services provided in the Garnishment Action in response to the Limited Response filed by Toy Quest. Dkt. No. 297-1. Aviva attached a breakdown of the work performed in the Garnishment Action. The Fee Application shows that Derek Sugimura, an associate billing $525 per hour, worked for 11.4 hours on the matter. This included 3.1 hours drafting a brief and emailing Toy Quest regarding its stay violation, and then 7.9 hours revising that same brief, for a total of 11 hours preparing the brief for the Tennessee Court. In addition, Mr. Weisbrod, a partner billing $685 per hour, and Shelli Calland, a partner billing $550 per hour, spent an additional combined 6.6 hours reviewing this brief, and conferring with Sugimura about it. The Court finds this excessive, and that drafting and revising a single response to Toy Quest's Limited Response should not have taken over 17 hours, and certainly should not require two partners and an associate billing at these rates this much time.

| Prof. | Date | Rate | hours | fees | Task |
|---|---|---|---|---|---|
| | | | | CATEGORY ONE -- TENNESSEE GARNISHMENT ACTION (see Section | |
| SAW | 1/27/2017 | $685 | 0.50 | $342.50 | Review Toy Quest brief in Tennessee action and correspond with team re same. |
| DS | 1/27/2017 | $525 | 3.10 | $1,627.50 | Draft briefing for Tennessee re Dollar General hearing and Toy Quest's request in violation of stay; email Toy Quest counsel re stay violations. |
| DS | 2/1/2017 | $525 | 2.20 | $1,155.00 | Revise reply in support of motion for continuance and status conference in Tennessee in light of Toy Quest's violation of provisional stay. |
| SAW | 2/3/2017 | $685 | 1.40 | $959.00 | Confer and correspond with team re revisions to Tennessee filings. |
| SLC | 2/3/2017 | $550 | 2.00 | $1,100.00 | Review and revise Tennessee filings; multiple communications with S. Weisbrod and D. Sugimura re same. |
| SAW | 2/5/2017 | $685 | 1.00 | $685.00 | Correspond with team re revisions to Tennessee brief. |
| SLC | 2/5/2017 | $550 | 0.90 | $495.00 | Multiple communications with S. Weisbrod and D. Sugimura about Tenn. brief. |
| DS | 2/6/2017 | $525 | 5.50 | $2,887.50 | Revise and finalize reply in support of Tennessee motion for continuance, motion for leave to file reply, and exhibits in support of same. |
| SLC | 2/14/2017 | $550 | 0.40 | $220.00 | Review and analyze Toy Quest's motion to file surreply in Tennessee. |
| DS | 1/29/2018 | $525 | 0.20 | $105.00 | Emails with local counsel and opposing counsel re status conference ordered by Tennessee Court. |
| SAW | 2/20/2018 | $685 | 0.40 | $274.00 | Confer with D. Sugimura re status conference with Tennessee Court; telephonic status conference with Tennessee Court. |
| DS | 2/20/2018 | $525 | 0.40 | $210.00 | Confer with S. Weisbrod re status conference with Tennessee Court; telephonic status conference with Tennessee Court. |
| | Subtotal -- | | 18.00 | $10,060.50 | |

Further, as noted, when considering the hourly rates requested in a fee application under the lodestar method, the court is to look at the rates charged in the market to determine

reasonableness. Busy Beaver, 19 F.3d at 850. The Garnishment Action is pending in Tennessee and, as such, the Court looks to market rates in Tennessee. Upon review, the Court cannot find a single example of rates this high being charged in that market. Indeed, every case the Court reviewed showed attorney billing rates between $180 and $300, with the highest rates charged by partners at firms in Chapter 11s, still not exceeding $400 per hour. See In re McKenzie, 494 B.R. 329, 332 (Bankr. E.D. Tenn. 2013) (allowing a blended rate of $248.76 per hour); In re Peterson, 566 B.R. 179, 197 (Bankr. M.D. Tenn. 2017) (rates between $180 - $350 per hour); In re Santa Fe Holding Co., Inc., No. 09-07856, 2009 WL 4041898, at *1 (Bankr. M.D. Tenn. Nov. 16, 2009) (rates in the range of $275 - $375 per hour); In re McKenzie, 460 B.R. 181 (Bankr. E.D. Tenn. 2011) (trustee and another partner billed between $275 - $285 per hour). In this case, not a single attorney charged less than $525 per hour, and the blended rate was approximately $558 per hour. Additionally, some of this work could have been performed by a paralegal or associate billing at lower rates. The Court does not find this reasonable given the market of Tennessee, and finds a reduction in rate is required. See Busy Beaver, 19 F.3d at 850.

Finally, in Aviva's own words, all it was required to do in the Garnishment Action was: "File a reply brief in the Tennessee Action . . . reviewed [Toy Quest's] Surreply . . . engaged in correspondence with [Toy Quest] and the Tennessee Court, and participated in a telephonic status conference." Dkt. No. 297. The Court does not find this to be a complex issue and should not have required 18 hours to complete, especially because the teleconference with the Court is not listed on the Fee Application and therefore, presumably not part of the Fee Application.

Given all of this, the Court finds that awarding fees for 9 hours of work at a blended rate of $500 per hour will allow for appropriate compensation to Aviva and cover its reasonably necessary attorney fees. This reduces the total compensation for this portion from the requested $10,060.50 to $4,500.

## Motion for Sanctions

After removing the fees and costs of the unnecessary discovery, the Fee Application seeks fees and costs of $78,773.48 related to the Sanctions Motion. Dkt. No. 297-1. These fees deal with researching legal issues, drafting the Sanctions Motion, reviewing Toy Quest's response, drafting a reply, and then appearing in Court for argument. Aviva seeks compensation for 158.5 hours of work, less than 10 of which were performed by a paralegal. The Court finds that billing nearly 160 hours and $77,525 does not meet the reasonableness standard under the lodestar analysis.

First, the Court considers the complexity of the matter before it. As noted, a motion for sanctions for a stay violation is common in bankruptcy, and usually not complex. While the status of the Debtor's ownership of the Funds may have made this particular motion less routine and required some additional research, that is only by a matter of degree. Further, as noted above, there was no factual dispute, this was purely a legal issue. Aviva spending 158.5 hours on what is a relatively common and simple issue in bankruptcy was neither reasonable nor necessary.

Additionally, the Court notes that the $78,773.48 spent on the Sanctions Motion alone, excluding all work done on discovery, the Garnishment Action, and preparing the Fee Application was nearly equal to the amount of the $97,654.31 in Funds subject to the garnishment in Tennessee. This does not bear a reasonable relationship to the amount in controversy. The Court may have been willing to allow this if the fees were otherwise reasonably necessary, but for the reasons discussed, this is not the case.

The Fee Application has multiple examples of either duplicative work, or excessive time spent on drafting and revising the Sanctions Motion and replies. While the fee statement for this portion of the fees is over eight pages, and not necessary to paste in full here, the Court notes a few examples:

16

CATEGORY TWO – SANCTIONS MOTION AND RELATED DISCOVERY (see Section

| Subcategor | Prof | Date | Rate | Hours | Fees | Task |
|---|---|---|---|---|---|---|
| Prep Sanctions Motion | DS | 1/30/2017 | $525 | 5.00 | $2,625.00 | Conduct research for and draft sanctions motion. |
| | DS | 2/1/2017 | $525 | 1.00 | $525.00 | Draft sanctions motion re Toy Quest violation of stay in Tennessee. |
| | SLC | 2/2/2017 | $550 | 4.80 | $2,640.00 | Review and revise draft motion for stay violation sanctions against Toy Quest; correspond with S. Weisbrod and D. Sugimura re same. |
| | DS | 2/2/2017 | $525 | 3.40 | $1,785.00 | Work on sanctions briefing. |
| | SLC | 2/3/2017 | $550 | 3.10 | $1,705.00 | Review and revise motion for stay violation sanctions against Toy Quest; multiple communications with S. Weisbrod re same. |
| | DS | 2/3/2017 | $525 | 3.90 | $2,047.50 | Work on sanctions briefing, with additional fact research tied to same. |
| | SAW | 2/4/2017 | $685 | 1.60 | $1,096.00 | Revise sanctions motion. |
| | SLC | 2/4/2017 | $550 | 2.90 | $1,595.00 | Review and revise motion for stay violation sanctions against Toy Quest; correspond with S. Weisbrod and D. Sugimura about same. |
| | SLC | 2/5/2017 | $550 | 0.90 | $495.00 | Multiple communications with S. Weisbrod and D. Sugimura about stay violation motion; review and analyze same. |
| | SLC | 2/6/2017 | $550 | 3.90 | $2,145.00 | Review, revise, finalize, and file motion for stay violation sanctions against Toy Quest and associated documents. |
| | SAW | 2/7/2017 | $685 | 0.20 | $137.00 | Correspond and confer with S. Calland re hearing for sanctions motion. |
| | SLC | 2/7/2017 | $550 | 0.50 | $275.00 | Correspond with court and S. Weisbrod about hearing date for motion for sanctions. |
| **Subtotal for Subcategory Prep Sanctions Motion** | | | | **31.20** | **$17,070.50** | |

In the subsection labeled "Prep Sanctions Motion", not only does the Fee Application indicate that it took an associate 6 hours to research and draft the initial motion, and then a partner nearly 5 more hours to review the motion, but it took over 30 hours to revise and finalize just the motion. Additionally, there are multiple examples of partners taking the same length of time to review and revise pleadings as it did for the associate to draft it from scratch. For example, an entry on February 3 indicates that Calland spent almost 5 hours revising the motion that took Sugimura 6 hours to draft. Calland then spent over 9 additional hours continuing to revise this motion, which is treated separately from the accompanying "brief" on which Sugimura spent another 7-plus hours. From this one spreadsheet alone, the Court finds at minimum 18.1 hours of work by partners and associates that is either duplicative or excessive. Once these duplicative and excessive hours are removed, that reduces the fees from this one spreadsheet from $10,390.50, to $6,680. This is only one portion of the section labeled "Motion for sanctions."

Similarly, throughout this section, Aviva lists excessive or duplicative time spent on drafting and revising the brief outline. The Court reiterates, it is concerning that of the 127.3 hours of work the Aviva alleges was spent on this subsection, less than 10 hours are attributed to

paralegals. For example, there is a single entry indicating that an associate spent 8 hours researching caselaw, drafting brief and collecting exhibits for the declaration. Dkt. No. 297. At a minimum, the collecting of exhibits could have been performed by a paralegal. More significantly, there are at least four other entries totaling over 18 hours of work dedicated to research for the brief by the same and other associates. Id. As noted, the Fee Application in general, and this subsection in particular, is replete with examples of work that is either duplicative or excessive, so much so that it will not serve to perform a line-by-line review of each such example. Moreover, with a Fee Application so unreasonable, the Court does not find it necessary to detail every single example of such excess. However, the Court notes that this subsection of the Fee Application alone lists over 60 hours dedicated to reviewing and revising the reply briefs, by multiple attorneys. Id. The Court has a duty to prevent abuses, and as such has discretion to reduce fees that are excessive or duplicative even where a spreadsheet is provided detailing the hours spent on a particular matter. See Schwartz-Tallard, 803 F.3d at 1101; Dawson, 390 F.3d at 1152 (citing Cunningham., 879 F.2d at 484 (citing Hensley, 461 U.S. at 433-34)).

After reviewing this subsection of the Fee Application the Court finds that at least 97.1 hours should be disallowed as excessive, redundant or unnecessary. The Court reaches this conclusion because excessive time was spent by all attorneys researching and drafting the reply briefs; far too much duplication of work, including excessive amounts of time spent reviewing and redrafting the material, and in what Aviva refers to as "conferring" with other attorneys in the firm on the status of the case. This leaves 30.2 hours of allowable billable time for the Motions for Sanctions portion of the Fee Application.

The Court does not take issue with the rates charged Aviva, which for this subsection was a blended rate of approximately $505 per hour, and finds that these are in line with the market rates for matters of similar complexity. However, as noted above, the Court does find that the total hours

spent on a single Sanctions Motion was exorbitant, and that much of the work performed by partners or associates could have been handled by less senior associates or paralegals. Thus, pursuant to its discretion and its duty to guard against abuses, the Court finds that the fees requested in this subsection will be reduced to $15,251, for 30.2 hours of work, at a blended rate of $505 per hour. This amount, particularly for only one portion of the Fee Application, is still a large award, but the Court finds it to be at the high end of the reasonableness spectrum.

However, upon reviewing the costs submitted as part of the Fee Application related to the Sanctions Motion, the Court finds that these are limited to reasonably necessary costs and will be granted. These costs are limited to train fare, hotels and travel expenses for attorneys to attend Court hearings. As such, costs in the amount of $1,248.48 are awarded.

<u>Fee Application</u>

Finally, Aviva claims it spent $21,062.50 of professional time to prepare the Fee Application. The Court finds this beyond the pale. This Court considers fee applications on a weekly basis from firms requesting approval of fees for work completed in complex Chapter 7 and 11 cases, and cannot recall a law firm seeking over $21,000 to prepare a fee application for an entire case, let alone for a single motion.

Reviewing the lodestar factors in turn, the Court first notes that that 39.4 hours spent preparing an application for fees is excessive. Additionally, an attorney billing at $525 per hour should not require 32.4 hours to prepare a fee application. This is neither a reasonable rate, nor number of hours to spend on a matter as simple and routine as a fee application. There is nothing complex about the issue. Many firms utilize paralegals or junior associates to prepare fee applications which work is then reviewed and edited by senior associates or partners. Here an associate billing $525 per hour spent 32.4 hours preparing the Fee Application, and then multiple partners spent 7 hours reviewing it. This is not reasonably necessary. Charging almost a quarter of

the amount in controversy in preparing a fee application is not reasonable nor proportional.

| Prof | Date | Rate | Hours | Fees | Task |
|------|------|------|-------|------|------|
| | | | CATEGORY THREE -- PREPARATION OF FEE PETITION (see Section II.A.3) | | |
| DS | 2/16/2018 | $525 | 3.20 | $1,680.00 | Research reasonableness of fees in Third Circuit and New Jersey. |
| DS | 2/17/2018 | $525 | 2.10 | $1,102.50 | Analyze fees for petition. |
| DS | 2/21/2018 | $525 | 4.00 | $2,100.00 | Analyze and excise non-responsive time. |
| DS | 2/22/2018 | $525 | 2.00 | $1,050.00 | Analyze and excise potentially excessive time. |
| DS | 2/23/2018 | $525 | 4.40 | $2,310.00 | Draft motion for fees. |
| DS | 2/24/2018 | $525 | 3.80 | $1,995.00 | Revise and circulate motion for fees. |
| SLC | 2/25/2018 | $550 | 0.50 | $275.00 | Conference call with S. Weisbrod and D. Sugimura re fee petition. |
| DS | 2/25/2018 | $525 | 2.90 | $1,522.50 | Review and revise fee request and research re same. |
| SAW | 2/25/2018 | $685 | 0.50 | $342.50 | Conference call with S. Calland and D. Sugimura re fee petition. |
| SLC | 3/6/2018 | $550 | 1.80 | $990.00 | Review and revise fee petition and spreadsheet of fees requested; confer with S. Weisbrod and D. Sugimura about same. |
| DS | 3/6/2018 | $525 | 6.30 | $3,307.50 | Review and revise fee petition; draft Weisbrod declaration in support of fee petition; confer with S. Weisbrod and S. Calland about same. |
| SAW | 3/6/2018 | $685 | 0.50 | $342.50 | Review and revise fee request and related documents; confer with S. Calland and D. Sugimura about same. |
| SLC | 3/7/2018 | $550 | 3.20 | $1,760.00 | Review and revise fee petition and spreadsheet of fees requested; confer with S. Weisbrod and D. Sugimura about same. |
| DS | 3/7/2018 | $525 | 3.70 | $1,942.50 | Review and revise fee petition; review and revise Weisbrod declaration in support of fee petition; confer with S. Weisbrod and S. Calland about same. |
| SAW | 3/7/2018 | $685 | 0.50 | $342.50 | Review and revise fee request and related documents; confer with S. Calland and D. Sugimura about same. |
| Subtotal -- Fee Petition | | | 39.40 | $21,062.50 | |
| TOTAL | | 518.00 | | $262,005.00 | |

The Court finds that the entries from February 16 through February 22, 2018, in which Sugimura, billing $525 per hour, spent 11.3 hours "analyzing" the fees and researching "reasonableness" before even beginning to draft the Fee Application is excessive. Moreover, Sugimura spent over 21 hours reviewing and revising the Fee Application, which does not include the hours spent by partners "reviewing and revising" the Fee Application. The Court finds that the 25.1 hours spent by Sugimura should be eliminated, or a paralegal substituted, and that the hours partners spent on the Fee Application could also be reduced. Thus, the Court will reduce the fee request in this section to $5,900, for 11.8 hours of reasonably necessary work, at a blended rate of $500 per hour. The Court considers fee applications for a myriad of issues on a regular basis, and based on its experience and discretion, finds this amount to be at the high end of the range of reasonableness given the facts of this case.

## Conclusion

The Fee Application is excessive, and fails to meet any of the parameters set out by the Third Circuit and the lodestar analysis. A Fee Application requesting almost three-times the amount in controversy does not bear any resemblance to proportionality. Additionally, the fees and costs related to the discovery litigation were not reasonably necessary to successfully prosecute the Sanctions Motion. For these and each of the reasons listed in this Opinion, the Court finds that Aviva is entitled to $4,500 for 9 hours of work on the Garnishment portion; $15,251 for 30.2 hours of work on the Motion for Sanctions portion, and $5,900 for 11.8 hours of work on the fee application portion. Thus, $25,651 in fees and $1,248.48 in costs will be awarded to Aviva, as this is the amount of actual damages incurred, and the amount reasonably necessary to prosecute the Sanctions Motion.

Dated:   June 21, 2018

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE