UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>MANLEY TOYS LIMITED,<br><br>        Debtor in a Foreign Proceeding. | Case No. 16-15374 (JNP)<br><br>Chapter 15 |

## MEMORANDUM DECISION ADDRESSING ISSUES ON REMAND AND DENYING MOTION FOR STAY RELIEF

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

This matter comes before the Court on remand from the District Court (the "Remand Order") of an appeal of an order denying the motion for stay relief (the "Initial Motion") filed by ASI, Inc., f/k/a Aviva Sports, Inc. ("Aviva"). The Remand Order requires the Court to explain whether Aviva's arguments related to bad faith and judicial estoppel were considered in its original decision denying stay relief (the "Previous Decision") and further to determine whether additional evidence Aviva attempted to introduce on appeal alters the Court's determination to deny stay relief. Rather than simply briefing the matters in the Remand Order, Aviva filed a new motion for stay relief (the "Motion"). The Motion addresses not only the issues discussed in the Remand Order, but also seeks relief from stay to obtain: (a) evidence preservation orders in other courts; and (b) injunctive sanctions from the United States District Court for the District of Minnesota ("Minnesota Court") against Manley Toys, Ltd. (the "Debtor"). For the reasons discussed below, the Court denies the Motion.

### Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 157(b)(1) and § 1334(b) and (d). Venue is proper in this Court under 28 U.S.C. § 1410. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## Background

The Court assumes familiarity with the history of this case and only reviews the facts relevant to the issues before the Court.[1] The Debtor is a foreign corporation that entered voluntary liquidation proceedings pursuant to section 228(1)(c) of the Companies (Winding Up and Miscellaneous Provisions) Ordinance of Hong Kong statutory law ("C(WUMP)O"). On March 22, 2016, Matt Ng and Robert Lees, in their capacities as the duly appointed joint and several liquidators (the "Liquidators")[2] of the Debtor, filed a petition under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code"), on behalf of the Debtor for recognition of a foreign main proceeding. Dkt. No. 1. Aviva filed opposition. Dkt. No. 15. As part of the recognition proceedings Aviva served discovery demands on the Liquidators and later made an informal motion to compel (the "Motion to Compel"). Dkt. No. 40. The Court issued an oral decision (the "Discovery Decision") granting the Motion to Compel and requiring the Liquidators to turn over two-years of information requested by Aviva. Dkt. No. 51. On April 1, 2016, the Court entered a provisional stay order (the "Stay Order"), which incorporated the protections of section 362 of the Bankruptcy Code by its terms.[3]

Aviva filed the Initial Motion on September 13, 2016. Dkt. No. 144. The Liquidators opposed the Initial Motion. Dkt. No. 151. The Initial Motion sought relief from the automatic stay to allow Aviva to pursue claims for alleged fraudulent transfers made by the Debtor to third parties, as well as an action to pierce the corporate veil (collectively the "Claims"), and attach liability to the principals of the Debtor and another corporation called Toy Quest, Ltd. See Dkt. No. 144. In addition, the Initial Motion sought relief to allow Aviva to: (a) take post-judgment discovery from

---

[1] A complete review can be found in the Previous Decision. In re Manley Toys Ltd., 2018 WL 1071167, at *1 (Bankr. D.N.J. Feb. 23, 2018). Dkt. No. 276.

[2] The Liquidators were appointed by the Committee of Inspection at the creditors meeting held on March 22, 2016.

[3] On February 13, 2018, the Court entered an Order recognizing the Foreign Main Proceeding. Dkt. No. 296

the Debtor or the Liquidators concerning the judgment it obtained against the Debtor or a separate judgment it obtained against Manley Toy Direct; (b) request relief from other courts in the United States with respect to the Debtor or the Liquidators to ensure the preservation of evidence relating to the judgments Aviva obtained against the Debtor or Manley Toy Direct; (c) seek injunctive sanctions against the Debtor for violating post-judgment discovery orders issued pre-petition by the Minnesota Court; and (d) seek to amend complaints or judgments to include third parties. Id.

On February 13, 2018, the Court issued a decision recognizing the foreign main proceeding (the "Recognition Opinion"). In re Manley Toys Ltd., 580 B.R. 632 (Bankr. D.N.J. 2018), aff'd, 597 B.R. 578 (D.N.J. 2019). Following this, the Court docketed the Previous Decision denying relief from stay as it pertained to the Claims. In re Manley Toys, 2018 WL 1071167, at *1. The Previous Decision ruled that, under Hong Kong law, once the liquidation was commenced the Claims qualified as generalized claims and thus property of the Debtor and could only properly be brought by the Liquidators for the benefit of all creditors. Id. Aviva appealed the Previous Decision to the District Court arguing, among other things, that the Court had not addressed its arguments that stay relief should be granted as to the Claims due to the bad faith of the Debtor and the Liquidators, and that the Liquidators should be judicially estopped from arguing that the alter ego claims were property of the Debtor. Additionally, Aviva requested the District Court take judicial notice of, and consider a letter from the Liquidators proposing settlement of the Claims (the "Settlement Letter") and Aviva's subsequent objection (the "Objection Letter" and with the Settlement Letter, the "Letters") to the proposed settlement. In re Manley Toys Ltd., 2019 WL 1987052, at *2 (D.N.J. May 6, 2019). The District Court remanded the case stating:

> [T]he Bankruptcy Court's decision . . . does not appear to address the bad faith nor the estoppel issues.
>
> *   *   *
>
> The Court will remand this case for: (a) further consideration of Aviva's application for stay relief, and (b) a decision as to whether the Bankruptcy Court's consideration in that regard will include the

letters Aviva has sought to introduce into the record of this appeal.

Id. at *3

During a hearing to consider the briefing schedule for the remanded issues, Aviva stated its intent to file a new motion for relief to address additional issues not listed in the Remand Order and requested permission to address all issues in a single brief. In the interest of judicial economy, the Court permitted the parties to brief all matters and objections in a single brief, and Aviva filed this Motion. Dkt. No. 374. As a result, the Court will first consider the matters raised in the Remand Order, and then will consider the additional matters raised by Aviva in the Motion.

Aviva argues that it should be allowed to pursue the Claims against the Debtor and its alleged "affiliates" because the alleged bad faith of the Debtor and the Liquidators constitute cause for stay relief. In addition to the allegations of bad acts committed by the Debtor and its principals pre-petition, Aviva asserts  that the Liquidators have a conflict of interest because they are funded by Toy Quest and have failed to investigate or pursue fraudulent transfer and alter ego claims against Toy Quest and the Debtor's former principals. Dkt. No. 374. Somewhat paradoxically, the Motion then discusses the Liquidators' efforts to settle the Claims, and that Aviva believes the proposed settlement is the result of collusion and does not achieve a fair recovery. Id. Additionally, Aviva alleges that the Liquidators previously argued that creditors would be free to pursue alter ego claims if the foreign proceeding was recognized, and therefore, should be judicially estopped from arguing that creditors are barred from pursuing the Claims. Id.

In response, the Liquidators argue that Aviva never made a bad faith argument in the Initial Motion. Additionally, the Liquidators argue that there is no bad faith, and that bad faith is not grounds for relief from the stay under these circumstances. Dkt. No. 377. The Liquidators also argue that, because under Hong Kong law the Claims belong to the Debtor, relief from the stay is futile as Aviva would not be able to bring the Claims. Id. As to judicial estoppel, the Liquidators argue that Aviva did not meet its burden to establish that the doctrine applies in this case. Id.

4

## The Letters

On appeal, Aviva attempted to introduce the Letters, which were not part of the record before this Court. Manley Toys, 2019 WL 1987052, at *2. The District Court did not decide whether it had authority to supplement the record on appeal, instead remanding the matter to this Court to consider whether the Letters should be considered as part of its decision. Id. (citing In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 98 (3d Cir. 1990)). Aviva included the Letters and incorporated them into the Motion. Dkt. No. 374. Because there is no prejudice to the Liquidators by including these additional documents, the Court reviewed the Letters as part of its consideration of the Motion.

## Chapter 15 Insolvency Proceedings

Congress enacted Chapter 15 to provide effective mechanisms for dealing with cases of cross-border insolvency with the following objectives:

> (1) cooperation between . . . courts of the United States, . . . and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
> (2) greater legal certainty for trade and investment;
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
> (4) protection and maximization of the value of the debtor's assets; and
> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

In re ABC Learning Centres Ltd., 728 F.3d 301, 304-05 (3d Cir. 2013) (citing 11 U.S.C. § 1501; UNCITRAL Model Law on Cross–Border Insolvency preamble (stating nearly identical purposes)). Uniformity and cooperation are essential to this goal, treating the "multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding." Id. This is done to ensure that creditors are universally protected, and asset value is maximized, in contrast to the "so-called 'grab rule' where each country seizes assets and

distributes them according to each country's insolvency proceedings." Id. (citing Jay Lawrence Westbrook, Chapter 15 at Last, 79 Am. Bankr. L.J. 713, 715 (2005)). As the Third Circuit described it, "[t]he emphasis must be on ensuring that the insolvency administrator, appointed in that proceeding, is accorded every possible assistance to take control of all assets of the debtor that are located in other jurisdictions." ABC Learning Centres, 728 F.3d at 305. Chapter 15 creates an ancillary proceeding in the United States to provide support to the foreign insolvency administrator. Id. To further this universal approach adopted by Congress, our courts "act . . . in aid of the main proceedings, in preference to a system of full bankruptcies . . . in each state where assets are found." H.R. Rep. No. 109–31(1), at 109 (2005) reprinted in 2005 U.S.C.C.A.N. 88, 171. Thus, a United States court in a Chapter 15 case "acts as an adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." ABC Learning Centres, 728 F.3d at 306. With this in mind, the Court turns to the question of when a Court should grant relief from the stay imposed in a Chapter 15 case to allow an individual creditor to pursue claims that would otherwise be pursued by the administrators appointed in the Foreign Main Proceeding.

## The Automatic Stay

Pursuant to section 1517 of the Bankruptcy Code, a foreign proceeding will be recognized if that foreign proceeding is a foreign main proceeding and the petition meets the administrative requirements of section 1515 of the Bankruptcy Code. 11 U.S.C. § 1517(a). Section 1520 of the Bankruptcy Code provides that recognizing a liquidation proceeding as a foreign main proceeding triggers and imposes the automatic stay of section 362. In re ABC Learning Centres Ltd., 445 B.R. 318, 336 (Bankr. D. Del. 2010), on reconsideration in part (Jan. 21, 2011), subsequently aff'd, 728 F.3d 301 (3d Cir. 2013). In a Chapter 15 case, there is no "estate." In re Atlas Shipping A/S, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009). The statute refers to "property of the debtor" to distinguish it from the "property of the estate" that is created under section 541(a) of the Bankruptcy Code.

Id. However, section 1520(a) imposes the automatic stay on any action with respect to the all the debtor's property located in the United States. Id. at 739 (citing In re Pro–Fit Holdings Ltd., 391 B.R. 850, 864 n.48 (Bankr. C.D. Cal. 2008)). Thus, when this Court recognized the foreign main proceeding, section 362 of the Bankruptcy Code became applicable "with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." In re Ace Track Co., Ltd., 556 B.R. 887, 895 (Bankr. N.D. Ill. 2016); see also In re SPhinX, Ltd., 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2006).

The Previous Decision discussed whether the Claims were property of the Debtor, and thus, subject to the stay. Manley Toys, 2018 WL 1071167, at *2-5. The Court noted that to determine what constitutes "property of the Debtor" it must look to the controlling law where the foreign main proceeding is located. Id. (citing ABC Learning Ctrs., 728 F.3d at 312) (foreign main proceeding in Australia, the extent of the debtor's interest in property is governed by the Australia's Corporations Act); In re Lee, 472 B.R. 156, 178 (Bankr. D. Mass. 2012) (same for Hong Kong)). The Court first noted that under Hong Kong law, the fraudulent transfer and alter ego claims were property of the Debtor. Manley Toys, 2018 WL 1071167, at *4 (citing Horace Yao v. Pearl Oriental Innovation Ltd. f/k/a China Merchs Dichain (Asia) Ltd. [2010] HKEC 537 ¶ 34). The Previous Decision also noted that under Hong Kong law, the Claims are referred to as claims for "reflective loss," or what in the United States are called "generalized claims." Id. Under Hong Kong law, as under United States law, generalized claims are considered property of the debtor.[4] Id. (citing Horace Yao; In re Emoral, Inc., 740 F.3d 875, 879 (3d Cir. 2014)). For a claim to be considered "generalized," "the claim must be a 'general one, with no particularized injury

---

[4] Under United States law, individual fraudulent transfer claims belong to individual creditors outside of bankruptcy. However, once in bankruptcy, the fraudulent transfer is avoided for the benefit of all creditors, not just to the extent necessary to satisfy the individual creditor actually holding the avoidance claim; standing to pursue this claim is held by the trustee and the property recovered is property of the estate. See In re Cybergenics Corp., 226 F.3d 237, 243 (3d Cir. 2000).

arising from it.'" Emoral, 740 F.3d at 879. As described by the court in In re Canyon Sys. Corp.:

> Where the injury alleged is primarily to the corporation, and is an injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt, then the suit is for a tort suffered by the corporation, and properly brought by the trustee; if there is a special damage to the creditor suing, not common to other creditors, then it is a personal creditor action which the trustee may not pursue.

343 B.R. 615, 659 (Bankr. S.D. Ohio 2006) (internal citations omitted). Under both Hong Kong and United States liquidation law, individual creditors lack standing to bring generalized claims against non-debtor third parties because recovery would benefit "the estate" as a whole, rather than any individual creditor. Manley Toys, 2018 WL 1071167 at *2-5 (citing Horace Yao ¶ 35). See also In re Buildings By Jamie, Inc., 230 B.R. 36, 44 (Bankr. D.N.J. 1998) (individual creditors lack standing to pursue alter ego claims). As such, the Previous Decision ruled that only the Liquidators have the right to pursue fraudulent transfer claims on behalf of the estate.[5] Similarly, under section 548, only a trustee may bring fraudulent transfer claims and, under section 362, individual creditors are stayed from bringing any avoidance action to attempt to recover assets that are "property of the Debtor."

A primary purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." St. Croix Condo. Owners v. St. Croix Hotel, 682 F.2d 446, 448 (3d Cir.1982). This same policy applies under Hong Kong law, where the pari passu rule is a fundamental concept in the liquidation process. 2 Collier International Business

---

[5] Although the Liquidators are not granted authority to pursue avoidance actions under the Bankruptcy Code, see 11 USC § 1521(a)(7), the Liquidators can pursue these claims under Hong Kong Law. See In re Condor Ins. Ltd., 601 F.3d 319 (5th Cir. 2010); In re Fairfield Sentry Ltd., 2018 WL 3756343, at *2 (Bankr. S.D.N.Y. Aug. 6, 2018). Alternatively, the Liquidators can exercise United States avoidance powers by commencing a plenary case under sections 301 and 302 of the Bankruptcy Code. 2 Collier International Business Insolvency Guide P 23B.04 (2019).

Insolvency Guide P 23B.04. In liquidation it means that "all unsecured creditors are entitled to rank and be paid equally to all others, and every creditor has the same right to information as every other." Id. The Horace Yao court explained that preventing individual creditors from bringing "generalized claims" on their own serves this purpose when a corporation is insolvent, because "the essence of distribution in a winding up is that creditors of equal rank should share whatever assets remain equally." Horace Yao ¶ 35. Thus, the Previous Decision concluded that Aviva lacked standing to pursue these claims because they were property of the Debtor, and the stay applied to any party pursuing the Claims because generalized claims should be pursued for the benefit of all creditors, rather than allowing each individual creditor to race to recover as many of the assets as they could for themselves. See Manley Toys, 2018 WL 1071167, at *4-5.

"The procedure for obtaining a court order for relief from the U.S. automatic stay under subsections (d) through (g) of § 362 applies in a chapter 15 case." Lexis 1-5 United States International Insolvency Law § 5.06. Section 362(d)(1) of the Bankruptcy Code provides that the Court can grant relief from the stay for "cause." ABC Learning Centres Ltd., 445 B.R. at 336–37. "Cause" is not defined in section 362(d)(1). "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." Id. "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.), 298 B.R. 222, 225 (D. Del. 2003) (quoting In re FRG, 115 B.R. 72, 74 (E.D. Pa. 1990)).

### Bad Faith

The good faith requirement is inherent in all court proceedings. In re Lippolis, 228 B.R. 106, 112 (E.D. Pa. 1998). A finding that a debtor has filed bankruptcy in bad faith may constitute

"cause" to grant relief from the automatic stay. In re Schaffer, 597 B.R. 777, 791 (Bankr. E.D. Pa.), aff'd sub nom. Matter of Schaffer, 606 B.R. 228 (E.D. Pa. 2019) (citing Drauschak v. VMP Holdings Ass'n, L.P., 481 B.R. 330, 345 (Bankr. E.D. Pa. 2012)). In determining whether a case has been filed in bad faith, courts must examine the totality of the circumstances. Id. (citing In re Soppick, 516 B.R. 733, 746 (Bankr. E.D. Pa. 2014)).

Courts have identified several factors indicative of a bad faith bankruptcy filing for purposes of relief from the automatic stay. See e.g., In re 1701 Commerce, LLC, 477 B.R. 652 (Bankr. N.D. Tex. 2012) (citing Little Creek, 779 F.2d at 1072–73); In re Laguna Assocs. Ltd. P'ship, 30 F.3d 734, 738 (6th Cir. 1994), as amended on denial of reh'g and reh'g en banc (1994); In re AMC Realty Corp., 270 B.R. 132 (Bankr. S.D. N.Y. 2001). However, there is no one test for determining bad faith in the filing of a bankruptcy petition, and any factors which indicate bad faith are factors to be considered by the court. 74 Causes of Action 2d 273 (Originally published in 2016) (citing In re Venice-Oxford Assocs. Ltd. P'ship, 236 B.R. 805 (Bankr. M.D. Fla. 1998); In re Phoenix Piccadilly, 849 F.2d at 1394 (quoting In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir.1984)). Ultimately, "[w]hen faced with a motion to lift the stay on bad faith filing grounds, a judge must conduct a careful analysis . . . the relief sought is an extraordinary remedy that requires a careful examination of the facts on a case-by-case basis." AMC Realty, 270 B.R. at 141.

Aviva argues that the stay should be lifted due to the Debtor's, and now the Liquidators', bad faith. Dkt. No. 374. Aviva makes multiple allegations of bad faith related to the Debtor, and several more related to the Liquidators. Beginning with the Debtor and its principals, the Motion predominantly repeats the allegations made during the recognition proceedings. Aviva's allegations include that the Debtor entered liquidation to thwart its creditors within the United States; and that the timing of the liquidation was intended to stall ongoing litigation by Aviva, and

to avoid contempt rulings made or about to be made by the Minnesota Court against the Debtor.

Dkt. No. 374. Additionally, Aviva alleges that this liquidation is part of a larger scheme that the

Debtor began months or even years earlier, when it began using the trade name Toy Quest, which

Aviva alleges is no more than a corporation set up to allow the transfer of assets to avoid collection

activities by creditors. Id. Aviva also repeats allegations that it did not receive sufficient notice of

the liquidation in Hong Kong, and that this was another part of the scheme by the Debtor and its

principals to avoid its creditors. Id. The Court discussed most of these allegations in the

Recognition Opinion finding that even assuming each of these was true, it did not warrant denying

recognition of a valid foreign proceeding that complied with Hong Kong law, in which a committee

of inspection ("COI") had the opportunity to select independent representatives to oversee and

manage the collection and liquidation of the Debtor's assets, and the distribution of those assets to

creditors in accordance with Hong Kong law. See Manley Toys, 580 B.R. 632. Similarly, the Court

now finds that the allegations Aviva makes against the Debtor and its principals are not sufficient

cause to grant relief from the automatic stay, particularly where the estate is now being managed

by the duly appointed Liquidators.

The Motion also alleges that the Liquidators have acted, and continue to act, in bad faith;

that they are too conflicted; and that they lack the funding to properly oversee the collection and

distribution of the Debtor's assets. Dkt. No. 374 at 3. Aviva alleges that Toy Quest hired the

Liquidators, but that the funds paid to Liquidators are earmarked exclusively for shutting down

litigation in the United States. Id. at 5. Although the Motion dedicates multiple pages to its bad

faith argument, the factual allegations against the Liquidators are limited to the following: the

Liquidators have not investigated or prosecuted the Claims; the Liquidators have not taken proper

steps to preserve the Debtor's documents and emails; the Liquidators have not taken any steps to

prevent Toy Quest from pursuing the Debtor's assets; and the Liquidators lack the funding to

pursue the Claims even if they wished to do so. Id. at 5-16. In addition to alleging that the Liquidators have not taken any steps to pursue the Claims, Aviva alleges, somewhat inconsistently, that the Liquidators intend to settle those same Claims with Toy Quest, but that the proposed settlement does not offer reasonable value. Id. at 14. Finally, Aviva alleges that the Liquidators have not been forthcoming with information. Dkt. No. 381 at 4.

Initially, the Court again notes that the Previous Decision found that under Hong Kong law the Claims are generalized claims that are property of the Debtor. Manley Toys, 2018 WL 1071167, at *6. The trustee, or in this case the Liquidators, have standing to pursue generalized claims "to the exclusion of other creditors." Standing to bring a fraudulent transfer action, Fraudulent Transfers, Prebankruptcy Planning and Exemptions § 18:1; see also Point Serv. Corp. v. Pritchard Mining Co., 2010 WL 1410673, at *1 (S.D. W. Va. Mar. 31, 2010) (Alter ego theories are the exclusive property of the bankruptcy estate and cannot be pursued by any party other than the trustee in the absence of abandonment or the grant of derivative standing.). The Third Circuit indicated this when it ruled that an individual creditor "cannot recover property for the benefit of the estate unless it sues derivatively." Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 565 (3d Cir. 2003) ("Cybergenics II"). The court went on to state that it "cannot conceive of a situation in which a creditor has independent standing which would allow it to pursue the recovery of property transferred or concealed by the debtor." Id. (quoting In re Blount, 276 B.R. 753, 762 (Bankr. M.D. La. 2002)) (emphasis added). Thus, Aviva lacks standing to pursue the Claims because the Liquidators have exclusive standing to do so.[6] Granting stay relief would not confer standing upon Aviva to pursue these Claims. Therefore, the Court concludes Aviva has failed to show the balance of hardships weighs in favor of granting relief from the stay, because doing so will not offer Aviva the relief it seeks. Thus,

---

[6] A creditor's ability to pursue state law fraudulent transfer claims on its own behalf is discussed below.

there is no "cause" to lift the automatic stay. Although not discussed in the Previous Decision, Aviva's bad faith argument, which was considerably more limited than the one made in this Motion, as well as its estoppel argument, were considered and rejected by the Court, and are rejected again here because Aviva lacks standing to bring the Claims even if stay relief was granted.

This does not mean that creditors are without recourse in the event a trustee unjustifiably declines to pursue a generalized claim. See generally, Cybergenics II, 330 F.3d 548. While stay relief will not grant Aviva standing to pursue these Claims, individual creditors may pursue generalized claims on behalf of the estate if granted derivative standing.[7] Derivative standing is an equitable remedy that allows creditors or other non-trustee parties to pursue claims on behalf of the estate when the trustee or other responsible party has unjustifiably refused. See 43 A.L.R. Fed. 3d Art. 6 (Originally published in 2019). However, Aviva has not made a motion for, nor met its burden to establish it is entitled to derivative standing.[8] Aviva lacks standing to pursue the Claims on its own, and so is not entitled to stay relief.

Even assuming Aviva had standing to pursue the Claims on its own behalf, there are

---

[7] This Court may not be the proper venue for such a request. Because the Liquidators were appointed in Hong Kong, Hong Kong appears be the appropriate venue for such a determination to be made. But since this issue has not been raised, ruling on it is not necessary to resolve the Motion.

[8] To the extent Aviva argues that it informally requested the Court grant derivative standing, the Court disagrees. First, Aviva has not filed a motion for derivative standing nor met its burden under the Gibson test. See In re Nat'l Forge Co., 326 B.R. 532, 543 (W.D. Pa. 2005). Moreover, the specific relief Aviva seeks is relief from the stay to pursue the Claims on its own behalf. For example, at a hearing on September 27, 2016, the Court asked: "if Aviva - obtains a fraudulent transfer judgment, who gets the money?" Aviva responded that "[w]e would say that Aviva should . . . [b]ut . . . the question of who gets the money is different from whether we get to litigate . . . ." Aviva's counsel also stated "I don't deny that Aviva wants to take the money . . . . If Aviva has to share the . . . proceeds, well maybe it will. But that sure beats letting the claims go unasserted." Dkt. No. 157 at 12. None of this is consistent with a request for derivative standing, in which any money recovered is property of the estate turned over to the Liquidators to be distributed according to the priority scheme. As such, the Court finds that Aviva has not made any request for derivative standing, informal or otherwise, and makes no ruling on the issue.

significant policy reasons this relief is not appropriate. Aviva argues that it should be granted stay relief to pursue the specific fraudulent transfer claims against Toy Quest and the former principals of the Debtor that Aviva maintains it would have the right to pursue under state law if no liquidation was ongoing. Dkt. No. 381 at 15. This relief is not available for several reasons. First, as noted already, "any fraudulent transfer claims against debtors or non-debtors became part of the bankruptcy" once the liquidation commenced. Fairway Rest. Equip. Contracting, Inc. v. Makino, 148 F. Supp. 3d 1126, 1129 (D. Nev. 2015). As the Fairway Rest. Equip. court explained, any attempt by a creditor to bring a fraudulent transfer claim against the debtor's principals or the like "constitutes impermissible claim splitting." Id. at 1129. The theory of claim splitting bars a party from subsequent, duplicative litigation where the "same controversy" exists. Id. (citing Single Chip Sys. Corp. v. Intermec IP Corp., 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007)). In this case, Aviva seeks authority to pursue fraudulent transfer claims that are part of the overall Claims that the Liquidators are proposing to settle against Toy Quest.

Moreover, Aviva may not pursue these Claims because "[t]o permit a creditor to raise a fraudulent transfer claim after a bankruptcy case has commenced would 'permit the creditor to effectively circumvent the bankruptcy code's policy and the protections to be afforded by it to the [debtor's] other creditors." Rosenblum, 545 B.R. 846, 857 (Bankr. E.D. Pa. 2016) (citing Constitution Bank v. DiMarco, 155 B.R. 913, 918 (E.D. Pa. 1993) (citing In re Pointer, 952 F.2d 82, 87-88 (5th Cir.1992))). As noted above, one of the primary purposes the automatic stay serves is protecting creditors "by preventing particular creditors from acting to protect their own self-interests to the detriment of other creditors." In re Formisano, 148 B.R. 217, 221 (Bankr. D.N.J. 1992) (citing St. Croix Condo. Owners, 682 F.2d at 448). "Without [the stay], certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." St.

Croix Condo. Owners, 682 F.2d at 448 (quoting H.R.Rep.No.95-595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6296-97). These Claims are preserved for the benefit of all creditors and any proceeds are subject to "distribution in accordance with the plan or retention by the liquidating trustee." Fairway Rest. Equip., 148 F. Supp. 3d at 1129. As the Third Circuit observed in Cybergenics, if individual creditors were granted relief to pursue their own claims, state law provides "a transfer or obligation may be avoided only 'to the extent necessary to satisfy the creditor's claim.'" 330 F.3d at 565 (quoting 7A Uniform Laws Annotated, Uniform Fraudulent Transfer Act § 8; 7A Uniform Laws Annotated, Uniform Fraudulent Conveyance Act § 9). "Because an oversecured creditor cannot directly recover any property beyond that necessary to satisfy its own claim, it cannot recover property for the benefit of the estate unless it sues derivatively." Id. Granting stay relief as Aviva requests would allow it to pursue recovery of its own claim, while avoiding the distribution provisions of Hong Kong liquidation law.

Aviva also argues it can "shoulder the expense" of pursuing the Claims to increase the recovery for other creditors and that each individual creditor could be allowed to pursue Claims on its own behalf. Dkt. No. 374 at 27. This relief is not permitted for the reasons discussed above. Individual creditors cannot recover property beyond that necessary to satisfy their own claim. Cybergenics 330 F.3d at 565. As to each creditor pursuing its own claim, both United States and Hong Kong have adopted measures so that all assets are collected and distributed through a single proceeding to ensure that creditors are protected, and to avoid each individual creditor racing to recover as many of the assets as they can for themselves and to the detriment of others. See Manley Toys, 2019 WL 1987052. Further, one of the primary goals of Chapter 15 is to treat the "multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding." ABC Learning Centres, 728 F.3d at 304–05 (citing 11 U.S.C.

§ 1501; UNCITRAL Model Law on Cross–Border Insolvency preamble (stating nearly identical purposes)). In addition, the automatic stay is intended "to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." S.E.C. v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000) (quoting In re United States Lines, Inc., 197 F.3d 631, 640 (2d Cir.1999)) (internal quotation marks omitted). Granting the Motion would violate not only United States policy in adopting Chapter 15, but also the policies of priority distribution of assets adopted under both Hong Kong and United States law. Allowing each creditor to attempt to recover whatever assets of the Debtor it can on its own would essentially defeat an underlying purpose of bankruptcy - to prevent the race to collect estate assets and instead impose an orderly liquidation and distribution of assets through a single proceeding.

However, even assuming Aviva was not barred from pursuing these Claims for the above reasons, the Court would still deny the Motion because Aviva has failed to meet its burden. "The existence of good faith depends on an amalgam of factors and not upon one specific fact." 74 Causes of Action 2d 273 (Originally published in 2016). Here, assuming the truth of Aviva's allegations, they do not support a finding of bad faith. As noted, Aviva alleges the Liquidators have engaged and continue to engage in bad faith. Dkt. No. 374. Aviva argues broadly that this bad faith warrants stay relief, and the hardship from not obtaining stay relief is that the Claims will be settled for less than their value under an allegedly collusive settlement. Id.

To support this argument Aviva alleges the Liquidators have failed to pursue the Claims against Toy Quest and former principals of the Debtor. Dkt. No. 374 at 8. However, this is not supported by the record. Indeed, Aviva admits that the Liquidators are currently pursuing a settlement of the Claims with Toy Quest. Id. at 12. Engaging in settlement discussions with opposing parties is evidence that the Liquidators are in fact pursuing the Claims. See generally, In

16

re Caesars Entm't Operating Co., Inc., 561 B.R. 457, 468 (Bankr. N.D. Ill. 2016) (settlement, for purposes of determining whether derivative standing was appropriate, was sufficient to establish the trustee had not unjustifiably refused to pursue a colorable claim); In re Milazzo, 450 B.R. 363, 371 (Bankr. D. Conn. 2011) (trustee had not unreasonably refused to bring an avoidance action given that he had proposed a settlement after filing the complaint and engaging in discovery). As such, Aviva's allegations that the Liquidators have refused to pursue the Claims is not supported by the evidence and therefore does not show the Liquidators have acted in bad faith.

Aviva next alleges that, even assuming the Liquidators were willing to pursue the Claims, they lack the funding to do so. Dkt. No. 374 at 25. Aviva alleges the Liquidators have less than $5,000 to fund estate activities. Id. Aviva also points out that "the Liquidators are precluded from funding a case through a contingency fee arrangement because contingency fees are illegal in Hong Kong." Id. (citing Dkt. 201-5, R04339, HKSAR v Mui Kwok Keung, [2014] 1 HKLRD 116 (C.A.); Bankr. Dkt. 201-6, R04373, Winnie Lo v HKSAR, [2012] 15 HKCFAR 16 (C.F.A.)). Even assuming this is true, it would not support a finding of bad faith. Lack of sufficient funding is a rational basis to decline to pursue claims or to pursue settlement of claims in lieu of litigation. See generally, Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.), 555 F.3d 231, 244 (6th Cir. 2009); In re Woodbridge Grp. of Cos., LLC, 592 B.R. 761, 774 (Bankr. D. Del. 2018). Thus, rather than further Aviva's allegations of bad faith, the fact that the Liquidators lack the funding to pursue the Claims instead indicates that there may be a rational basis to pursue settlement.

Aviva also alleges that the Liquidators are funded by Toy Quest, a potential defendant in the fraudulent transfer claims, which Aviva argues creates a conflict of interest that prevents the Liquidators from properly pursing the Claims. Dkt. No. 374 at 10. However, as acknowledged at the hearing on the Initial Motion, it is "typical in British Commonwealth countries for fiduciaries

to obtain third party funding for litigation," and it is common for creditors to provide that funding. Dkt. No. 157 at 25. Aviva, in support of its argument, points to the fact that the funds provided by Toy Quest cannot be used to pursue claims against Toy Quest. The Court addressed these allegations in the Recognition Opinion noting that such arrangements are commonplace in Chapter 11 cases within the United States and not a basis to deny recognition. Manley Toys, 580 B.R. at 651 (citing In re Modanlo, 2006 WL 4606303 (D. Md. 2006)). During the Recognition Hearings, Mr. Ng explained that if he determines there was a cause of action against an insider, he would reach out to creditors to determine if they would fund litigation. Id. (citing May 12 Transcript at 45:11-15). The fact that the Liquidators cannot use the funds from Toy Quest to pursue the Claims is not evidence that the Liquidators are acting in bad faith. Aviva has not alleged that it has offered to fund the Liquidators' pursuit of these Claims, or that the Liquidators have refused offers from Aviva or other creditors to fund the litigation. Thus, while Toy Quest may be unwilling to fund litigation against itself, the Liquidators accepting funding from Toy Quest to pursue other matters in the Liquidation is not evidence of bad faith.

The remaining issues relate to Aviva's allegations that the Liquidators' failure to preserve the Debtor's documents and emails; and the failure to pursue Toy Quest for violations of the automatic stay. Dkt. No. 374. According to Aviva's allegations the Liquidators lack the funds to pursue these matters. Thus, these allegations do not support a finding of bad faith on the part of the Liquidators.

Finally, "[t]o establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in [its] favor." Atl. Marine, 298 B.R. at 225. Here, even if Aviva had established that the Liquidators acted in bad faith, the balance of hardships would still weigh in favor of denying stay relief. Aviva's primary argument is that if the Court does not lift the stay and allow Aviva to pursue the Claims on its own behalf then the

Liquidators will enter into a collusive settlement with Toy Quest, thus denying Aviva the right to collect the full value of its claim. Dkt. No. 374 at 12. However, there are multiple other safeguards and remedies available to Aviva. To begin, any settlement must first be approved by the creditors. Dkt. No. 374 at 12. Thus, Aviva may voice its objection, as may other creditors, prior to the consummation of any settlement. Additionally, Aviva has multiple other remedies available to it in Hong Kong.

Under Hong Kong law, the Liquidators owe a duty not only to the Debtor, but also to its creditors. 2 Collier International Business Insolvency Guide P 23B.05. C(WUMP)O states the "liquidator of a company . . . shall . . . have regard to any directions that may be given by resolution of the creditors . . . at any general meeting, or by the committee of inspection." C(WUMP)O § 200(1). As noted above, creditors have the option of joining the COI, and Aviva was offered a position on the COI, but declined. Manley Toys, 580 B.R. at 641. However, even without joining the COI, Hong Kong law offers creditors substantial safeguards and remedies. For example, "any directions given by the creditors or contributories at any general meeting shall . . . override any directions given by the committee of inspection." C(WUMP)O § 200(1). Additionally, regarding the assets of the debtor under the liquidator's administration (including the Claims at issue here), the liquidator is also a trustee. 2 Collier International Business Insolvency Guide P 23B.05 (citing Re Oriental Inland Steam Company [1874] LR 9 Ch App 557; Re Corbenstoke (No. 2) [1990] BCLC 60). Further, "[i]f any person is aggrieved by any act or decision of the liquidators, that person may apply to the court, and the court may confirm, reverse, or modify the act or decision complained of." C(WUMP)O § 200(5). Finally, if a liquidator is found in breach of the duties outlined in the C(WUMP)O, the liquidator may be held personally liable. 2 Collier International Business Insolvency Guide P 23B.05.

Thus, Aviva has the option of offering to fund the Liquidators to allow for a deeper

investigation and potential suits to avoid any alleged fraudulent transfers. Additionally, Aviva may be able to join the COI, and if that option has expired it still may attend any general meeting of creditors and voice its objection to any proposed settlement. Finally, Aviva may bring an action in Hong Kong to prevent any allegedly collusive settlement or hold the Liquidators personally liable for any violation of their duties. See C(WUMP)O § 200.

Given these protections, Aviva's only hardship appears to be the cost of litigating in Hong Kong, which was an economic risk Aviva accepted when it chose to do business with a company based in Hong Kong. Thus far, however, Aviva appears to have avoided in engaging in the Hong Kong process. For example, Aviva declined a position on the COI because it did not wish to be subject to Hong Kong jurisdiction. Dkt. No. 143 at 59. Aviva has not alleged that it has taken any other action in Hong Kong to protect its interests. Instead, Aviva asks this Court to create separate remedies and procedures for Aviva (and to a lesser extent, other United States creditors), to permit creditors in the United States to obtain relief in a separate form or action. This Court declines to do so. As noted, uniformity and cooperation are essential to the goals of Chapter 15, and this is accomplished though treating the "multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding." ABC Learning Centres, 728 F.3d at 304-05. In much the same way United States law requires creditors from other nations to come before a bankruptcy court for relief when a domestic company files bankruptcy, Aviva must go to Hong Kong to obtain the relief it seeks. As far as this Court is aware, Aviva has not fully participated in the process in Hong Kong. As noted, Aviva refused a position on the COI, at least in part, to avoid being subject to the jurisdiction of Hong Kong courts. Dkt. No. 143 at 59. While Aviva is entitled to not pursue its claims in Hong Kong, it is not entitled to attempt to circumvent the Hong Kong Proceeding and United States international insolvency law. Aviva's remedies lie in Hong Kong. Thus, Aviva's harm, if this Court declines to lift the automatic stay, is that Aviva

will be forced to pursue its remedies in a less convenient forum.

In contrast, granting stay relief would pose a substantial hardship on the Liquidators, other creditors, and the liquidation itself. Beginning with the Liquidators' efforts to resolve and collect on the Claims, even assuming all other creditors support the proposed settlement, it is unlikely any potential defendant would agree to settle with the Liquidators knowing that the same Claims may be brought in a separate action by Aviva in another venue. Further, granting stay relief creates significant risk of inconsistent outcomes - a settlement of the Claims in Hong Kong and simultaneous litigation of the Claims in the United States. Alternatively, if the proposed settlement is not approved by creditors, there may well be two separate proceedings involving the same defendants for the same alleged conduct, and two separate judgments may be entered. This would, among other problems, threaten the underlying purpose of Chapter 15 - to create a single proceeding to maximize and disperse a debtor's assets. ABC Learning Centres, 728 F.3d at 304-05. Thus, the balance of hardships weighs heavily in favor of denying stay relief.

In conclusion, Aviva lacks standing to pursue the Claims for the reasons discussed in the Previous Decision and summarized here. Further, stay relief is not appropriate under these facts. Aviva has not shown that the Liquidators have acted in bad faith. Even assuming the truth of Aviva's allegations, the balance of harms weighs in favor of denying stay relief. Ultimately, the Court notes that Chapter 15 was designed to, and does, grant Aviva multiple remedies for its alleged injuries, but those remedies are not found in this forum. This is a foreign liquidation, based in Hong Kong; and under Chapter 15, Hong Kong is where Aviva must seek this form of relief.

### Judicial Estoppel

As noted in the Previous Decision, "'piercing the corporate veil does not give rise to a cause of action in itself.' Instead, it is available only when there is an underlying cause of action with which it will be brought." Manley Toys, 2018 WL 1071167, at *4 (citing Horace Yao at ¶¶

21

33-38). In this case, the underlying causes of action alleged by Aviva are fraudulent transfers. Because the Court has already determined that the claims for fraudulent transfer cannot be brought by Aviva in its individual capacity, Aviva cannot bring the alter ego claim by itself. Further, as noted above, because the alter ego claim is a generalized claim preserved for the benefit of all creditors, Aviva lacks standing to pursue such a claim under Hong Kong law. However, assuming Aviva was not barred from bringing a claim to pierce the corporate veil, judicial estoppel does not apply.

The doctrine of judicial estoppel "seeks to prevent a litigant from asserting a position inconsistent with one that it has previously asserted in the same or in a previous proceeding." MD Mall Assocs., LLC v. CSX Transp., Inc., 715 F.3d 479, 486 (3d Cir. 2013), as amended (May 30, 2013) (citing Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 272 (3d Cir.2012)) (internal quotation marks omitted). "The doctrine exists to protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment." Id. Judicial estoppel "should only be applied to avoid a miscarriage of justice." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003) (citing Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773 (3rd Cir. 2001)).

Three factors inform a court's decision whether to apply judicial estoppel: "there must be (1) irreconcilably inconsistent positions; (2) adopted in bad faith; and (3) a showing that estoppel addresses the harm and no lesser sanction is sufficient." MD Mall, 715 F.3d at 486 (quoting G–I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009) (alterations and internal quotation marks omitted). The Supreme Court adopted the following test to decide whether judicial estoppel applies:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or

the second court was misled." <u>Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity.</u> A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

<u>New Hampshire v. Maine</u>, 532 U.S. 742, 750–51 (2001) (emphasis added) (citations omitted). As stated in <u>Montrose Med.</u>, "if a party's initial position was never accepted by a court or agency, then it is difficult to see how a later change manifests an 'intent to play fast and loose <u>with the court[s]</u> . . . .'" 243 F.3d at 782 (quoting <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 361 (3d Cir. 1996)) (emphasis original). Additionally, "a change of position simply cannot evidence bad faith vis-à-vis a court unless the initial statement was accepted or adopted." <u>Montrose Med. Grp.</u>, 243 F.3d at 784. For example, in <u>G-I Holdings</u>, the court stated that it did not reach the three-factor test because "the District Court never accepted Hartford's prior position." 586 F.3d at 262. The court continued, "[w]hen it did rule, the Court did not rely on Hartford's initial position. Rather, it held against Hartford <u>without discussing</u> either Hartford's prior or new position." <u>Id.</u> (emphasis added).

Aviva maintains that the Liquidators should be estopped from claiming that the alter ego claims[9] belong to the estate because they previously argued Aviva would be "free to pursue" those claims, and "[o]n that basis, the Liquidators obtained significant limitations on discovery, such as being allowed to withhold financial and other documents created prior to 2014." Dkt. No. 374. In response, the Liquidators argued that their position here is not "irreconcilably inconsistent" with prior argument, because ownership of the alter ego claims was not relevant to the issue before the Court - whether to recognize the Chapter 15 petition. Dkt. No. 377. Additionally, the Liquidators

---

[9] Aviva's argument for judicial estoppel is limited to the alter ego claim only. Aviva does not argue that the Liquidators should be estopped from asserting ownership of the fraudulent transfer claims. To the extent Aviva intended its argument for judicial estoppel to include the fraudulent transfer claims, the Court declines to do so, noting that the Liquidators' argument has been consistent from the beginning regarding these claims having stated that "fraudulent transfer claims can be investigated and pursued for the benefit of all creditors." Dkt. No. 53 at 3.

argue that even if the prior argument is inconsistent with its current argument, there was no evidence of bad faith. Id. In its reply, Aviva seems to argue that the Liquidator's prior inconsistent statements were made in relation to the Court's decision to recognize the Chapter 15 petition as well as the discovery dispute. Dkt. No. 381.

In this case, it is not necessary to consider the three-factor test because even assuming the Liquidators had argued that the alter ego claims would not be property of the estate, the Court never accepted that position. See Dkt. No. 51, 268. To the contrary, on April 25, 2016, this Court granted Aviva's motion to compel discovery and required the Liquidators to turn over two years of documents to Aviva in relation to the recognition hearings. Dkt. No. 51. Although the decision was rendered from the bench, a recording of the Court's opinion is on the docket. See id. The Court ruled in favor of Aviva, granting its discovery requests while limiting them to what was reasonable for the matter before the Court (recognition of a foreign proceeding). Id. In short, the Court ruled in Aviva's favor. "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity," MD Mass, 715 F.3d at 487 (quoting New Hampshire v. Maine, 532 U.S. at 749); Otos Tech Co. v. OGK Am., Inc., 393 F. App'x 5, 8 (3d Cir. 2010).

Despite Aviva's arguments seemingly to the contrary, the dispute in which the discovery requests arose was a proceeding to determine whether the Court should recognize the liquidation in Hong Kong, and the Court tailored its ruling to allow Aviva to obtain reasonable discovery in that respect. See Dkt. No. 51 and 268. While the parties spent considerable time arguing over the Claims, the Court considered these and determined that ownership of the Claims was not germane to its decision regarding whether to recognize the foreign liquidation proceeding. Indeed, the Court explained that its decision was geared toward ensuring that only those matters relevant to whether to recognize the foreign proceeding would be considered. The Court stated:

> As discussed there are three issues that appear to be in dispute for

24

the recognition hearing and I'm going to discuss each in turn. The <u>first is whether it is collective in nature</u> . . . The <u>next</u> issue before the Court is related to <u>the center of main interest</u> . . . <u>Finally, the question of public policy under section 1506</u> of the Bankruptcy Code, the Court does not need to take any action manifestly contrary to U.S. policy.

Dkt. No. 51 (emphasis added). The Court also explained why it limited the scope of discovery:

> I am not going to require turnover of the documents in box 158 <u>because I expect many of the documents are publicly available or would be subject to claim of privilege</u>. <u>Moreover</u>, as discussed, <u>I do not think that there is much if any relevance to these documents because they will not show Manley's COMI or pertain to the public policy issue as I have delineated</u> it previously. I also believe that providing the payment advices or wire reports for payment of the liquidators providing the organizational chart of the debtors, if one is available, providing non-privileged correspondence with account debtors and creditors by the liquidators and providing lists of employees may all be relevant as they may show that Manley's COMI was not in Hong Kong.

<u>Id.</u> (emphasis added). These were the bases for the Court's determination. Similar to <u>G-I Holdings</u>, at no point did this Court discuss the Liquidators' statements regarding ownership or interest in the claims for alter ego, and more significantly, at no point did the Court accept as accurate or persuasive any such statements by the Liquidators. <u>See</u> <u>G-I Holdings</u>, 586 F.3d 247. Indeed, the Court is not certain that the Liquidators actually argued such a position, but to the extent they did, the Court was not persuaded by it nor was the argument relevant to the Court's decision. As such, estopping the Liquidators from arguing that the Claims belong to the estate is not warranted because the Court never accepted any argument by the Liquidators that the Claims would not be property of the estate. Because, "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position" <u>MD Mall</u>, 715 F.3d at 486 (quoting <u>G–I Holdings</u>, 586 F.3d at 262), it does not apply in this case.

Even if the Court had accepted the Liquidators' prior position, Aviva failed to establish that the Liquidators' position was "irreconcilably inconsistent" or that they argued the position in bad faith. "Inconsistencies are not sanctionable unless a litigant has taken one or both positions 'in

bad faith - i.e., with intent to play fast and loose with the court.'" <u>Montrose Med.</u>, 243 F.3d at 780-

81 (quoting <u>Ryan Operations</u>, 81 F.3d at 361). A finding of bad faith "must be based on more than

the existence of an inconsistency." <u>Id.</u> (citing <u>Klein v. Stahl GMBH & Co. Maschinefabrik</u>, 185

F.3d 98, 111 (3d Cir. 1999)). Indeed, a litigant has not acted in "bad faith" for judicial estoppel

purposes unless two requirements are met. First, he or she must have behaved in a manner that is

somehow culpable. <u>Id.</u> at 181 (citing <u>Ryan Operations</u>, 81 F.3d at 362 (judicial estoppel may not

be employed unless "'intentional self-contradiction is . . . used as a means of obtaining <u>unfair</u>

advantage'") (quoting <u>Scarano</u>, 203 F.2d at 513 ("An inconsistent argument sufficient to invoke

judicial estoppel must be attributable to <u>intentional wrongdoing</u>." (emphasis in <u>Montrose Med.</u>))).

Second, the intentional wrongdoing must have been directed at the court. <u>Id.</u> "Judicial estoppel is

concerned with the relationship between litigants and the legal system, and not with the way that

adversaries treat each other." <u>Id.</u> "Accordingly, judicial estoppel may not be employed unless a

litigant's culpable conduct has assaulted the dignity or authority of the court." <u>Id.</u>

In this case, the Liquidators' position is not irreconcilably inconsistent. The statements

noted by Aviva include the following:

- "[a]lter ego claims that [Aviva] may possibly have against third parties <u>will not be</u> <u>affected by recognition</u> of the Hong Kong Proceeding." Dkt. No. 374 (citing Dkt. No. 53 at 3 (emphasis added));

- "ASI argues that the Chapter 15 and Hong Kong Proceeding will somehow <u>eliminate</u> claims or judgments in connection with the patent infringement matters, employment law matters, and product liability matters to which the Debtor has been a party," but "<u>the adjudication of those claims is not eliminated by either of these</u> <u>filings</u>." <u>Id.</u> (citing Dkt. No. 49 at 3 (emphasis added)).

Aviva also alleges that "Liquidators repeatedly asserted Aviva . . . would be free to pursue" these claims. Id. at 22. The Court could not identify whether the Liquidators ever made these particular statements. However even if they were made, Aviva did not establish they were made in bad faith. While the Liquidators' statements may not have been accurate, the Court cannot conclude that they were intentionally false or misleading at the time. Additionally, many of the statements to which Aviva points as evidence that the Liquidators promised Aviva would be free to pursue the Claims, when viewed in context, do not support that argument. For example, Aviva cites to the Liquidators' "complaining Aviva was 'trying to utilize this Chapter 15 proceeding as its own personal playground for unfettered discovery for use in other courts.'" Id. (quoting Dkt. No. 70 at 4). However, the entire statement made by the Liquidators is as follows:

> Certainly, it is difficult to imagine what possible relevance to the remaining contested issues in this matter the bank records of non-debtor, non-parties might have. Rather, this appears to simply be the next step in [Avivas's] modus operandi of trying to utilize this Chapter 15 as its own personal playground for unfettered discovery for use in other courts.

Dkt. No. 70 at 4. The Court understood the Liquidators' argument to be that ownership of the Claims was not relevant to the determination of whether the Court should recognize the foreign liquidation. This argument is not inconsistent with the Liquidators' current position. To this extent the Court agreed with the Liquidators' argument. This matter arose during a discovery dispute regarding how many years of material Aviva was entitled to receive related to the recognition hearing. The Court based its determination on what was reasonable in that context. Ownership of the Claims was not relevant to a determination of how much discovery was reasonable, nor was it relevant to a determining whether the Court should recognize the foreign proceeding. Because Aviva failed to show that the Liquidators have taken an irreconcilably inconsistent position in bad faith, judicial estoppel does not apply to bar the Liquidators from arguing that the claims for alter ego belong to the Debtor.

**Remaining Matters**

The Motion also renews Aviva's request for stay relief to allow Aviva to seek relief against the Debtor and other parties in other courts. Specifically, Aviva argues it should be permitted to seek evidence preservation orders from other courts to compel the Debtor or the Liquidators to preserve evidence related to Aviva's judgment against the Debtor, or against the non-debtor Manley Toy Direct. Dkt. No. 374. Similarly, Aviva has renewed its request for relief to pursue injunctive sanctions against the Debtor for its violations of the Minnesota Court's orders. Id.

Before addressing these arguments, the Court must determine whether it is appropriate to consider these remaining matters. The Liquidators object to the scope of the relief requested by Aviva in this Motion, arguing that these matters exceed the limited instructions given in the Remand Order. Dkt. No. 377. The Liquidators correctly note that "the trial court must upon the remand proceed in accordance with the mandate and the law of the case established by the appellate court." Petition of U.S. Steel Corp., 479 F.2d 489, 493 (6th Cir. 1973). However, this doctrine does not limit a federal court's power; rather, it directs its exercise of discretion. Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997) (citing Arizona v. California, 460 U.S. 605, 619 (1983)). As such, this doctrine "is not an inexorable command," but instead directs courts to use good sense and reason allowing reconsidering of a former decision if there is a cogent reason to do so. U.S. Steel, 479 F.2d at 494. "Such reasons may include substantially different evidence raised on subsequent trial." Id.

In this case, the Court views Aviva's requests as a new motion, rather than a request to reconsider its previous decision.[10] Aviva's argument that this is a new motion is based primarily

---

[10] Aviva did state that the Court's previous rulings "should be reconsidered." Dkt. No. 374. To the extent Aviva intended this to be a motion to reconsider, the motion is denied. Federal Rule 60(b), made applicable by Bankruptcy Rule 9024, provides "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3)

on the changed status of the case, now that the Court has issued its Recognition Opinion, and considerable time has passed. See Dkt. No. 374. Aviva argues that as more time passes, the chances that documents will be destroyed increases. Id. The Court considers this to be a new motion, as opposed to a reconsideration of the determinations in the Previous Decision, and so determined it was proper to be considered at this time.[11] However, Aviva failed to establish it is entitled to relief.

As noted, Aviva first requests relief from the stay to allow it to pursue preservation orders from other courts. Dkt. No. 374. The Previous Decision explained that "[o]ne of the primary purposes of the automatic stay to avoid interference with the orderly liquidation or rehabilitation of the debtor." Manley Toys, 2018 WL 1071167, at *5 (citing Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991)). The Court also noted that the Liquidators had already taken steps to preserve information. Id. at 6 (citing Dkt. Nos. 110 and 111 at 109-110). Therefore, the Court concluded that any additional requests to require action on the part of the Liquidators should be made before this Court:

> Channeling all such requests through this Court reduces the chances of the Debtor's assets being depleting through repetitive and unnecessary litigation, and this Court is most familiar with the facts surrounding the liquidation of the Debtor, putting it in the best position to make an efficient decision.

Id. Aviva has not presented any facts or legal arguments that alter this conclusion. As such, Aviva's request is denied and the Previous Decision stands unchanged.

Aviva also renewed its request for relief to pursue injunctive sanctions against the Debtor for its violations of the Minnesota Court's orders. Dkt. No. 374. Specifically, Aviva requests, as it

---

fraud, . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . .; or (6) any other reason that justifies relief." Hibbard v. Penn-Trafford Sch. Dist., 621 F. App'x 718, 722 (3d Cir. 2015), reh'g denied (Sept. 8, 2015) (citing Fed. R. Civ. P. 60(b)). Aviva has not established that any of these grounds are met. To the extent Aviva intends this to be a motion under 9024, it is denied for that reason.

[11] To the extent the Court lacks jurisdiction to consider these matters, Aviva's request is denied due to lack of jurisdiction.

did in the Initial Motion, relief to pursue an import ban against the Debtor. The Court denied this

request in its Previous Decision stating:

> The Debtor is no longer operating, and the Liquidators are
> responsible for marshalling the Debtor's assets in order to disperse
> these assets to creditors in accordance with Hong Kong Law. Any
> injunction imposed by another court would interfere with the
> Liquidators in their attempts to carry out the duties imposed upon
> them by the Bankruptcy Code and Hong Kong Law, and thus have
> a negative effect on other creditors. Aviva has already been granted
> relief to seek monetary damages it believes itself entitled to, and is
> free to pursue collection of those damages along with its other
> claims through the Hong Kong liquidation case.

Manley Toys, 2018 WL 1071167, at *5. Aviva has not presented the Court with any reason to alter

its decision. Therefore, Aviva's request will be denied for the same reasons.

### Conclusion

The Remand Order instructed this Court to consider whether Aviva's arguments related to

bad faith and judicial estoppel were considered in its Previous Decision denying stay relief and to

determine whether additional evidence Aviva attempted to introduce on appeal alters the Court's

determination to deny stay relief. Because under Hong Kong law the Claims were property of the

Debtor, and that standing to pursue the Claims was exclusively granted to the Liquidators, neither

the alleged bad faith, nor judicial estoppel alter the Previous Decision. Although the Court

considered the Letters introduced by Aviva, those did not alter its decision for the same reasons.

Additionally, even if Aviva did have standing to pursue these claims, the Court declines to lift the

stay because it finds that Aviva failed to allege facts that, if proved, would meet its burden in

establishing that the Liquidators acted in bad faith. Moreover, even if the Liquidators had acted in

bad faith, the balance of harms weighs against granting stay relief because Aviva has remedies

available in Hong Kong which would achieve Aviva's stated goal without threatening the

successful Liquidation of the Debtor.

Finally, it is improper to apply judicial estoppel to prevent the Liquidators from arguing

the alter ego claims belong to the Debtor. Aviva's additional requests beyond those contained in the Remand Order and the Previous Decision stands unchanged with respect to those requests.

The Motion is Denied, and the Court will enter an order to that effect.

Dated:   March 31, 2020

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE